**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
TODD KENNEDY (State Bar No. 250267)
MARIE A. MCCRARY (State Bar No. 262670)
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiff Scott Miller

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FUHU, INC. and FUHU HOLDINGS, INC.;<br><br>    Defendants. | CASE NO. 14-cv-6119 CAS-AS<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Assigned to Hon. Christina A. Snyder<br>Date:     May 4, 2015<br>Time:     10:00 a.m.<br>Place:    Ctrm 5, 2nd Floor |

# **TABLE OF CONTENTS**

Table of Authorities .................................................................................................ii

I.  Introduction ........................................................................................................1

II.  Statement of Facts and Procedural History. ...................................................2

    A.  Defendants Falsely Advertise Children's Tablet Computers. ...................2

    B.  Defendants Knowingly Sold Tablets With Defective Power
        Adapters and Refused to Honor Their Warranty ....................................4

    C.  Defendants Attempt to Avoid Litigation by Unlawfully
        Conditioning Software Updates on Acceptance of Arbitration
        and Class Action Waiver Clauses. ...........................................................7

    D.  Procedural History and Discovery to Date. .............................................7

III.  Argument ...........................................................................................................8

    A.  Legal Standards .......................................................................................8

    B.  Defendants' Motion Should Be Viewed Unfavorably and Rejected
        as Untimely. ...........................................................................................9

    C.  Plaintiff Has Adequately Pled Fraud-Based Claims. .............................11

        1.   Plaintiff Has Adequately Pled Misrepresentation Claims ............11

        2.   Plaintiff Has Adequately Pled Fraudulent Omission Claims.........14

    D.  Plaintiff Has Adequately Pled Breach of Warranties. ............................17

        1.   The FAC States a Claim for Breach of Express Warranty. ...........17

        2.   The FAC States a Claim for Violation of the Song-Beverly
        Act. .............................................................................................18

    E.  If Any Allegations Are Insufficient, Leave To Amend Should Be
        Granted. ..................................................................................................19

Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

IV.   Conclusion. ................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*Al–Kidd v. Ashcroft*, 580 F. 3d 949 (9th Cir. 2009) ....................................... 16

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ............................................................................. 12

*Baba v. Hewlett-Packard Co.*, Case No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) .................................................. 15

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007) ........................................................................................................ 15

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................... 8

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) .................................... 11

*Brain Life, LLC v. Elekta Inc.*, Case No. 10cv1539–LAB (BGS), 2012 WL 48024 (S.D. Cal. Jan. 6, 2012) ................................................ 10, 11

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2003) ................. 13

*Collins v. eMachines, Inc.* (2011) 202 Cal. App. 4th 249 ..................................... 15

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) ....................................................................................................... 15

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ........................... 19

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................... 16

*Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57 (1963) ...................................... 18

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, Case No. No. 3:11–CV–01576–H–RBB, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) .............. 15

*Ibrahim v. Ford Motor Co.* 214 Cal. App. 3d 878 (Ct. App. 1989) ..................... 18

*In re Morrison*, 421 B.R. 381 (Bankr. S.D. Tex. 2009) ....................................... 11

*In re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996) ......................................................................................................... 9

*In re Vioxx Class Cases* (2009) 180 Cal. App. 4th 116 ................................... 13

*Jones v. Greninger*, 188 F.3d 322 (5th Cir. 1999) ...................................... 9

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................... 11, 12

*Keefe v. Derounian*, 6 F.R.D. 11 (N.D. Ill. 1946) .................................... 11

*Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) .................................................. 14

*Li-mandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ........................................ 14

*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal. App. 4th 115 ................................................................................................ 13

*Marskikian v. Mercedes Benz USA*, Case No. CV 08–04876 AHM2009, WL 8379784 (C.D. Cal. May 4, 2009) ................................. 15

*Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal. App. 4th 402, 406–08 .................... 19

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) ................. 8

Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal. App. 4th 39..............................13

*Orichan v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322 (2014) .................17, 18

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir.1998) .....................................................9

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009)......................18

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th
   Cir. 1986)..............................................................................................................19

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ..........................................9, 11

*Smith v. Ford Motor Co.*, 749 F.Supp. 2d 980 (N.D. Cal. 2010) ..........................14

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973).......................................9

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)................8

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ....................14, 15

**RULES, STATUTES, AND OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b).............................................................................................9, 11

Fed. R. Civ. P. 12 .....................................................................................................9

Fed. R. Civ. P. 12(b)(6)............................................................................................9

Fed. R. Civ. P. 12(g)(2)............................................................................................9

Cal. Civ. Code § 1793.2(d)(2).........................................................................18, 19

5C Charles Alan Wright & Arthur R. Miller, Federal Practice &
   Procedure § 1388 (3d ed. 2004) ...........................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Scott Miller respectfully submits this Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Dkt.# 42 ("Br.").

## I.   INTRODUCTION

Defendants mislead consumers into purchasing electronic tablets for children by falsely advertising that the tablets are rechargeable and include a power adapter to recharge the tablets. Yet Defendants sell the tablets with power adapters that they know will not reliably recharge the tablets. Although Defendants assured consumers in December 2011 that they had learned of the defect and would remedy the issue immediately by redesigning the adapters and replacing old adapters, Defendants have not done so. In July 2012, Plaintiff purchased one of Defendants' tablets, which still included the defective adapter. He asked Defendants three times for a replacement; they ignored his first two requests and in response to the third sent another defective adapter. To date, more than *two hundred thousand* customers have complained to Defendants about defective adapters and defective replacement adapters, and new complaints are lodged every day.

Plaintiff filed suit in July 2014 to challenge Defendants' misrepresentations and breach of warranties. Defendants then answered Plaintiff's original complaint. Subsequently, Defendants purported to amend their Terms of Use to impose a class action waiver and arbitration provision on all customers, and to require that customers accept the amendment to receive updates to the tablet software, such as bug fixes. In March 2015, pursuant to the parties' stipulation, and this Court's order, Plaintiff amended his complaint to assert new claims arising out of these unilateral, unconscionable contractual modifications.

Even though Defendants had already answered the claims about defective adapters that were contained in the original complaint, and even though substantial discovery on those claims has been completed, Defendants have now seized upon the filing of the amended complaint to move to dismiss those original claims. (De-

fendants do not move to dismiss any of the new claims about the unconscionable arbitration provision.) Their primary argument is that the complaint provides insufficient detail under Rule 9(b) to allow them to understand or answer the claims.

No reasonable basis exists for the motion, as Defendants undeniably are on notice of the nature of Plaintiff's claims, which they have already answered and about which voluminous discovery has been taken. Further, Defendants cannot establish, as a matter of law, that there was no "misrepresentation" or "duty to disclose," as Plaintiff has pled that Defendants had exclusive knowledge of the defects, actively concealed them by representing that the tablets were rechargeable and that Defendants had remedied any recharging defects, and made misrepresentations about "rechargeability" without complete disclosures. Finally, the argument that Plaintiff did not give Defendants a sufficient opportunity to cure the defect before filing suit is contradicted by Plaintiff's allegations that (i) he made multiple requests for a replacement, (ii) Defendants first ignored the requests and then responded by sending another defective adapter, and (iii) thousands of other consumers have made the same complaints, yet Defendants continued selling the tablets with defective adapters and providing defective replacements. Defendants' motion should be denied.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY.

## A.   Defendants Falsely Advertise Children's Tablet Computers.

Defendants manufacture and sell electronic tablets for children. (First Amended Complaint ("FAC") ¶ 20.) Defendants' tablets include the Nabi XD, Nabi 2, Nabi 2 S, Nabi Jr., and Disney and Nickelodeon special edition Nabi 2 tablets (referred to collectively herein as the "Nabi tablets"). (Id.) Defendants manufactured and sold over one million Nabi tablets in 2012 alone. (Id.) Defendants sell the Nabi tablets through various retailers, including both brick-and-mortar retailers and online retailers (e.g., Best Buy, Walmart, Target, and Amazon), as well as on their website (available at http://shop.nabitablet.com). (Id.)

2

To promote the sale of the Nabi tablets, Defendants provide their retail partners with marketing and advertising materials and information. (FAC ¶ 21.) Defendants represent to all their retail partners, who in turn provide this information to consumers, that the Nabi tablets are rechargeable. (Id.) Further, Defendants provide information on their promotional website (http://www.nabitablet.com) relating to the Nabi tablets, where they tell consumers, including Plaintiff, that the Nabi tablets are rechargeable. (Id.) In particular, Defendants state that each of the Nabi tablets includes a "power adapter," is "rechargeable," and has "rechargeable batteries." (Id.)

The representations are false and misleading, because the Nabi tablets are sold with defective power adapters, charging cables, and/or cords (collectively referred to herein as "power adapters") that fail to reliably recharge the tablets. (FAC ¶ 22.) Users who attempt to recharge the Nabi tablets experience recharging failures, well within the first year of operation, including without limitation the following: (i) failure of the tablets to begin recharging (i.e., the charging light indicator will not display an orange light and the battery will not recharge), (ii) failure of the tablets to power on after recharging, and/or (iii) failure of the tablets to function while recharging. (Id.)

At no time have Defendants informed potential consumers, or instructed retailers to inform potential consumers, that the Nabi tablets are not rechargeable or that they cannot be used while charging or plugged in. (Id. ¶ 22.) On the contrary, Defendants have falsely represented on their Facebook page that they have remedied the recharging problems. (Br., Exhs. A and B.) Defendants knowingly and intentionally failed, and continue to fail, to disclose to consumers, including Plaintiff and those similarly situated, that the Nabi tablets have defective power adapters that fail to reliably recharge the tablets. (FAC ¶ 22.) Although at various times, Defendants have attempted to placate complaining consumers by providing them replacement power adapters, they intentionally hide information about the method of

3

obtaining a free replacement, in order to induce consumers to *purchase* a replacement adapter. (Id. ¶¶ 32-33.) When customers do manage to request a free adapter, Defendants regularly just send another defective adapter—sometimes one that was previously used and returned by another customer. (Id. ¶ 31.)

Because the Nabi tablets require a connector that is unique and proprietary, consumers cannot use alternative power adapters. (Id. ¶ 23.) Defendants expressly warn consumers in the user manuals that using other power adapters could damage the tablets. (Id.)

In the summer of 2012, Plaintiff wanted to purchase a tablet for his grandson that was both rechargeable and could be used while it was recharging. (Id. ¶ 37.) Plaintiff researched his options extensively and compared multiple brands of tablets.  (Id.) He also reviewed, and relied on, Defendants' website and the representations that Defendants made to retailers that the Nabi tablets were "rechargeable" and included a "power adapter." (Id.) Accordingly, on or about July 27, 2012, Plaintiff purchased a Nabi 2 tablet from Best Buy. (Id. ¶ 39.) If Plaintiff had known that Defendants' Nabi tablet would not reliably recharge, Plaintiff would not have made his purchase. (Id.)

**B.    Defendants Knowingly Sold Tablets With Defective Power Adapters and Refused to Honor Their Warranty**

Each Nabi tablet includes Defendants' written product warranty, which states, in pertinent part, in similar or identical terms, as follows (emphasis supplied):

> Fuhu warranties for one year from the date of sale to the consumer that *the nabi is of merchantable quality* and that it conforms to applicable specifications.… If you discover that your nabi is not of merchantable quality and fails to conform to its applicable specifications, as defined above, we will, at our option, refund the purchase price, or repair or replace the product, using new or refurbished components

4

within a reasonable time during the warranty period.

(FAC ¶ 26.) Contrary to Defendants' express written warranty, the Nabi tablets are not of merchantable quality at the time of sale and/or for one year from the date of sale because they are sold with defective power adapters that fail to reliably recharge the tablets. (Id. ¶ 28.)

In the months following Plaintiff's Nabi tablet purchase, and well before the end of the first year of ownership, the tablet suffered problems recharging. (Id. ¶ 10.) In particular, the tablet would not enter into charging mode when it was plugged into a power source using the supplied power adapter. (Id.) Additionally, the tablet would not turn on after it had been plugged in and had purportedly been recharged (even when the charging indicator light indicated that recharging was complete). (Id.)

Plaintiff contacted Defendants, at least twice, and informed them of his problems. (Id. ¶ 41.) Plaintiff did not get any response from Defendants to his first two communications. (Id.) After Plaintiff contacted Defendants for the *third* time, Defendants responded and sent a replacement power adapter on or about September 16, 2013. (Id.) The replacement power adapter, however, was also defective and did not remedy the problems Plaintiff experienced. (Id. ¶ 42.)

Defendants are well aware that the Nabi tablets have defective power adapters, because Defendants have received at least tens of thousands complaints from retailers and consumers, as well as requests from consumers for warranty service and/or replacement power adapters. (FAC ¶ 29.) Only Defendants had access to the retailer and consumer complaints and warranty data regarding the defective power adapters. (Id.) Additionally, Defendants were alerted to the defective power adapters by complaints posted on the Internet, including Defendants' own Facebook page. (Id.) For example, on December 29, 2011, Defendants posted the following on their Facebook page: "Many people are having trouble charging you [sic] nabi either because of a faulty charger or a broken charger tip." (Id.) Again, on Decem-

5

ber 31, 2011, Defendants posted the following on their Facebook page: "here's what we have found with regard to the charger problems many of you are experiencing." (Id.) In response to these consumer complaints, Defendants purportedly investigated the problem and determined that the power adapters included with the tablets were defective. (Id.) They then represented that they had redesigned the adapter tip to solve the problem and were going to include working adapters in the "next production run" and provide replacements to affected persons. (Br., Exhs. A and B.)

Despite their representations, Defendants did not fix the defect. Further, in response to consumers complaints and requests for warranty service (including in the first year of ownership), Defendants have failed to (i) refund the purchase price of the Nabi tablets, and/or (ii) adequately repair or replace the Nabi tablets or the power adapter. (FAC ¶¶ 30-36.) At various times, as alleged in the FAC, Defendants have attempted to placate complaining consumers by providing replacement power adapters but they (i) intentionally hide information about the free replacement program to mislead consumers to believe that they must *purchase* a replacement adapter instead of obtaining one for free, and (ii) then send defective, old, and in some cases, used power adapters as replacements that do not remedy the recharging problems. (Id.) Further, in portions of 2013 and 2014, Defendants refused to send free replacement adapters to anyone, but instead told all complainants that they were required to purchase a replacement (Id. ¶ 30); Defendants have not subsequently contacted those persons to correct the error. Even when replacements are provided, it can take well over a month for them to be sent, and the tablets cannot typically be used until the replacement power adapter is received. (Id ¶ 35.) And Defendants *still sell* new Nabi tablets with defective power adapters that fail to reliably recharge the tablets. (Id. ¶ 30.)

**C.     Defendants Attempt to Avoid Litigation by Unlawfully Condition-
ing Software Updates on Acceptance of Arbitration and Class Ac-
tion Waiver Clauses.**

After Plaintiff filed this suit, Defendants thought they found a "silver bullet"
to defeat his attempt to proceed on behalf of a class of all purchasers. In September
2014, they amended their Terms of Use agreement to include arbitration and class
action waiver clauses and then required Plaintiff and all other purchasers to agree to
these amended terms if they wished to receive any of the promised Nabi software
updates or bug fixes. (Id. ¶ 71.) These clauses are unconscionable and constitute a
breach of Defendants' promise to provide all Nabi tablet owners with free software
updates, which include, inter *alia*, fixes to known bugs, and the full use and enjoy-
ment of the tablets that they previously purchased. (Id. ¶ 76.)

**D.     Procedural History and Discovery to Date.**

Plaintiff filed this lawsuit in the Superior Court for the County of Los Ange-
les in July 2014 on behalf of all purchasers of Fuhu's Nabi tablets. (Dkt.# 1.) De-
fendants did not move to dismiss Plaintiff's complaint. Instead, on August 1, 2014,
they answered and removed the case to this Court. (Id.)

Discovery opened, and in early December, the parties attended an unsuccess-
ful mediation. The parties have now served and responded to interrogatories and
requests for production and have produced documents. Defendants' rolling docu-
ment production has already exceeded sixty thousand pages. Plaintiff has taken
multiple days of 30(b)(6) depositions of Defendants. And the parties have con-
ducted dozens of meet-and-confers and have submitted discovery disputes to this
Court for resolution. Pursuant to the Court's March 30, 2015 Order (Dkt.# 39), the
parties will shortly send notice to over **235,000** putative class members who com-
plained to Defendants about recharging problems and/or the defective power adapt-
ers, to give them an opportunity to "opt out" before their contact information is
disclosed to Plaintiff's counsel.

Per the parties' stipulation, on March 5, 2015, Plaintiff filed a first amended complaint. (Dkt.# 31.) The FAC added a single cause of action for declaratory relief relating to the unenforceability of the new terms of service, and it broadened Plaintiff's existing CLRA claim to allege violation of section 1770(a)(19) (inserting an unconscionable provision in a contract), and included a prayer for damages. (Id.) With regard to the existing claims relating to Defendants' misrepresentations, omissions, and breaches of warranty, the FAC did not change the claims but merely included additional facts, learned in discovery, to support the claims. Defendants now move to dismiss, but they raise *no argument* about the new claims, instead attacking only the original claims.

Because they answered instead of moving to dismiss the original complaint, Defendants have implicitly conceded that the prior allegations about were sufficient to "prepare an adequate answer to the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). It can also be inferred that they understand what this case is about because they were able to produce documents and Rule 30(b)(6) witnesses. Yet now they move to dismiss the old claims, primarily for failure to plead with particularity under Rule 9(b). They also raise a few substantive challenges, none of which are appropriate under Rule 12. Their newly found confusion, and corresponding make-work motion, are unsupported by the Federal Rules or applicable case law, and should be rejected.

## III.   ARGUMENT

### A.   Legal Standards

To survive a Rule 12(b)(6) motion, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 1974 (2007); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer standing upon him") (citations omitted). In considering a motion pur-

1  suant to Rule 12(b)(6), a court must accept as true all material allegations in the
2  complaint, as well as all reasonable inferences to be drawn from them. *See Pareto*
3  *v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

4      Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with par-
5  ticularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The
6  rule "does not require nor make legitimate the pleading of detailed evidentiary mat-
7  ter." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). The purpose of
8  Rule 9(b) is to "deter the filing of complaints as a pretext for the discovery of un-
9  known wrongs," *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405
10 (9th Cir. 1996) (internal quotations omitted), and "to ensure that defendants are
11 given adequate notice of the specific claims against them so that they can defend
12 against the charge." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Ac-
13 cordingly, all that is necessary to satisfy Rule 9(b) is an "identification of the cir-
14 cumstances constituting fraud so that the defendant can prepare an adequate answer
15 from the allegations." *Id.*

16 **B.  Defendants' Motion Should Be Viewed Unfavorably and Rejected**
17     **as Untimely.**

18     A party that files a pleading asserting defenses under Rule 12(b) (failure to
19 state a claim upon which relief can be granted) "must not make another motion un-
20 der this rule raising a defense or objection that was available to the party." *See, e.g.,*
21 Fed. R. Civ. P. 12(g)(2); *see also* 5C Charles Alan Wright & Arthur R. Miller, Fed-
22 eral Practice & Procedure § 1388 (3d ed. 2004) (stating that "[t]he filing of an
23 amended complaint will not revive the right to present by motion defenses that were
24 available but were not asserted in timely fashion prior to the amendment of the
25 pleading"); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per cu-
26 riam) (holding that the Rule 12(b)(6) motion that followed an answer was un-
27 timely). Here, each of Defendants' arguments was available to them in response to
28 the original complaint, which they answered and have defended for months. This

Court should therefore reject their request for more particularity as untimely and inappropriate.

*Brain Life, LLC v. Elekta Inc.*, Case No. 10cv1539–LAB (BGS), 2012 WL 48024 (S.D. Cal. Jan. 6, 2012) is instructive. In *Brain Life*, two defendants answered the complaint and two defendants filed motions to dismiss. The court granted, in part, the motions to dismiss, with leave to amend. After Plaintiff filed a first amended complaint, one of the defendants that had previously answered (Medtronic) moved to dismiss. Plaintiff argued that Medtronic had waived its arguments. The court agreed and struck the motion to dismiss, holding that a defendant cannot change "course and move to dismiss a complaint that it previously answered when the factual allegations against it in the amended complaint are the same." *Id.* at *5-6. It explained:

> There is no getting around the fact that Medtronic answered Brain Life's original complaint, and Brain Life filed an amended complaint only to correct the inadequacies the Court found in its claims against Varian. The factual allegations against Medtronic remained the same, which was sensible on Brain Life's part considering that Brain Life had answered them.
>
> ***
>
> If Medtronic were to get its way, defendants in multiple-defendant cases could repeatedly revise their tactical approach when, fortuitously, the claims against another defendant are dismissed without prejudice and a plaintiff is granted leave to amend. The potential for gamesmanship and delay would be great, particularly in cases involving numerous defendants in which a plaintiff is given multiple opportunities to amend. To be clear, the Court is not taking the position that Medtronic has waived the argument that Brain Life has failed to state a claim on which relief can be granted. Medtronic has simply waived the opportunity to make that argument in a Rule 12(b)(6) motion to dismiss.

---

10

*Id.* * 6-7. (citations omitted.) The same is true here.

Even if this Court views the filing of an amended complaint as reviving Defendants' right to move to dismiss, the additional allegations are not the type of "new matter" that should revive Defendants' right to file a post-answer motion to dismiss under Rule 9(b). *See, e.g., Keefe v. Derounian*, 6 F.R.D. 11, 13 (N.D. Ill. 1946) ("[I]f the amendment to the complaint contains new matter, which, had it originally been in the complaint, would have allowed the defendant to object by motion, the defendant's right to object by motion to the complaint as amended cannot have been waived by any prior motion."). Here, while the amendment supplied more facts learned in discovery to support the fraud and warranty claims, the underlying challenged conduct is the same. If the allegations were previously sufficient to give Defendants "notice of the specific claims against them so that they can defend against the charge," which is the purpose of Rule 9(b)*, see Semegen,* 780 F.2d at 731, then the more detailed allegations in the amended complaint must *a fortiori* satisfy the rule. *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988); *see also In re Morrison*, 421 B.R. 381, 386 (Bankr. S.D. Tex. 2009) (finding Rule 9(b) post-answer motion to dismiss as untimely where Plaintiff had merely added new and specific fraud allegations to bolster Plaintiffs' previously asserted fraud claims against each of the defendants; holding that Defendants should have raised the defense in a motion to dismiss the original complaint.).

## C. Plaintiff Has Adequately Pled Fraud-Based Claims.

### 1. Plaintiff Has Adequately Pled Misrepresentation Claims

In addition to being procedurally improper, the Rule 9(b) motion should also be rejected on the merits. The Ninth Circuit requires that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Defendants complain that Plaintiff has failed to meet this standard, but the FAC contains all the information required by *Kearns*. Plaintiff specifically pleads that in the

summer of 2012 (when), he viewed Defendants' (who) statements that the Nabi tablet was "rechargeable" and came with an included "power adapter" to recharge the tablet (what) on Defendants' website and in the representations that Defendants made to retailers (where). (FAC ¶¶ 37-42.) Further, Plaintiff states that the tablet is not actually rechargeable because Nabi does not provide working adapters, and third-party adapters cannot be used (how). (*Id.*) Such allegations are sufficient to state a claim based on fraud. For example, in *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011), the Court, applying *Kearns*, held that plaintiff's allegations satisfied Rule 9(b) because:

> The 'who' is Ben & Jerry's, Breyers, and Unilever. The "what" is the statement that ice cream containing alkalized cocoa is "all natural." The "when" is alleged as "since at least 2006," and "throughout the class period." The "where" is on the ice cream package labels. The "how the statements were misleading" is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a "synthetic."

*Id.* at * 6. Plaintiff's allegations suffice for the same reasons.

Defendants separately complain that Plaintiff has failed to meet his burden because he does not allege "how he relied" on Defendants representations. (Br. 7-8.) Neither *Kearns* nor any other Ninth Circuit case requires a plaintiff to allege reliance with the particularity demanded by Defendants. Rather, *Kearns* upheld a dismissal because the plaintiff had generally described various advertisements without identifying any advertisement that he saw and without pleading why he found the representation material. 567 F.3d at 1125. Here, however, Plaintiff identifies the representations that he saw – Defendants' website and the representations that Defendants made to retailers – as well as their content (i.e., that the Nabi tablet was "rechargeable" and came with an included "power adapter" to recharge the tablet). (FAC ¶ 37.) Further, Plaintiff explained why the ability to recharge the tablet

was material to his purchase. (*Id.*) Rule 9(b) does not require more. *See, e.g., Linear Technology Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134-135 (2007) (holding that "a plaintiff need not plead the exact language of every deceptive statement; it is sufficient for [the] plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme," and that a plaintiff's allegations "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive") (citation omitted).

Defendants next argue that Plaintiff has failed to allege actionable misrepresentations, because their statements that the Nabi tablets were "rechargeable," had rechargeable batteries, and included power adapters to recharge the tablets were literally true. (Br. at 8-9.) But claims under the FAL, UCL, and CLRA are not limited to untrue statements; instead, those laws prohibit advertisements and representations that are untrue, misleading, and/or likely to deceive reasonable consumers. *See, e.g.*, *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 683 (2003) (Section 17500 proscribes "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (internal quotations omitted); *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003) ("Conduct that is likely to mislead a reasonable consumer … violates the CLRA.") (internal quotations omitted); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) ("In order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising" under the fraud prong.). Here, Plaintiff alleges that that Defendants' advertisements and representations were untrue, misleading, or likely to deceive because: (i) the Nabi tablets could not be reliably recharged; (ii) the included power adapters did not reliably recharge the tablets; and (iii) Defendants did not disclose the defect to consumers. (*See, e.g.,* FAC ¶¶ 1-3 and 21-23.)

Defendants further argue that not every warranty case or product defect gives rise to a fraud claims. (Br. 9.) While the general statement is true, here the Nabi tablets' failure to reliably recharge do give rise to fraud claims because Defendants represented the tablets as rechargeable and including a power adapter to recharge the tablets, with the *knowledge* that those statements were untrue. *See, e.g.*, *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011) (denying motion to dismiss UCL and CLRA claims "premised on allegations that [Defendant] knew, or should have known, of [a product defect] and falsely advertised the product, thereby inducing Plaintiff and thousands of putative class members to purchase a defective product").

**2.     Plaintiff Has Adequately Pled Fraudulent Omission Claims.**

Defendants next argue that Plaintiff's claims based on fraudulent omissions fail because Defendants had no duty to disclose the defective power adapters. (Br. 9-14.) Under California law, a duty to disclose material facts exists when the defendant: (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; *or* (4) makes partial representations but also suppresses some material facts. *See Smith v. Ford Motor Co.*, 749 F.Supp. 2d 980, 987 (N.D. Cal. 2010), *citing Li-mandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). Plaintiff alleges the last three circumstances here. Defendants do not attack Plaintiff's allegation of concealment, and, accordingly, Plaintiff's claims survive under that theory alone. Plaintiff also sufficiently pleads that Defendants had exclusive knowledge of material facts not known to Plaintiff and that Defendants made partial representations about the tablets' rechargeability while suppressing material facts.

Defendants cite a line of cases that interpret *Daugherty v. American Honda* as holding that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) (*citing Daugherty v.*

14

*American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)). Even if this interpretation is correct,[1] there *was* an affirmative misrepresentation here: namely that the tablets were rechargeable and came with a power adapter that would re-charge them. *See, e.g., Horvath v. LG Elecs. MobileComm U.S.A., Inc*., Case No. No. 3:11–CV–01576–H–RBB, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012); *see also Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1268 (C.D. Cal. 2007). (*See, e.g.,* FAC ¶¶ 1-3 and 21-23.)

Defendants also argue that they did not have exclusive knowledge of material facts unknown to Plaintiff, because they disclosed the power adapter problems on their Facebook page, and Plaintiff should have known about the defects from his pre-purchase research. (Br. at 12.)[2] In fact, Defendants' Facebook page falsely said that they had *fixed* the problem by "finding a new charger for next production run" and that the problems would be addressed for the "next shipment of tablets." (Br. at 2-3.) Contrary to these representations, Defendants continued to sell Nabi tablets with adapters that failed to reliably recharge. (FAC ¶ 30.) Defendants' Facebook

---

[1] Although Plaintiff satisfies *Wilson,* he notes that *Wilson* also interpreted *Daugherty* to preclude fraudulent omission claims involving allegations of defects that manifest *after* the warranty period when a product wears out over time. *See* 144 Cal. 4th 829 ("Opening the door to [a theory of liability based on a product's failure outside the warranty period] would change the landscape of warranty and product liability law in California.); *see also Baba v. Hewlett-Packard Co.*, Case No. C 09-05946 RS, 2010 WL 2486353, at *4 (N.D. Cal. June 16, 2010) (noting that *Daugherty* addressed alleged defects manifesting after the warranty period); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-56 (2011) (sustaining claim that the defendant failed to disclose that its computers had a defective microchip that caused them to be susceptible to data corruption at any time, including during the warranty period).

[2] A manufacturer has "exclusive knowledge" of a product defect when the manu-facturer: (i) is in a superior position to know of the defect or (ii) knew of this defect while the consumer did not, and, given the nature of the defect, it was difficult to discover. *See Collins*, 202 Cal. App. 4th 249; *Marskikian v. Mercedes Benz USA*, Case No. CV 08–04876 AHM2009, WL 8379784 (C.D. Cal. May 4, 2009).

page also said that they would give working replacement adapters to complaining consumers. (Br., Exhs. A and B.) But Defendants actually (1) made it difficult or impossible to get free replacements and (2) when they did offer free replacements, provided defective, old, and sometimes used, adapters. (Id. ¶¶ 31-36.) These facts do not establish that Plaintiff had knowledge of the defects; instead, they are yet another example of the false and misleading statements that form the basis of Plaintiff's claims. Indeed, the facts here are even stronger than those in *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007), in which the court held that plaintiffs sufficiently alleged exclusive knowledge sufficient to give rise to a duty to disclose:

> It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers (as quoted in the complaint). Some may have. But GM is alleged to have known a lot more about the defective speedometers, including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.

*Id.*[3] This Court should reject Defendants' argument that it should not have been required to disclose the recharging defect to consumers prior to their purchases.

---

[3] Defendants' argument should also be rejected because it impermissibly requires the Court to infer that Plaintiff reviewed the portions of Defendants' Facebook page on which they rely. *See, e.g.*, *Al–Kidd v. Ashcroft*, 580 F. 3d 949, 956 (9th Cir. 2009) ("The material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the nonmovant."). Plaintiff alleged that, prior to his purchase, he did not know that the Nabi tablets failed to reliably recharge. (*See, e.g.,* FAC ¶¶ 38-40.) Plaintiff did not allege that he reviewed any of Defendants' Facebook pages prior to his purchase, let alone the statements cited by Defendants.

16

**D.    Plaintiff Has Adequately Pled Breach of Warranties.**

    **1.    The FAC States a Claim for Breach of Express Warranty.**

Defendants next argue that Plaintiff has failed to state a claim for breach of express warranty because he must show that he reported the defect and Defendants failed to correct it. (Br. at 15) (citing *Orichan v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1333-34 (2014)). The argument is, at a minimum, odd, because Plaintiff alleges that he sought warranty support three times, was ignored twice, and on the third attempt was sent another defective adapter that, contrary to product specifications, does not allow the Nabi tablet to be used while it is charging. (*Id.* ¶¶ 41-22.) Contrary to Defendants' assertion, Plaintiff does not admit that the new defect is a "software" issue but only that Defendants *contend* that the problems Plaintiff is experiencing are related to the Nabi software. (*Id.*) Plaintiff clearly alleges that "[t]he replacement power adapter, however, was also defective and did not remedy the problems Plaintiff experienced recharging the Nabi tablet." (*Id.*) While Defendants contend that the power adapter would function properly if Plaintiff updated his software, this contention cannot support a motion to dismiss, particularly since Defendants will only provide the software update if Plaintiff accepts their amended Terms of Use, in which he must waive his right to a class action and agree to arbitration. Defendants' amended Terms of Use is unconscionable in violation of Section 1770(a)(19), and Plaintiff's refusal to accept the amendment cannot support dismissal of his warranty claim. (*See, e.g.*, FAC ¶ 76.) Plaintiff also alleges that *thousands* of other consumers reported the defect to Defendants, that Defendants failed to remedy the defect and that Defendants continue to sell Nabi tablets with defective adapters and to provide defective replacement adapters. (Id. ¶ 30.) The Complaint even quotes messages from numerous Nabi purchasers who have had to

1  replace their adapters multiple times. (Id. ¶¶ 45-65.)[4]

2  **2.    The FAC States a Claim for Violation of the Song-Beverly**

3  **Act.**

4  Defendants argue that Plaintiff's Song-Beverly Act claims fails because sec-

5  tion 1793.2 of the California Civil Code requires that consumers provide merchants

6  "a reasonable number of opportunities" to remedy a defect before bringing suit for a

7  breach of warranty. (Br. at 16-17.) This argument fails for the same reason as the

8  prior one: Plaintiff did provide Defendants with a reasonable number of opportuni-

9  ties to remedy the defect. Defendants ignored the first two opportunities and on the

10 third sent another defective adapter. Defendants also have received many thousands

11 of complaints about the defective adapter; rather than remedying the defect, they

12 have continued to sell tablets with defective adapters and failed to send working re-

13 placements. In light of these allegations, Defendants certainly cannot establish as a

14 matter of law that they lacked a "reasonable" number of opportunities to remedy the

15 defect. *See, e.g., Ibrahim v. Ford Motor Co.,* 214 Cal. App. 3d 878, 886 (Ct. App.

16 1989) (reasonableness of number of opportunities to remedy a defect is a determi-

17 nation for a trier of fact).

18 Furthermore, even if the argument had some factual basis, it would not apply

19 to Plaintiff's claim for breach of the implied warranty of merchantability. The stat-

20 ute that Defendants cite applies only to express warranties. Cal. Civ. Code §

21 1793.2(d)(2) ("If the manufacturer or its representative in this state is unable to ser-

22 vice or repair a new motor vehicle ... to conform to the applicable ***express*** warran-

23 ties after a reasonable number of attempts ..." (emphasis added)). California courts

24

25 [4] It is not even clear that the *Orichan* presentment rules apply here, as the purchases by Plaintiff and class members were from third-party retailers, not directly from the manufacturer. *See Keegan*, 838 F. Supp. 2d at 947; *Sanders v. Apple, Inc.*, 672 F.

26 Supp. 2d 978, 989 (N.D. Cal. 2009) (concluding that "timely notice of a breach of

27 an express warranty is not required where the action is against a manufacturer and

28 is brought 'by injured consumers against manufacturers with whom they have not dealt,'" quoting *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 61 (1963)).

18

have held that § 1793.2 does not apply to claims for breach of implied warranty. *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406–08 (2003) ("The Act's provisions requiring repairs after breach of an express warranty are lengthy and de-tailed. There is no reason to believe failure to set out the same process in case of a breach of the implied warranty of merchantability was an oversight"); *see also Keegan*, 838 F. Supp. 2d at 947 (same). Plaintiff was not required to provide De-fendants any opportunity to remedy their breach of the implied warranty of mer-chantability.

**E.     If Any Allegations Are Insufficient, Leave To Amend Should Be Granted.**

        If a motion to dismiss is granted, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any of Plaintiff's allegations insufficient to state a claim, he requests leave to amend.

**IV.    CONCLUSION.**

        For the foregoing reasons, this Court should deny Defendants' motion to dismiss.

Dated:  April 15, 2015                          **GUTRIDE SAFIER LLP**


                                                _____
                                                Adam J. Gutride, Esq.
                                                Seth A. Safier, Esq.
                                                Todd Kennedy, Esq.
                                                Marie A. McCrary, Esq.
                                                100 Pine St., Suite 1250
                                                San Francisco, California 94111

                                                Attorneys for Plaintiff

PROOF OF SERVICE

19

I, Seth A. Safier, declare:

My business address is 100 Pine Street, Suite 1250, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

On April 15, 2015, I served the following documents:

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**on the following person(s) in this action by placing a true copy thereof as follows:**

Ivo Labar
Kerr & Wagstaffe LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105

[x]  BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) noted above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this document was executed on April 15, 2015, at San Francisco, California.

/s/Seth Safier

_____
Seth A. Safier, Esq.