UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Seth Safier | Ivo Labar |

**Proceedings:**     DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (filed April 1, 2015, dkt. 42)

## I.     INTRODUCTION

On July 7, 2014, plaintiff Scott Miller filed a putative class action against defendants Fuhu, Inc. and Fuhu Holdings, Inc. (collectively, "defendants") in Los Angeles County Superior Court.  Dkt. 1.  Defendants removed the action to this Court on August 5, 2014, asserting diversity jurisdiction.  Id.  On March 5, 2015, plaintiff filed the operative first amended complaint ("FAC").  Dkt. 31.  The FAC alleges claims for (1) violation of California's Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq. ("CLRA"); (2) violation of California's False Advertising Law, Cal. Bus. Prof. Code § 17500, et seq. ("FAL"); (3) common law fraud, deceit, and/or misrepresentation; (4) breach of express warranty, in violation of Cal. Com. Code § 2100, et seq.; (5) breach of the implied covenant of merchantability, in violation of the Song-Beverly Consumer Warranty Act, Cal. Civil Code § 1790, et seq. ("Song-Beverly Act"); and (6) violation of California's Unfair Competition Law, Cal. Bus. Prof. Code  §§ 17200, et seq. ("UCL"). Id.

On April 1, 2015, defendants filed a Rule 12(b)(6) motion to dismiss plaintiff's FAC.  Dkt. 42.  Plaintiff filed an opposition on April 15, 2015, dkt. 43, and defendants replied on April 20, 2015, dkt. 44.  The Court held a hearing on May 4, 2015.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

## II.   BACKGROUND

Defendants manufacture electronic tablets for children.  FAC ¶ 20.  Among these products are the Nabi XD, Nabi 2, Nabi 2 S, Nabi Jr., and Disney and Nickelodeon special edition Nabi 2 tablets (referred to collectively as the "Nabi tablets").  Id.  To promote the sales of Nabi tablets, defendants provide advertising materials and information to their retail partners, and also communicate such information directly to consumers through their website (http://www.nabitablet.com).  Id. ¶ 21.  As is relevant here, defendants market, advertise, and represent to retailers, and on their website, that each Nabi tablet includes a "power adapter," is "rechargeable," and has "rechargeable batteries."  Id.  Similar representations also appear in Nabi tablet user manuals.  Id. ¶¶ 24-25.  Among other things, the manuals represent that the tablets may be used while connected to an external power source, i.e., while recharging.  Id. ¶ 28.

According to plaintiff, defendants' representations are false because the Nabi tablets have defective power adapters that fail to reliably recharge the tablets.  Id.  ¶ 22.  In particular, consumers attempting to recharge the Nabi tablets using the provided power adapters experience intermittent recharging failures, well within the first year of operation, including the following: "(i) failure of the tablets to begin recharging (i.e., the charging light indicator will not display an orange light and the battery will not recharge); (ii) failure of the tablets to power on after recharging; and/or (iii) failure of the tablets to function while recharging."  Id.  Plaintiff alleges that defendants have not informed potential consumers or instructed retailers to inform potential consumers that the Nabi tablets are not rechargeable or that they cannot be used while charging or plugged in; instead defendants "knowingly and intentionally failed to disclose [this information] to consumers."  Id.

Each Nabi tablet also includes defendants' written product warranty, which provides, "in pertinent part, in similar or identical terms," as follows:

Fuhu warranties for one year from the date of sale to the consumer that the nabi is of merchantable quality and that it conforms to applicable specifications. Applicable specifications mean the specification for the Processor, the CPU (Central Processing Unit). The applicable specifications

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

exclude and no warranty is provided for the specifications for any other components or for any performance that can degrade naturally with normal use for one year . . . If you discover that your nabi is not of merchantable quality and fails to conform to its applicable specifications, as defined above, we will, at our option, refund the purchase price, or repair or replace the product, using new or refurbished components within a reasonable time during the warranty period.

Id. ¶ 26.  This written warranty is also available on defendants' website.  Id. ¶ 27. According to plaintiff, the Nabi tablets are not of merchantable quality because they are sold with defective power adapters that fail to reliably recharge the tablets.  Id. ¶ 28. Plaintiff further alleges that "when consumers complain to Defendants during the warranty period that the Nabi tablets do not recharge and/or cannot be used while they are recharging, defendants have failed to either (i) refund the purchase price of the Nabi tablets, or (ii) adequately repair or replace the Nabi tablets or the power adapters."  Id.

Plaintiff alleges that defendants have been aware that the Nabi tablets contain defective power adapters that fail to reliably recharge the tablets since at least December 2011.  See id. ¶ 29.  Defendants have received hundreds of complaints from third-party retailers and consumers, in addition to requests from consumers for warranty service and/or replacement power adapters.  Id.; see also Id. ¶¶ 44-67 (a "small sample of hundreds of consumer complaints" appearing on defendants' Facebook page and ranging in date from December 31, 2011 to February 27, 2015).  In response to these initial consumer complaints, defendants investigated the recharging problem and determined that the power adapters included with the tablets were defective.  Id.  Defendants announced this in a December 31, 2011 Facebook post, and stated that they had remedied the problem.  Id.

According to plaintiff, although defendants initially sent replacement power adapters to consumers who complained, these replacements were also defective.  Id. ¶ 30.  Plaintiff further alleges that, for a period of time, defendants refused to send replacement power adapters to consumers who complained within the warranty period.  Id.  Instead, defendants directed these consumers to purchase another power adapter from defendants or from a third party, despite defendants' express warning in the Nabi tablet user manual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

that a non-Nabi brand power adapter could damage the tablet.  Id.  Plaintiff alleges that defendants resumed sending replacement power adapters to complaining consumers on July 9, 2014.  Id. ¶ 31.  However, plaintiff alleges that defendants continue to send defective replacement adapters and "cryptically communicate this replacement program to Nabi tablet owners on their website and Facebook page."  Id.

On or about July 27, 2012, plaintiff Scott Miller purchased a Nabi 2 tablet from Best Buy for $199.99 for his grandson.  Id. ¶¶ 37, 39.  Before making his purchase, plaintiff researched his options, compared multiple brands of tablets, and reviewed defendants' website and the representations that defendants made to retailers that Nabi tablets are "rechargeable" with an included "power adapter."  Id. ¶ 37.  Plaintiff specifically wanted to purchase a tablet that was both rechargeable and could be used while it was recharging, such as during a car ride or while plugged directly into a wall outlet.  Id.  Moreover, plaintiff alleges that he read and relied upon each of defendants' affirmative misrepresentations and omissions before completing his purchase.  Id.  ¶ 38.

Shortly after his purchase, and within the first year of ownership, plaintiff alleges that he began experiencing problems recharging the Nabi tablet.  Id. ¶ 40.  In particular, plaintiff's Nabi tablet would not enter into charging mode when it was plugged into a power source using the supplied power adapter, and would not turn on after it had been plugged in and had purportedly been recharged, even when the tablet's charging light indicated that recharging was complete.  Id.  Plaintiff alleges that he contacted defendants at least twice during the first year of ownership regarding his recharging problems, but that he did not receive any response.  Id. ¶ 41.  Plaintiff was able to connect with defendants on his third attempt, and they sent plaintiff a replacement power adapter on or about September 16, 2013.  Id.  Plaintiff, however, alleges that the replacement adapter was also defective, because plaintiff is still unable to use his Nabi tablet while it is plugged into a power source. Id. ¶ 42.

Defendants contend that the plaintiff can remedy the issue he is currently experiencing by installing a software update, provided by defendants, on his Nabi tablet. Id.  According to plaintiff, defendants promise to provide and do provide free software updates for the Nabi tablets.  Id. ¶ 68.  When defendants release such an update, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | | Date | May 4, 2015 |
|----------|------------------------|---|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | | |

notification is "pushed" to all Nabi tablets that are connected to the Internet, notifying users that a software update is available to download.  Id.  These "over-the-air" software updates provide Nabi users with vital updates to the tablet's functionality, including updates to the operating system, and fixes to known errors or bugs in the software.  Id.

Plaintiff, however, has declined to install these over-the-air updates on his Nabi tablet since, in order to do so, he and all other Nabi owners are required to agree to defendants' amended Terms of Use.  Id.  ¶ 71.  Plaintiff alleges that in September 2014—after plaintiff filed his original complaint—defendants amended the Terms of Use to include both an arbitration clause and a class action waiver provision.  Id. ¶ 72 (setting forth relevant language of Terms of Use).  Plaintiff alleges that this presents consumers with a Hobson's Choice.  Id. ¶ 74.  Plaintiff further alleges that defendants have attempted to conceal these amendments by intentionally indicating on their website that the Terms of Use were "last updated" on August 16, 2013, even though they were actually revised in September 2014.  Id. ¶ 75.

## III.   LEGAL STANDARD

### A.      Fed. R. Civ. P. 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a  cognizable legal theory.' "  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Polic Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | | Date | May 4, 2015 |
|---|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | | |

### B.    Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity.  Rule 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud."  Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003).  A claim is said to be "grounded in fraud" or " 'sounds in fraud' " where a plaintiff alleges that defendant engaged in fraudulent conduct and relies solely on that conduct to prove a claim.  Id.  "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)."  Id.  However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements.  Id. at 1104.

A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973).  This requires that a false statement be alleged, and that "circumstances indicating falseness" be set forth.  In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Thus, Rule 9(b) requires a plaintiff to "identify 'the who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.' "  Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## III.   DISCUSSION

### A.    Whether Defendants' Rule 12(b)(6) Motion is Timely

As a preliminary matter, plaintiff contends that the instant motion to dismiss the FAC should be rejected as untimely, since defendants previously filed an answer to plaintiff's original complaint in state court on August 1, 2014.  Opp'n Mot. Dismiss at 9. Defendants counter that their  motion is timely, because it seeks dismissal of the FAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

filed on March 5, 2015, and in the alternative, assert that the Court should treat the instant motion as a motion for judgment on the pleadings under Rule 12(c).  Reply at 2-6.

In support of his position, plaintiff directs to the Court to a leading treatise, which explains that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion."  Charles A. Wright et al., 5C Federal Practice and Procedure, § 1388 (3d ed.).  According to plaintiff, because the arguments presently asserted by defendants were available to them in response to the original complaint, "which they answered and have defended for months," Opp'n Mot. Dismiss at 9, the Court should "reject [defendants'] request for more particularity as untimely and inappropriate," id. at 10.

Plaintiff is correct that, typically, "[a] Rule 12(b)(6) motion must be made *before* the responsive pleading."  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954 (9th Cir. 2004) (emphasis in original).  However, failure to state a claim "is a nonwaivable defect and can be raised any time."  Schwarzer et al., Federal Civil Procedure Before Trial, § 9:1999 (9th Cir. ed., The Rutter Group 2008) (citing Fed. R. Civ. P. 12(h)(2)).  Moreover, "[a]s a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.' "  Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010) (quoting Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967)).  In light of these principles, the Court declines to deny defendants' motion as untimely.  See Trachsel v. Buchholz, 2009 WL 86698, at *2 (N.D. Cal. Jan. 9, 2009) (relying on Rule 12(h)(2) to reject plaintiffs' argument that "the court cannot even reach substantive issues of law because defendants have already waived their Rule 12(b)(6) claims by failing to timely file a responsive pleading to the amended complaint and by failing to raise them in connection with the original complaint."); see also Contreras v. JPMorgan Chase, 2014 WL 5786244, at *4 (C.D. Cal. Nov. 6, 2014) (considering defendants' arguments made on a successive 12(b)(6) motion "for the sake of judicial economy," even though motion was technically improper under Rule 12(g)(2)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Furthermore, the two cases relied upon by plaintiff, Brain Life, LLC v. Elekta Inc., 2012 WL 48024 (S.D. Cal. Jan. 6, 2012) and In re Morrison, 421 B.R. 381 (Bankr. S.D. Tex. 2009), do not require a different outcome.  In Brain Life, plaintiff sued four defendants; as is relevant here, one defendant, Varian, moved to dismiss the complaint and another defendant, Medtronic, answered.  2012 WL 48024 at *1.  The court granted Varian's motion to dismiss without prejudice, and plaintiff subsequently filed an amended complaint addressing the deficiencies in its allegations against Varian.  Id. Medtronic then moved to dismiss the amended complaint, and plaintiff argued that Medtronic should be bound by its original answer.  Id.  The court framed the question before it accordingly: "Can Medtronic change course and move to dismiss a complaint that it previously answered when the factual allegations against it in the amended complaint are the same?"  Id. at *2.  Noting a lack of caselaw addressing the issue, the court ruled in favor of plaintiff, since "[i]f Medtronic were to get its way, defendants in multiple-defendant cases could repeatedly revise their tactical approach when, fortuitously, the claims against another defendant are dismissed without prejudice and a plaintiff is granted leave to amend."  Id.  Although here, as in Brain Life, the factual allegations contained in the FAC are substantially similar to those contained in the complaint, the procedural posture of the instant case differs significantly.  Namely, no prior motion to dismiss has been brought and defendants are jointly represented; thus, there is no risk that defendants will "repeatedly revise their tactical approach" in response to motions brought by co-defendants.

In re Morrison, 421 B.R. 381 (Bankr. S.D. Tex. 2009), is more on point, and similarly supports reaching the merits of the instant motion.  There, defendants answered plaintiff's original complaint, but filed a Rule 12(b)(6) motion to dismiss plaintiff's subsequently filed amended complaint.  The court concluded that the 12(b)(6) motion was technically untimely, since defendant's "right to assert the failure to state a claim defense arose at the time of the original complaint," and the "new matter" added to the FAC was not of the "type . . . that revives Defendants' right to file a post-answer motion to dismiss."  Id. at 386.  However, the court went on to acknowledge that the defense of failure to state a claim "is particularly preserved from the waiver rule," and thus could be presented by defendants through a Rule 12(c) motion for judgment on the pleadings once the pleadings had closed.  Collecting cases, the court then explained that courts are divided on the issue of how to treat a Rule 12(b)(6) motion brought after an answer to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | | Date | May 4, 2015 |
|----------|------------------------|---|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | | |

original complaint—some courts treat it as a Rule 12(c) motion, while others maintain it under Rule 12(b)(6).  Id. at 388-89.  Ultimately, because "both motions carr[y] identical analyses under the same standard of review," id. at 389, and because the pleadings were not yet closed, the court decided "the present motion [to dismiss] is ready to review despite the procedural technicalities," id.

The Court reaches the same conclusion here.  However, plaintiff's arguments as to the plausibility of defendants' Rule 9(b) contentions—namely, that defendants, after litigating this case since August 2014 are not "on notice" of the substance of plaintiff's claims—are well-taken, and inform the analysis set forth infra.

## A.    Claims Sounding in Fraud

### 1.    Misrepresentations

Plaintiff's claims for violation of the CLRA, FAL, and UCL, as well as for common law fraud, are premised upon the allegation that defendants fraudulently misrepresented to consumers that their Nabi tablets were "rechargeable" and contained "rechargeable batteries," when, in fact, the tablets failed to reliably recharge.  Defendants contend that all of these claims fail because plaintiff has failed to allege the misrepresentations with the particularity required by Rule 9(b), failed to allege facts showing that defendants' representations were false, and failed to adequately allege reliance.  Mot. Dismiss at 5-9.

Defendants' arguments fall flat.  At bottom, "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . *so that they can defend against the charge* and not just deny that they have done anything wrong."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted) (emphasis added).  The allegations in the FAC, which defendants contend "totally fail to inform [them] of the basis of [plaintiff's] claims," Mot. Dismiss at 1, are practically identical to allegations contained in plaintiff's original complaint.  Compare, FAC ¶¶ 21, 24, 37, 92, 97, 104, 115, 147 with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Compl. ¶¶ 21, 30, 69, 72, 79, 90, 123.[1]  As noted above, plaintiff filed the original complaint in July 2014 and defendants answered on August 1, 2014.  Since that time, the parties have engaged in discovery, even submitting discovery disputes to the Court for resolution, and plaintiff has taken multiple days of Rule 30(b)(6) depositions of defendants.  Opp'n Mot. at 7; see also dkts. 20-29.  Simply put, defendants' contention that they lack notice of plaintiff's charges—which they have been defending for more than six months—strains credulity.

In any event, as defendants' actions plainly indicate, plaintiff has adequately pleaded the "the who, what, when, where and how" of the alleged deceptions.  See Kearns, 567 F.3d at 1124.  Plaintiff specifically pleads that in the summer of 2012 (the "when"), he viewed defendants' (the "who") statements that the Nabi tablet was "rechargeable" and came with an included "power adapter" to recharge the tablet (the "what") on defendants' website and in the representations that defendants' made to retailers (the "where").  FAC ¶¶ 37-42.  Plaintiff further alleges that the Nabi tablets are not actually rechargeable because defendants do not provide working power adapters, and adapters provided by third-party manufacturers cannot be used (the "how").  Id. These allegations satisfy the particularity requirements of Rule 9(b).  Cf. Astiana v. Ben & Jerry's Homemade, Inc., 2011 WL 2111796 (N.D. Cal. May 26, 2011) ("The 'who' is Ben & Jerry's . . . The 'what' is the statement that [the challenged] ice cream [ingredient] . . . is 'all natural.' The 'when' is . . . 'since at least 2006,' . . . The 'where' is on the ice cream package labels. The 'how the statements were misleading' is the allegation that defendants did not disclose that [the challenged ingredient] . . .  is a 'synthetic.' ").

---

[1] Plaintiff represents that the FAC differs from the complaint in that it added a single claim for declaratory relief relating to the alleged unenforceability of defendants' amended Terms of Use, broadened plaintiff's existing CLRA claim to allege violation of section 1770(a)(19) for inserting an unconscionable provision into a contract, and added a prayer for damages.  Opp'n Mot. Dismiss at 8.  With regard to the existing claims regarding defendants' alleged misrepresentations, omissions, and breaches of warranty, "the FAC did not change the claims but merely included additional facts, learned in discovery, to support the claims."  Id.  The Court has carefully reviewed both the FAC and the complaint and concludes that plaintiff's representations are accurate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Similarly, plaintiff has adequately pleaded reliance on defendants' alleged misrepresentations.  Defendants are correct that, under California law, justifiable reliance is a required element of a fraud claim.  Kearns, 567 F.3d at 1126; In reTobacco II Cases, 46 Cal. 4th 298, 326 (2009) ("Reliance is an essential element of . . . fraud . . . [and] is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.").  Here, however, plaintiff has identified the specific representations concerning the ability to recharge the Nabi tablets, which he saw on defendants' website, FAC ¶ 37, and has expressly alleged that these representations were material to his purchase and that he relied upon them, id.  ¶¶ 37, 38.  Plaintiff need not allege more.  Cf. Garcia v. Sony Computer Entm't Am., LLC, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (finding pleading inadequate where plaintiff "generally assert[ed] that the statements to be found on the [product's] packaging and [defendants'] website are misleading . . . [but] d[id] not specifically aver that [he] relied on those particular statements, or even expressly state that he was aware of them.").

Finally, defendants' contention that plaintiff has failed to plead facts indicating defendants' representations that the Nabi tablets are "rechargeable" are false misses the mark.  Claims under the FAL, UCL, and CLRA are not limited to untrue statements; instead, those laws prohibit advertisements and representations that are untrue, misleading, or likely to deceive reasonable consumers.  See, e.g., Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 683 (2003) (Section 17500 proscribes "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (internal quotations omitted); Nagel v. Twin Laboratories, Inc., 109 Cal. App. 4th 39, 54 (2003) ("Conduct that is likely to mislead a reasonable consumer . . . violates the CLRA.") (internal quotations omitted); In re Vioxx Class Cases, 180 Cal. App. 4th 116, 130 (2009) ("In order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising" under the fraud prong.).  Plaintiff has expressly alleged that defendants' statements concerning the Nabi tablets' ability to recharge were misleading because they were incomplete—i.e., because they did not disclose the existence of the charging deficiencies alleged by plaintiff throughout the FAC.  See, e.g., FAC ¶¶ 1-3 and 21-23.  Moreover, that the standard for determining whether an advertisement is misleading is judged by its effect on the reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | | Date | May 4, 2015 |
|---|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | | |

consumer does not render plaintiff's allegations inadequate, as defendants appear to contend.  See Reply at 8-9.  Indeed, plaintiff expressly alleges that defendants have misled "reasonable consumers, including plaintiff."  FAC ¶ 5.  More to the point, however, plaintiff need not <u>prove</u> that a reasonable consumer would likely be deceived by defendants' advertising at this juncture—he must simply plead it.  Plaintiff has done so here, and defendants have not established that plaintiff's belief was unreasonable as a matter of law.

Thus, insofar as defendants seek dismissal of plaintiff's claims to the extent that they are predicated on alleged misrepresentations, defendants' motion is DENIED.

### 2.    Omissions

Defendants also contend that, insofar as plaintiff's claims for violation of the CLRA, UCL, FAL, and common law fraud are predicated on alleged fraudulent omissions, plaintiff has failed to adequately plead defendants' duty to disclose.  Mot. Dismiss at 9-11.  As a preliminary matter, the Court again notes that defendants' assertion that plaintiff has not pled omissions with the particularity required to apprise them of their alleged misconduct is not credible.  Nonetheless, the Court addresses the merits of defendants' disclosure arguments.

To state a claim for fraudulent omission under the CLRA, "the omission must be contrary to a representation actually made by the defendant, or [be] an omission of a fact the defendant was obliged to disclose."  <u>Daugherty v. Am. Honda Motor Co.</u>, 144 Cal. App. 4th 824, 835 (2006), <u>as modified</u> (Nov. 8, 2006).  A claim for fraudulent concealment under California law similarly requires that "defendant must have been under a duty to disclose the fact to the plaintiff," <u>Davis v. HSBC Bank Nevada, N.A.</u>, 691 F.3d 1152, 1163 (9th Cir. 2012), as does a claim for violation of the "fraud" prong of the UCL, <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal. App. 4th 1544, 1557 (2007). As is relevant here, a duty to disclose may arise under California law when, <u>inter alia</u>, "the defendant had exclusive knowledge of material facts not known to the plaintiff; [or] when the defendant makes partial representations but also suppresses some material facts."  <u>Smith v. Ford Motor Co.</u>, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) <u>aff'd</u>, 462 F. App'x 660 (9th Cir. 2011).  A defendant possesses exclusive knowledge giving rise to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

duty to disclose a defect when "according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 256 (2011).  Finally, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." Oestreicher v. Alienware Corp., 322 F. App'x 489, 493 (9th Cir. 2009) (citing Daugherty, 144 Cal. App. 4th at 835-37).

The Court concludes that plaintiff has adequately alleged the existence of defendants' duty to disclose.  Specifically, plaintiff alleges that defendants possessed exclusive knowledge of the material fact that the power adapters did not reliably recharge the Nabi tablets, which were contrary to defendants' affirmative representations that the Nabi tablets were "rechargeable." FAC ¶ 98.  Although defendants contend that plaintiff's allegations of "exclusive" knowledge are belied by plaintiff's allegations that defendant publicly addressed the charging defects on its Facebook page in December 2011, as well as the existence of numerous consumer complaints on the internet, Mot. Dismiss at 12-14, plaintiff expressly alleges that he was unaware of the charging defect, FAC ¶¶ 38-40, and that defendants continued to sell defective Nabi tablets even after its 2011 Facebook announcement, id. ¶ 30.  Moreover, plaintiff has not alleged that he visited defendants' Facebook page. See Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (finding exclusive knowledge was adequately pleaded and noting that "[m]any customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.").

Defendants also direct the Court to Herron v. Best Buy Co. Inc., 924 F. Supp. 2d 1161 (E.D. Cal. 2013), where the court concluded that plaintiffs failed to allege exclusive knowledge concerning deficiencies in a laptop's battery life.  The Herron court reasoned that "plaintiff could have readily recognized any deficiencies in his Laptop's battery life, and [p]laintiff purchased [his Laptop] more than [nine months] after information [criticizing the alleged defect] was disseminated." Id. at 1175 (internal quotations and citations omitted).  In Herron, however, plaintiff expressly alleged that the Best Buy website disclosed the defect, and that *Newsweek* published an article publicly criticizing the same defect. Id. Here in contrast, the alleged defects with the Nabi tablets have not been covered by a national magazine, and were allegedly posted on defendants' Facebook page.  Moreover, unlike in Herron, plaintiff alleges that defendants' concealment of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title    | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

defect is ongoing, in that defendants "continue to sell Nabi tablets with defective power adapters that fail to reliably recharge the tablet," FAC ¶ 30, and "cryptically communicate [the charger] replacement program" on their website and Facebook page, id. ¶ 31. Although it is admittedly a close call, construing the complaint in the light most favorable to plaintiff, the Court concludes that he has adequately pleaded exclusive knowledge and thus the existence of a duty to disclose.[2]

Thus, insofar as defendants seek dismissal of plaintiff's claims to the extent that they are predicated on alleged omissions, defendants' motion is DENIED.

**B.      Claim for Breach of Express Warranty**

Plaintiff's fourth claim is for breach of express warranty under California Commercial Code § 2313.  Plaintiff alleges that defendants made the following express warranty to purchasers of Nabi tablets:

Fuhu warranties for one year from the date of sale to the consumer that the nabi is of merchantable quality and that it conforms to applicable specifications. Applicable specifications mean the specification for the Processor, the CPU (Central Processing Unit). The applicable specifications exclude and no warranty is provided for the specifications for any other components or for any performance that can degrade naturally with normal use for one year… If you discover that your nabi is not of merchantable quality and fails to conform to its applicable specifications, as defined above, we will, at our option, refund the purchase price, or repair or replace the product, using new or refurbished components within a reasonable time during the warranty period.

---

[2] In any event, plaintiff also contends that defendants had a duty to disclose the charging defect because defendants made partial representations while suppressing some material facts.  Opp'n Mot. Dismiss at 14.  The allegations in the complaint amply support this theory and defendants do not appear to challenge it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

FAC ¶ 127.  Plaintiff alleges that these representations were "part of the basis of the bargain," and that defendants breached the express written warranty because the Nabi tablets were not of merchantable quality during the warranty period.  Id. ¶¶ 128, 129.  In particular, plaintiff alleges that the Nabi tablets were no of merchantable quality because, during the first year of use, "Nabi tablets: (i) were not rechargeable; (ii) had defective power adapters that failed to reliably recharge the tablets; and/or (iii) could not be used while connected to a power source."  Id. ¶ 129.  Plaintiff alleges that "[f]ailures to reliably recharge are not a symptom of a normally functioning tablet."  Id.

"A warranty is a contractual promise from the seller that the goods conform to the promise. If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted."  Daugherty, 144 Cal. App. 4th at 830.  To prevail on a breach of express warranty claim under California law, a plaintiff must show that defendants "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."  Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012) (citation omitted).

Defendants contend that plaintiff's claim fails because he has not alleged breach.  Specifically, defendants argue that plaintiff "ignores the second part of the warranty, which limits Defendants' obligation to curing any such defect upon request."  Mot. Dismiss at 15.  According to defendants, the FAC demonstrates that they complied with this contractual obligation, since plaintiff admits that defendants sent him a replacement power adapter, FAC ¶ 41, and there is "no allegation . . . that the replacement power adapter does not work," Mot. Dimiss at 15.  Although defendants acknowledge that plaintiff has alleged "that the replacement power adapter 'was also defective' because he 'is unable to use his Nabi tablet while it is plugged into a power source,' " id. (quoting FAC ¶ 42), defendants contend that this problem is not a defect in the tablet but rather, is software related and can be remedied through a free update.  Id.  Further, defendants contend that, under California law, plaintiff is required to demonstrate that he provided defendants with notice of the defect in the replacement charger, as well as an opportunity to remedy the defect.  Mot. Dismiss at 14 (citing Orichan v. BMW of N. Am., LLC, 226 Cal. App. 4th 1322, 1333-34 (2014)).  According to defendants, by refusing to download

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | | Date | May 4, 2015 |
|---|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | | |

the software that purportedly allows the Nabi tablet to be used while charging, he has not given defendants this opportunity, and plaintiff's claim for express breach of warranty fails.  Id.; see also Reply at 11-12.

In response, plaintiff first contends that he does not plead that the defect in the replacement charger is software related—rather, he alleges that defendants merely "contend" it is software related, FAC ¶ 42—and that the Court must treat defendants' contention as such, not as the truth.  Opp'n Mot. Dismiss at 17.  Plaintiff also argues that, contrary to defendants' assertions, he "sought warranty support three times, was ignored twice, and on the third attempt was sent another defective adapter."  Id.  Plaintiff further notes that it is not clear from the case law whether the presentment requirements in Orichan apply in the instant case, since plaintiff and the proposed class members purchased their Nabi tablets from third-party retailers.  Id. at 18, n4 (citing Keegan, 838 F. Supp. 2d at 947; Sanders v. Apple, Inc., 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009)).  Finally, plaintiff asserts that his refusal to download the purported software fix "cannot support a motion to dismiss," since downloading the fix requires plaintiff to accept defendants' amended Terms of Use, thus waiving his right to bring a class action and litigate in court—conditions that plaintiff alleges are unconscionable and a violation of section 1770(a)(19) of the CLRA.  Id. at 17.

In reply, defendants argue that plaintiff alleges "two distinct problems with his tablet," and that he "conflates that first charger-related problem with his second (self-inflicted) 'problem,' which Defendants have identified as a software issue."  Reply at 12. By failing to download the software fix, defendants contend that plaintiff "pleads facts showing that he failed to give Defendants an opportunity to remedy the alleged defect as called for in the express warranty."  Id.

The Court concludes that plaintiff has stated a claim for breach of express warranty.  Defendants are correct that plaintiff conflates his three requests for support from defendants—requests directed towards obtaining a replacement charger—with requests for assistance with the allegedly defective *replacement charger itself*—requests that plaintiff does not allege he made.  However, plaintiff correctly points out that courts in this circuit have concluded that a consumer need not provide notice to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

manufacturer before filing suit where, as here, the plaintiff purchased the product from a third-party retailer.

In Alvarez v. Chevron Corp., the Ninth Circuit affirmed the general rule that "[t]o avoid dismissal of a breach of contract or breach of warranty claim in California, [a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." 656 F.3d 925, 932 (9th Cir. 2011)(internal quotations omitted).  However, in Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012), a court in this district persuasively distinguished Alvarez from the case at hand:

> A pre-Alvarez case, Sanders v. Apple, Inc., 672 F. Supp. 2d 978 (N.D. Cal. 2009), concluded that "timely notice of a breach of an express warranty is not required where the action is against a manufacturer and is brought 'by injured consumers against manufacturers with whom they have not dealt.' " Id. at 989 (quoting Greenman v. Yuba Power Prods., 59 Cal. 2d 57, 61, 27, Cal. Rptr. 697, 377 P.2d 897 (1963)). The Sanders court observed that this rule was "designed to protect a consumer who 'would not be aware of his rights against the manufacturer . . . [A]t least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings.' "  Id. (quoting Greenman, 59 Cal. 2d at 61 []); see also Toyota Motor Corp., 754 F.Supp.2d at 1180 ("Except as to those relatively few Plaintiffs (such as at least one non-consumer Plaintiff) who allege they purchased their vehicles directly from Defendants, this requirement is excused as to a manufacturer with which the purchaser did not deal"); Aaronson v. Vital Pharmaceuticals, Inc., 09-CV-1333 W(CAB), 2010 WL 625337, *5 (S.D. Cal. Feb. 17, 2010) (citing Greenman for the proposition that "[i]n claims against a manufacturer of goods, however, California law does not require notice").  In contrast to these cases, Alvarez was a suit brought by individual retail customers of gas directly against the sellers; it did not address the type of situation at issue in Sanders and Greenman.

Id. at 950.  The Court agrees with the reasoning of the Keegan court and "follows Greenman, Sanders, Toyota, and Aaronson in concluding that under California law, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | | Date | May 4, 2015 |
|----------|------------------------|--|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | | |

consumer need not provide notice to a manufacturer before filing suit against them." Id. at 951.  Moreover, even assuming the charging defect is software related as defendants contend, defendants cite no authority for the proposition that a manufacturer may condition its compliance with its obligations under a warranty on a consumer's waiver of rights.

Accordingly, the Court DENIES defendants' motion to dismiss plaintiff's claim for breach of express warranty.

### C.    Claim for Violation of Song-Beverly Consumer Warranty Act

Plaintiff's fifth claim is for breach of the implied covenant of merchantability in violation of the Song-Beverly Act, Cal. Civil Code § 1790.  Plaintiff alleges that defendants "breached the implied warranty of merchantability by selling defective tablets—i.e., tablets that were not rechargeable and/or could not be used while they were connected to a power source and/or recharging."  FAC ¶ 137.  As a result, plaintiff alleges that the tablets "were unfit for their ordinary purpose . . . because[] regular use for their ordinary purpose would drain the rechargeable batteries' power which would need to be recharged."  Id.

The Song–Beverly Act "was enacted to regulate warranties and strengthen consumer remedies for breaches of warranty."  Keegan, 838 F. Supp. 2d at 944 (citing National R.V., Inc. v. Foreman, 34 Cal. App. 4th 1072, 1077 (1995)).  Pursuant to the act, an implied warranty of merchantability guarantees that "consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; (4) Conform to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1(a).  This warranty "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality."  Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1296 (1995) (internal quotation marks omitted). A "breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use."  Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406 (2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Defendants first contend that plaintiff's Song-Beverly Act claim fails because Cal. Civ. Code section 1793.2 requires consumers to provide merchants with "a reasonable number of opportunities" to remedy a defect before bringing suit for a breach of warranty, and plaintiff has not done so here.  Mot. Dismiss at 16-17.  Defendants' contention is without merit.  Section 1793.2 applies only to express warranties.  Cal. Civ. Code § 1793.2(d)(2) ("If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable <u>express</u> warranties after a reasonable number of attempts . . ." (emphasis added)); <u>see also</u>, <u>Mocek</u>, 114 Cal. App. 4th at 406–08 (2003) ("The Act's provisions requiring repairs after breach of an express warranty are lengthy and detailed.  There is no reason to believe failure to set out the same process in case of a breach of the implied warranty of merchantability was an oversight.").  Thus, plaintiff was not required to provide defendants any opportunity to remedy their alleged breach of the implied warranty of merchantability.

In their reply brief, defendants contend that plaintiff has failed to allege facts supporting a claim for breach of implied warranty.  Defendants assert that "an electronic component that breaks—and is then replaced for free by the manufacturer—hardly violates the 'minimum level of quality' an implied warranty of merchantability is intended to protect."  Reply at 15.  Defendants further contend that the "alleged defect that Plaintiff cannot use his tablet while it is plugged into a power source is an inconvenience, but it does not render the tablet unfit for ordinary use as Plaintiff can still use and enjoy his tablet when it is charged."  <u>Id.</u> at 16.

The Court concludes that plaintiff has failed to state a claim for breach of the implied covenant of merchantability.  A case cited by defendants, <u>Marcus v. Apple Inc</u>, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015), is instructive.  There, plaintiffs alleged that their Apple laptops were not merchantable because "the logic board fails and disables the laptop, rendering the device useless."  <u>Id.</u> at *9.  The <u>Marcus</u> court concluded that plaintiffs had failed to state a claim because, despite the failure of the logic board, "[b]oth plaintiffs were able to adequately use their computers for approximately 18 months and two years, respectively."  <u>Id.</u>  Here, plaintiff alleges that, before receiving a replacement charger, his Nabi tablet "suffered intermittent problems recharging," FAC  ¶ 40, and that upon receipt

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS(ASx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

of the replacement charger, plaintiff was "unable to use his Nabi tablet while it is plugged into a power source . . . [thus] substantially decreas[ing] the usefulness of the Nabi tablet," id. ¶ 42.  Plaintiff's use of the term "intermittent" to describe his charging issues implies that he was able to use his Nabi tablet successfully for significant periods of time, like the Marcus plaintiffs.  Further, a substantial decrease in a product's usefulness is not tantamount to a lack of "basic degree of fitness for ordinary use."

Accordingly, the Court GRANTS without prejudice defendants' motion to dismiss plaintiff's claim for breach of the implied covenant of merchantability.

**D.    Plaintiff's Derivative Claims**

Finally, defendants contend that plaintiff's claims for violation of the CLRA and UCL fail because they "purport to arise out of both misrepresentations and the breach of warranty."  Mot. Dismiss at 17.  As discussed above, the Court concludes that plaintiff has stated a claim for breach of express warranty, and has adequately pleaded misrepresentations.  Thus, plaintiff's CLRA and UCL claims are properly derivative of these alleged unlawful acts, and defendants' motion to dismiss these claims is DENIED accordingly.

**IV.    CONCLUSION**

In accordance with the foregoing, the GRANTS in part and DENIES in part defendants' motion to dismiss plaintiff's first amended complaint.  Specifically, the court GRANTS without prejudice defendants' motion to dismiss plaintiff's claim for breach of the implied covenant of merchantability.  Defendants' motion is otherwise DENIED.

IT IS SO ORDERED.

|  | 00 | : | 04 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |