**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
TODD KENNEDY (State Bar No. 250267)
MARIE A. McCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Attorneys for Plaintiff Scott Miller

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FUHU, INC. and FUHU HOLDINGS, INC.,<br><br>Defendants. | CASE NO. 14-cv-6119 CAS-AS<br><br>**[REDACTED] PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Assigned to Hon. Christina A. Snyder<br><br>Date:      September 14, 2015<br>Time:      10:00 a.m.<br>Place:     Ctrm 5, 2nd Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iv

NOTICE OF MOTION AND MOTION ..........................................vii

MEMORANDUM OF POINTS AND AUTHORITIES ......................1

I.   INTRODUCTION ..................................................................1

II.  STATEMENT OF FACTS .......................................................2

    A.    Fuhu Sold, and Continues To Sell, Products That It Knows Are Defectively Designed and Manufactured and Potentially "Extremely Dangerous" To Children..............................................2

        1.    Fuhu's First Generation Charging System Was Defectively Designed and Manufactured. ..........................3

            a.    Version one of the first generation charging system was defective, which Fuhu quickly learned. ..................................................................3

            b.    Fuhu introduced version two of the first generation charging system, but quickly realized it shared the same defects as the first version.................................................................6

            c.    KH proposed a version of the charging system that might have resolved the defects, but Fuhu rejected it due to marketing concerns. .....................6

            d.    Fuhu instead introduced version three of the first generation charging system that still did not resolve the defects. ..............................................7

            e.    Fuhu knew that all three versions of this charging system were defective and posed an extreme danger to children, but did nothing. ............8

        2.    Fuhu Introduced A Second Generation Charging System That Was Equally Flawed. .......................................9

        3.    The Defect or Failure Rates on All of Defendants' Adapters Dwarfs the Industry Standard...............................12

    B.    Fuhu Falsely Advertised And Marketed The Tablets....................13

    C.    Fuhu Has Not Adequately Provided Repairs or Replacements.................................................................14

    D.    After this Suit Was Filed, Fuhu Surreptitiously Changed Its Terms of Use to Force Consumers To Waive Their Rights..........14

E.     Plaintiff Was Misled And Damaged By Fuhu's Practices .............15

III. ARGUMENT ...................................................................................17

   A.     Legal Standards For Class Certification .......................................17

   B.     The Proposed Classes Meet All Four Requirements of Rule
          23(a) ...........................................................................................18

          1.     The Proposed Class Is Sufficiently Numerous and
                 Ascertainable. ....................................................................18

          2.     This Litigation Concerns Common Questions Of Law
                 and Fact. .............................................................................20

                 a.     Plaintiff's Warranty Claims are Subject to
                        Common Proof. .........................................................21

                 b.     Plaintiff's Fraud Based Claims are Subject to
                        Common Proof. .........................................................22

                 c.     Plaintiff's Declaratory Relief and CLRA
                        Unconscionability Claims are Subject to
                        Common Proof. .........................................................24

          3.     Plaintiff's Claims Are Typical Of Class Members'
                 Claims ................................................................................24

          4.     The Proposed Class Representative Will Fairly And
                 Adequately Protect Class Interests. ....................................25

   C.     Plaintiff's Proposed Class Action Satisfies the Requirements
          of Rule 23(b). ..............................................................................26

          1.     Common Questions of Law or Fact Predominate .............27

                 a.     Common Questions of Law Predominate,
                        Because California Law Applies to All Class
                        Member Claims. ........................................................27

                 b.     Common Questions Predominate Over Any
                        Individual Questions on the Warranty Claims. ........28

                 c.     Common Questions Predominate Over Any
                        Individual Questions on the Fraud-Based
                        Claims. ......................................................................30

                 d.     Common Questions Predominate Over Any
                        Individual Issues of Damages. .................................31

                 e.     Common Questions Predominate On The
                        Declaratory Relief Claim. ........................................33

          2.     A Class Action Is Superior .................................................33

        a.     Class Members Have No Interest In Pursuing Individual Litigation...................................................34

        b.     There Are No Other Actions Pending.......................34

        c.     There Are No Manageability Issues..........................35

IV. CONCLUSION ..................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ...................................................................................31

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184 (2013) ...........................................................17, 18

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) ...................................................................33

*Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327 (N.D. Cal. 2013) .................29

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)....................................................................27

*Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK VBKX, 2014 WL 1477400 (C.D. Cal. Apr. 15, 2014)..................................32

*Cannon v. Nationwide Acceptance Corp.*, 1997 U.S. Dist. LEXIS 3517 (N.D. Ill., March 24, 1997)..........................................20

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .................35

*Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159FCDEFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ..........................29

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163  (1999) ......................................................................22

*Chavez v. Blue Sky Beverage Co.*, 2010 U.S. DIST. LEXIS 60554 (N.D. Cal., June 18, 2010).......................................19, 22, 23

*Chern v. Bank of Am.*, 15 Cal. 3d 866 (1976) ..............................................22

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006) ..........................................................................32

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013).....................................32

*Comm. on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983).........................................................22

*compare Rice v. Sunbeam Products, Inc.*, No. 2:12-CV-07923-CAS, 2014 WL 794331 (C.D. Cal. Feb. 24, 2014) .....................33

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001).........................................................34

*Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014)........................................28

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982).......................................26

Greenwood v. Compucredit Corp., 2010 U.S. Dist. LEXIS 3839
   (N.D. Cal. Jan. 19, 2010)..................................................................30, 34

Guido v. L'Oreal, USA, Inc., No. CV 11-1067 CAS JCX, 2013 WL
   3353857 (C.D. Cal. July 1, 2013) ...........................................................30

Guido v. L'Oreal, USA, Inc., No. CV 11-1067 CAS JCX, 2013 WL
   3353857 (C.D. Cal. July 1, 2013) ...........................................................30

In re First Alliance Mortgage Co., 471 F.3d 977 (9th Cir. 2006)...................31

In Re Tableware Antitrust Litig., 241 F.R.D. 644 (N.D. Cal. 2007)..............20

In re Vioxx Cases, 180 Cal.App.4th 116 (2009) ...........................................32

In re VisaCheck/MasterMoney Antitrust Litig., 280 F.3d 124 (2d
   Cir. 2001)......................................................................................27, 35

Jordan v. County of Los Angeles, 669 F.2d 1311 (9th Cir. 1982) ..........19, 25

Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th
   603 (1992) ............................................................................................31

McAdams v. Monier, Inc., 151 Cal. App. 4th 667 (2007) .............................31

Menagerie Prods. v. Citysearch, 2009 U.S. Dist. LEXIS 108768
   (C.D. Cal. Nov. 9, 2009) .......................................................................35

Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003). .........................................18

Morris v. Redwood Empire Bancorp, 128 Cal.App.4th 1305
   (2005) ..................................................................................................24

Negrete v. Allianz Life Ins. Co. of N. Am., 238 F.R.D. 482 (C.D.
   Cal. 2006)........................................................................................30, 35

Parra v. Bashas', Inc., 536 F.3d 975 (9th Cir. Ariz. 2008)...........................17

Plascencia v. Lending 1st Mortgage, 259 F.R.D. 437 (N.D. Cal.
   2009) ...............................................................................................18, 31

Saltzman v. Pella Corp., 257 F.R.D. 471 (N.D. Ill 2009), aff'd,
   2010 U.S. App. LEXIS 10259 (7th Cir. Ill. May 20, 2010) ......................20

Smilow v. SW Bell Mobile Sys., Inc., 323 F.3d 32 (1st Cir. 2003) ..............35

Spann v. J.C. Penney Corp., No. SA CV 12-0215 FMO, 2015 WL
   3478038, at *23 (C.D. Cal. May 18, 2015)..............................................27

Tait v. BSH Home Appliances Corp., 289 F.R.D. 466 (C.D. Cal.
   2012) ...............................................................................................22, 30

Vaccarino v. Midland Nat. Life Ins. Co., No. 2:11-CV-05858-CAS,
   2014 WL 572365 (C.D. Cal. Feb. 3, 2014)..............................................33

Vasquez v. Superior Court, 4 Cal. 3d 800 (1971) ..................................30, 31

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .........................17, 20

*Weinstat v. Dentsply Intern., Inc.*, 180 Cal.App.4th 1213 (2010) ..............21

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK,
2014 WL 2191901 (N.D. Cal. May 23, 2014) ........................................19

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009).........................32

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir.
2010) ...................................................................................................29

*Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573 (C.D.
Cal.2011) ............................................................................................22

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 74 Fed. R. Serv. 3d 459
(9th Cir. 2009).....................................................................................17

**STATUTES**

Cal. Com.Code § 2313(1)(b) ........................................................................21

**RULES**

Fed. R. Civ. P. 23(a) ...............................................................................17, 18, 24

Fed. R. Civ. P. 23(b)(2).................................................................................27

Fed. R. Civ. P. 23(b)(3).............................................................................17, 34

FED.R.CIV.PROC. 23(a)(2) ...........................................................................20

**TREATISES**

*Newberg on Class Actions* §7.24 at 7-80 to 7-81 (3d ed. 1992). ...............26

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 14, 2015 at 10:00 am, or as soon thereafter as the matter may be heard, in Courtroom 5 of the above-entitled court, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff will, and hereby does, move for an order of class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Specifically, Plaintiff will, and hereby does, move this Court to:

(A)    Certify the following class and subclasses:

All persons who, between July 3, 2010 and the present, purchased, in the United States, a Nabi tablet (the "Class");[1]

All members of the Class who purchased and registered their Nabi tablet with one or more Defendants prior to September 24, 2014 (the "Unconscionability Subclass"); and

All members of the Class who purchased their Nabi tablets from a third-party retailer (the "Warranty Subclass").

(B)    Appoint Plaintiff Scott Miller as class representative for the Class;

(C)    Appoint the firm of Gutride Safier LLP as counsel for the Class; and

---

[1] Plaintiff requests to exclude from the proposed class the following:

Excluded from the Class are members of the judiciary, governmental entities, Defendants, any entity in which it has a controlling interest, and their officers and directors, and members of their immediate families, and purchases for purposes of resale, purchases that were returned to the seller for a full refund, and purchases of the Nabi BigTab tablet.

1    (D)    Order the parties to meet and confer and present this Court,
2    within fifteen (15) days of an order granting class certification, a
3    proposed notice to the certified classes.
4    This motion is made following the conference of counsel pursuant to
5    L.R. 7-3, which took place on June 15, 2015. This motion is based upon this
6    Notice of Motion and Motion and Memorandum of Points and Authorities,
7    Plaintiff's proposed trial plan, and the accompanying Declarations in support
8    of Class Certification by the following persons:
9    Scott Miller
10   Seth Safier
11   Kendyl Roman
12   Lee Selwyn
13   J. Michael Dennis, Ph.D.
14   Tarra Price
15   James Griffin
16   Taylor Sanchez.
17   In the following Memorandum, those declarations shall be referred to by the
18   last name of the declarant, followed with the abbreviation "Decl." (example:
19   "Safier Decl.".)
20   This Motion is also based on the pleadings and papers on file in this
21   action and all matters of which this Court may take notice.
22   Dated:  June 29, 2015                    **GUTRIDE SAFIER LLP**
23
24   /s/ Seth A. Safier
     Adam J. Gutride, Esq.
25   Seth A. Safier, Esq.
     Todd Kennedy
26   Marie McCrary
     100 Pine Street, Suite 1250
27   San Francisco, California 94111
28   Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Scott Miller moves to certify a class of similarly situated consumers who purchased one of Defendants Fuhu, Inc. and Fuhu Holdings, Inc. (collectively, "Fuhu" or "Defendants") "Nabi" brand tablet computers during the proposed Class Period. Defendants market and sell the Nabi tablets as "rechargeable" devices "designed specifically for children." However, the charging systems for these tablets are defective; they were designed and manufactured in such a way that they break, fail to recharge the tablets, and create serious risks of sparks, smoke and fire. ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Fuhu received an astonishing 230,000 consumer complaints regarding the defective Nabi charging system, yet it continued to falsely market the devices. Fuhu also failed to repair or replace the devices as required by its written warranty and continues not to warn consumers that their Nabi tablets are defective and pose substantial safety hazards to children.

After Plaintiff sued, Fuhu responded by surreptitiously amending its Terms and Conditions of Use agreement to include a class action waiver and arbitration provision. Fuhu then tried to force consumers to acquiesce to the changes, in exchange for being able to continue to use the tablets or to receive previously promised Nabi tablet firmware updates, such as bug fixes.

Based on this conduct, Plaintiff seeks to bring claims on behalf of a class of similarly situated consumers for violations of the Consumer Legal Remedies Act, false advertising, unfair trade practices, breach of express and implied warranty, and fraud, deceit and/or misrepresentation. Because of the uniform

nature of the design and manufacturing defects with the Nabi charging system, and the uniform and material nature of Fuhu's misrepresentations and omissions regarding its Nabi products, Plaintiff's claims are ideal for class treatment. Indeed, courts have repeatedly certified similar types of claims. As Plaintiff's action meets all of the requirements of Rule 23, this Court should certify Plaintiff's proposed class and subclasses.

## II.   STATEMENT OF FACTS

### A.   Fuhu Sold, and Continues To Sell, Products That It Knows Are Defectively Designed and Manufactured and Potentially "Extremely Dangerous" To Children.

Fuhu develops, markets, advertises and sells the Nabi line of tablet computers for children, known as the Nabi, Nabi 2, Nabi Jr., Nabi XD and Nabi DreamTab.[2] Fuhu designs and markets these tablets to be portable and rechargeable using an included power adapter, charging cord, and charging port, and to be used by children. During the proposed class period of July 3, 2010 to the present, Fuhu manufactured, marketed and sold two generations of the charging system: the first generation for the Nabi (aka Nabi 1) and Nabi 2 from approximately 2011 to 2014, and the second generation for the other Nabi models, beginning in 2013 to the present.

[2]

1
2
3
4
5 **1.    Fuhu's First Generation Charging System Was Defectively Designed and Manufactured.**
6
7    The first generation charging system in the Nabi (aka Nabi 1) and Nabi 2
8 had a charging cable with a long, thin cylindrical DC connector tip, extending
9 180 degrees from one end of the cable to mate with a cylindrical charging port
10 on the tablet. (The other end of the charging cable attached to an AC adapter
11 that plugged into a wall socket.) (Roman Decl., Ex. 3-16 to 3-29.)
12
13
14
15
16
17 **a.    Version one of the first generation charging system was defective, which Fuhu quickly learned.**
18
19
20
21
22
23
24
25
26
27
28





[redacted]

[3] [redacted]

[redacted]

[redacted]

Plaintiff's Motion for Class Certification - Case No. 14-cv-6119 CAS-AS

1

2

3

4

5               **b.**     **Fuhu introduced version two of the first generation**

                         **charging system, but quickly realized it shared the**

6                          **same defects as the first version.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24               **c.**     **KH proposed a version of the charging system that**

                         **might have resolved the defects, but Fuhu rejected it**

25                          **due to marketing concerns.**

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14       **d.    Fuhu instead introduced version three of the first
          generation charging system that still did not resolve
15        the defects.**

16

17

18

19

20

21

22

23

24

25

26   [8]

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14        **e.**      **Fuhu knew that all three versions of this charging**

15              **system were defective and posed an extreme danger to children, but did nothing.**

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11



12       Yet, to this day, Fuhu still markets, advertises, and sells Nabi 2 tablets

13  with the same defective charging system. (Safier Decl., ¶24.)

14         **2.**    **Fuhu Introduced A Second Generation Charging System That Was Equally Flawed.**

15

16       Beginning in early 2013, Fuhu introduced several new Nabi tablet

17  models, including the Nabi 2S, Nabi Jr., Nabi XD and Nabi DreamTab. Instead

18  of the first-generation charging system (i.e., with the long, thin cylindrical DC

19  connector tip and connector port used on the Nabi 1 and Nabi 2), the newer

20  Nabi models incorporated a second-generation system, with a proprietary 16-

21  pin connector tip in the shape (but not the same as) a "micro-USB" connector.

22  (Roman Decl. ¶ 93 & Ex. 3-39, 3-40, 3-47, 3-48.)

23
24
25
26
27
28



[redacted]

Plaintiff's Motion for Class Certification - Case No. 14-cv-6119 CAS-AS



[redacted]

**3. The Defect or Failure Rates on All of Defendants' Adapters Dwarfs the Industry Standard**

[redacted]

████████████████████████████████████████████

### B.    Fuhu Falsely Advertised And Marketed The Tablets.

Throughout the proposed class period, Fuhu marketed and sold all of its Nabi tablets as being specifically built and designed for children, rechargeable, and being packaged with a charging cord and power adapter. Fuhu's witness most knowledgeable about marketing, Lisa Lee, stated that one of Fuhu's "positioning lines" is that all "tablets are made for children." (Safier Decl., Ex. EE (Lee Depo. Trns.) 17:23-25.) She additionally agreed that all Nabi tablets were "built just for kids," which meant that Fuhu expects the tablets to "be used by kids." (Id., 139:9-19.) ████████████████████████

████████████████████████████████████████████

Further, none of the Nabi tablet user manuals, guides, packaging, specification sheets or any other marketing materials ever included any disclosure or disclaimer that the included adapters or charging units were defective, fragile, or anything to that effect. (Id., Ex. EE (Lee Depo. Trns.) 123:17-124:17.)

---

[10] ████████████████████████████████████████

### C.     Fuhu Has Not Adequately Provided Repairs or Replacements.

For example, in June 2014 when Plaintiff's investigator purchased a Nabi 2 and immediately contacted Fuhu to report that "the charger doesn't work," the Fuhu customer service representative's only response was, "You can purchase a charger at nabishop.com." (Id., Ex. D.) While it has at times been possible to obtain a free replacement charging cable and adapter, Fuhu has hidden the availability of this option, (Safier Decl., ¶ 38), and, in any event,

### D.     After this Suit Was Filed, Fuhu Surreptitiously Changed Its Terms of Use to Force Consumers To Waive Their Rights

After Plaintiff filed this lawsuit, Fuhu thought it found a silver bullet: it surreptitiously amended its Terms and Conditions of Use agreement ("TOU") to include arbitration and class action waiver provisions. (Safier Decl., Ex. JJ; Dkt.# 58 (Answer ¶ ¶ 78-79.) Fuhu then attempted to force consumers to waive their rights to litigate their dispute if they wanted to continue to use their tablets or receive previously promised Nabi tablet firmware updates and bug fixes. (Dkt.# 58 ¶ 74 (admitting use of pop-up box requiring agreement to terms).)[11]

Adding to the deception, and in an apparent effort to conceal the amendments to the TOU agreement, Defendants intentionally failed to update

---

[11] The "Legal" screen of every Nabi tablet also provides that "your and your children's use of nabi" are governed by various terms, including those contained in the TOU. (Safier Decl., ¶41; Ex. DD.)

the "Last Updated" date on their TOU agreement. (Safier Decl., Ex. JJ.) To this day, Defendants' TOU indicate that they were last updated on "August 16, 2013," even though they were revised in September 2014. (Id. Exs. JJ; KK (Kuo Depo. Trns.) 32:9-36:11.) This is particularly troubling because, in the TOU agreement, Fuhu purportedly "reserves the right, at its sole discretion, to change, modify, add or remove portions of these Terms, at any time" and tells customers "to check these Terms periodically for change." (Id., Ex. JJ.)

### E.    Plaintiff Was Misled And Damaged By Fuhu's Practices

Plaintiff Scott Miller purchased a Nabi tablet during the summer 2012 for his grandson, and shortly after his purchase, and well within the first year of ownership, began experiencing problems recharging the tablet. (Miller Decl. ¶¶ 3, 5.) At first, when the Nabi tablet was connected via the charger cable to a power outlet, the screen would cycle on and off, and the LED charging indicator would change from red to green and back again. The tablet was chargeable only after a reset was performed. Within a few months thereafter, while the tablet was charging, the screen would flash and it would become very hot while charging, making it dangerous to touch while connected to the charging cable. These problems continued through the end of 2012. By the end of 2012, an additional problem arose: even after the unit had been connected via the charging cable to a power outlet, allowed to charge, and then disconnected, the unit would not turn on, purportedly because it did not have a "full" charge, which due to the issues described above was difficult to achieve. In addition, even if the unit received a "full" charge, the tablet would abruptly turn off even when the battery still had a significant remaining partial charge. Because of these issues, Plaintiff could not allow his grandson (the intended user) to take the device from Plaintiff's house, for fear that the grandson could become injured—or start a fire—if the device was charged without careful supervision. Thus, by the beginning of 2013—or less than six

months after his Nabi 2 purchase, the device could no longer be used on a daily basis or in any location other than Plaintiff's home and only sporadically and for short periods of time. (Miller Decl., ¶ 5.)

Plaintiff contacted Fuhu about the Nabi tablet's failure to recharge. Fuhu essentially ignored Plaintiff's initial request. (Id., ¶ 6.) After receiving a subsequent complaint, Fuhu finally sent Plaintiff a replacement power adapter. (Id., ¶ 7.) The replacement power adapter, however, was also defective. In particular, when Plaintiff's Nabi tablet is plugged into a power source using the replacement power adapter, the screen goes blank, and the tablet turns off and can be restarted only after it is unplugged from the power source. Plaintiff's Nabi tablet cannot be turned on even after the charging indicator light on the tablet has turned green (indicating a full charge) if it is still connected to an external power source with the power adapter. Because the device continues to abruptly shut off even when it purportedly still has a significant charge remaining on the battery, the device can be used only for short periods—far shorter than would be reasonably expected by a purchaser of a tablet computer. In sum, the device cannot be used for its reasonably intended use—i.e., outside his home, or in the car. (Id.) Plaintiff would not have purchased the Nabi tablet had Fuhu adequately disclosed to him it had a defective charging system that would not reliably recharge the tablet. (Id., ¶ 4.)

Plaintiff fully comprehends his duty, responsibilities and obligations as a class representative. He has remained actively involved in this case, and he desires to obtain relief for all class members. (Id., ¶ 8; Safier Decl. ¶ 43.)

Many other injured class members have contacted Plaintiff's counsel to discuss how they can help ensure that this case is certified as a class action, so that they also can receive compensation for their losses, repairs and replacements, and/or to stop Fuhu's fraudulent practices. (Safier Decl., ¶ 45.) These class members have purchased the Nabi 2, Nabi Jr., Nabi XD, and Nabi

DreamTab—i.e., tablets with both generations of charging systems. All have experienced charging system failures. Fuhu has not fulfilled its warranty obligations to any of them, but instead provided defective replacement charging systems or required them to pay for new chargers. (*See, e.g.,* Griffin Decl.; Price Decl.; Sanchez Decl.).

## III.   ARGUMENT

### A.   Legal Standards For Class Certification

Federal Rule of Civil Procedure 23 governs class actions and requires a "rigorous analysis." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1194 (2013). To certify a class action, plaintiffs must satisfy all four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008), *quoting* Fed. R. Civ. P. 23(a); *Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.)*, 213 F.3d 454, 462 (9th Cir. 2000).

As Plaintiff seeks primarily monetary relief, he must also satisfy Rule 23(b)(3). *See  Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011); Fed.R.Civ.P. 23(b)(3). A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The decision regarding whether to certify a class is committed to the discretion of the district court. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 74 Fed. R. Serv. 3d 459 (9th Cir. 2009); *Molski v. Gleich*, 318 F.3d 937, 946 (9th

Cir. 2003). "A district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met, but the purpose of the district court's inquiry at this stage remains focused on, for example, common questions of law or fact under Rule 23(a)(2), or predominance under Rule 23(b)(3), not the proof of answers to those questions or the likelihood of success on the merits." *Dukes*, 603 F.3d at 590; *see also Amgen,* 133 S.Ct. at 1194-95 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

Here Plaintiff moves to certify the following class and subclasses:

All persons who, between July 3, 2010 and the present, purchased, in the United States, a Nabi tablet (the "Class");[12]

All members of the Class who purchased and registered Nabi tablet purchase with one or more Defendants prior to September 24, 2014 (the "Unconscionability Subclass"); and

All members of the Class who purchased their Nabi tablets from a third-party retailer (the "Warranty Subclass").

## B.    The Proposed Classes Meet All Four Requirements of Rule 23(a)

### 1.    The Proposed Class Is Sufficiently Numerous and Ascertainable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *See Harris*, 329 F.2d at 913-14. Where a class is

---

[12] Plaintiff requests to exclude from the proposed Class the following:

Excluded from the Class are members of the judiciary, governmental entities, Defendants, any entity in which it has a controlling interest, and their officers and directors, and members of their immediate families, and purchases for purposes of resale, purchases that were returned to the seller for a full refund, and purchases of the Nabi BigTab tablet.

large, joinder will usually be impracticable. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). The exact size of the class need not be known as long as general knowledge and common sense indicate that the class is sufficiently numerous. *Id*. Here, Rule 23's numerosity requirement is easily satisfied, as more than two million Nabi tablets have been sold. (*See, e.g.,* Safier Decl., Ex. K.)

The proposed class is also ascertainable. "A class is ascertainable if the class is defined with 'objective criteria' and if it is administratively feasible to determine whether a particular individual is a member of the class." *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014). Here, the class definition allows class members to be identified via objective criteria, i.e., a clear date range (July 3, 2010 to the present), place of purchase (in the United States), and type of purchase (Nabi brand tablets).[13] *See Chavez v. Blue Sky Beverage Co.*, 2010 U.S. DIST. LEXIS 60554 (N.D. Cal., June 18, 2010) ("The proposed class is defined by an objective standard of consumers who purchased a Blue Sky beverage bearing the allegedly misleading labels in violation of state law.")

Moreover, Fuhu knows the identity of most or all class members as it collects first name, last name, email address, city, state, zip, and often phone numbers of the owner (parent) at the time the tablet is first turned on and registered. (Safier Decl. ███████████████████████████
████████████████████████████████████████████
████████████████████████ Class members can also self-identify by looking at their Nabi tablets, packaging materials, and/or their receipts. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 2010 U.S. App.

---

[13] The subclasses are also objectively defined: (Warranty Subclass) by place of purchase (third party retailer) and (Unconscionability Subclass) by date of purchase and registration— i.e., prior to September 24, 2014.

LEXIS 10259 (7th Cir. Ill. May 20, 2010) (notice to class members may include information necessary to conduct a self-inspection); *Keilhotlz*, 2010 U.S. Dist. LEXIS 14553 (N.D. Cal., Feb 16, 2010) at *11("Unnamed Plaintiffs will be able to identify the alleged offending products by viewing the exposed face of their fireplace"); *see also In Re Tableware Antitrust Litig.,* 241 F.R.D. 644 (N.D. Cal. 2007) ("[I]ndividuals would be able to determine, simply by reading the definition, whether they are members of the proposed class" of persons who purchased one or more varieties of products).[14]

## 2. This Litigation Concerns Common Questions Of Law and Fact.

Commonality requires "questions of law or fact common to the class." *See* Fed.R.Civ.Proc. 23(a)(2). This means the putative class's "claims must depend upon a common contention" and that common contention must be "capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "'What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Id*. at 2551. For purposes of Rule 23(a)(2), even a single common question will do. *Id*. at 2556.

This action presents at least three key common questions that drive resolution of all class members' claims: (i) Was the Nabi tablet charging system defectively designed or manufactured such that Fuhu breached its

---

[14] The absence of records cannot be used as a basis to deny certification. *See, e.g., Cannon v. Nationwide Acceptance Corp.*, 1997 U.S. Dist. LEXIS 3517 (N.D. Ill., Mar. 24, 1997) ("Defendants' first argument conveniently relies on the insufficiency of Nationwide's record keeping…It cannot be the rule that actions based on fraud cannot be maintained as class actions unless the defrauder has kept of a record of those who he might have deceived.")

warranty of merchantability?; (ii) Was Defendants' marketing of the tablets likely to mislead reasonable consumers?; and (iii) Should this Court declare unlawful Fuhu's amendment to its TOU imposing a class action waiver?

### a.   Plaintiff's Warranty Claims are Subject to Common Proof.

Plaintiff's breach of warranty claims present questions common to the class that will be resolved by common proof.

To prevail on a breach of express warranty claim, a Plaintiff "must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Intern., Inc.*, 180 Cal.App.4th 1213, 1227 (2010).

Here, all of these elements are subject to common proof. Defendants represented to all class members that, "for one year from the date of sale to the consumer," the Nabi tablet would be of "merchantable quality." (Safier Decl., Ex. KK (Kuo Depo. Trns.) 105:7-106:3 (testifying that during the proposed class period, the operative portion of Defendants' express warranty was identical for all class members.) Defendants further represented the tablets as "rechargeable" and "designed specifically for children." Defendants' express warranty and representations thereby formed part of the basis of the bargain. *See* Cal. Com.Code § 2313(1)(b) (establishing that product advertisements, brochures, or packaging can serve as the basis of a bargain—i.e., create part of an express warranty.)

The warranty of merchantability was also commonly breached because the charging systems for all Nabi tablets were likely to fail within the first year and render the tablets nonoperational, and because they could cause fire and be "extremely dangerous" to the intended users, children. Because a question of merchantability requires an objective standard and Plaintiff's contention

here is grounded in a defective design theory common to all of the Nabi tablet purchases, the "breach of implied warranty claim is therefore susceptible of common proof." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012); citing *Keegan*, 284 F.R.D. at 537 (certifying "implied warranty under California law" consumer class action); *see also Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576 (C.D. Cal. 2011) (certifying class for "implied warranty" and California UCL claims).

### b. Plaintiff's Fraud Based Claims are Subject to Common Proof.

Common questions of law and fact also control Plaintiff's fraud based claims—i.e., his UCL,[15] FAL, CLRA, and common law fraud claims. A common question that will drive the resolution of these claims is whether Fuhu's advertising and marketing materials were likely to deceive a reasonable consumer, where they uniformly represented that the Nabi tablets were (1) "rechargeable," including a power adapter and charging cord, and (2) built and designed for use by children. (Safier Decl., Ex. EE, (Lee Depo. Trns.) 17:23-25; 123:17-124:17; 139:9-19.) *See Chavez*, 2010 U.S. DIST. LEXIS 60554 at *34 (common question is whether "the Blue Sky packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer"); *see also Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (UCL prohibits conduct that is unfair or deceptive, even if it is not unlawful); *Comm. on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983); *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976) ("statement is false or misleading if members of the public are likely to be deceived. Intent of the disseminator and knowledge of

---

[15] Because it borrows, as predicates, violations of the FAL, CLRA and Song Beverly Act as unlawful acts (Dkt.# 50, ¶ 148), Plaintiff's UCL unlawfulness claim presents identical common questions.

the customer are both irrelevant.")

Answers to the above legal questions also rest on common factual circumstances.

Fuhu omitted to disclose this information. (Id., Ex. EE (Lee Depo. Trns.) 123:17-124:17.)

On Plaintiff's CLRA and fraud claims, where it is necessary to show reliance by the class, such reliance may be presumed when the alleged misrepresentations and omissions were material. *See Chavez*, 2010 U.S. DIST. LEXIS 60554 at *30; *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 156-57 (2010). Materiality, in turn, is demonstrated by showing that a reasonable person "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 157 (citations omitted).

The "reasonable man" standard of materiality will be resolved by common evidence, namely, whether such a person would want to know that the charging system

-23-

Finally, on Plaintiff's common law fraud claim, a further common question affecting every class member is whether Fuhu intended to deceive the class. The presence of intent will be proven through evidence common to all class members.

### c.   Plaintiff's Declaratory Relief and CLRA Unconscionability Claims are Subject to Common Proof.

Plaintiff alleges that Fuhu violated CLRA section 1770(a)(19) by including an unfair and unconscionable arbitration provision in its Terms of Use and purporting to condition class members' pre-existing rights (such as the right to use their tablets or obtain software updates and bug fixes) on their agreement to the amended Terms of Use. He seeks declaratory relief.

To establish unconscionability under the CLRA, Plaintiff must prove procedural and substantive unconscionability. *See Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1318 (2005). Both prongs concern common questions and common proof. A contract is procedurally unconscionable if it is a contract of adhesion for which there are no reasonable market alternatives, if there is a significant imbalance in the bargaining strength of the parties, or if, like here, the terms were hidden, such that a party was surprised by them. *Id.* at 1319–20. A contract is "substantively unconscionable if it involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms." *Id.* at 1322 (quotation omitted). All of these issues depend on common proof.

### 3.   Plaintiff's Claims Are Typical Of Class Members' Claims

The purpose of the "typicality" requirement of Rule 23(a)(3) is to ensure that the named representative's interests "align" with those of the class. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As recognized by the Ninth Circuit, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be

substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon*, 150 F.3d at 1020; *Staton*, 327 F.3d at 957. Typicality is satisfied so long as the named plaintiff's claims stem from the same event, practice, or course of conduct that forms the base of the class claims and are based upon the same legal remedial theory. *See Jordan*, 669 F.2d at 1321.

Here, the class representative is typical: Having relied on Defendants' affirmative misrepresentations and omissions, he purchased a Nabi tablet with a defectively designed and manufactured charging system. (Miller Decl. ¶ 3, 5, 7.)[16] After the purchase was complete, the included charging system failed to reliably recharge the tablet, so the product he purchased was less valuable than the one he was promised. (Id. ¶ 5, 7-8; Selwyn Decl. ¶ 20.) The same injury occurred to absent class members, and Plaintiff's claims are not based on conduct unique to him.[17]

### 4.    The Proposed Class Representative Will Fairly And Adequately Protect Class Interests.

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Rule 23(g)(1)(B) similarly requires that class counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B).[18] The Ninth Circuit has established a two-prong test for

---

[16] Plaintiff is also typical of the subclasses because he purchased and registered his Nabi tablet prior to September 24, 2014 and he purchased the Nabi tablet from a Best Buy. (Miller Decl., ¶2.)

[17] Should this Court find Plaintiff to be atypical of the purchasers of the other tablet models or otherwise inadequate, there are many absent class members who are willing to serve as class representatives. *(See, e.g.,* Griffin Decl.; Price Decl.; Sanchez Decl.).

[18] When a court certifies a class, it must also appoint class counsel unless a specific statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A).

the requirement of adequacy of the representative and his counsel: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Because adequacy is closely related to typicality, where, as here, the claims of the class members and the class representative are reasonable co-extensive, there is no conflict. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 157-8, fn. 13 (1982). Moreover, if there are any doubts as to the adequacy of representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration. *See Newberg on Class Actions* §7.24 at 7-80 to 7-81 (3d ed. 1992).

Plaintiff and his counsel have vigorously prosecuted this action to date and intend to continue to do so. (Safier Decl. ¶ 43; Miller Decl. ¶ 9.) In appointing class counsel, the court considers "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class…." Fed. R. Civ. P. 23(g)(1)(c)(i). Gutride Safier LLP has considerable experience with complex consumer class actions and has no conflicts that would prevent it from adequately representing the interests of the Class. (Safier Decl., ¶ 43 & Ex. LL.)

### C. Plaintiff's Proposed Class Action Satisfies the Requirements of Rule 23(b).

In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies the requirements of Rule 23(b)(3) in that common questions of law or fact predominate over any purported individual questions, and a class action is the superior method for the fair and efficient adjudication of this

1   controversy.[19]

2   ## 1.   Common Questions of Law or Fact Predominate

3   Common questions predominate where, as here, a plaintiff alleges a

4   common course of conduct of misrepresentations, omissions, defects and other

5   wrongdoing that affected all the class members in the same or similar manner.

6   *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975), *cert. denied*,

7   429 U.S. 816 (1976). "The Rule 23(b)(3) predominance inquiry tests whether

8   the proposed classes are sufficiently cohesive to warrant adjudication by

9   representation." *In re VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d 124,

10  136 (2d Cir. 2001). This criterion is normally satisfied when there is an

11  essential common factual link between all class members and the defendant

12  for which the law provides a remedy. *Id.* at 136.

13  ### a.   Common Questions of Law Predominate, Because California Law Applies to All Class Member Claims.

14

15  Common questions of law predominate, because all class members'

16  claims are governed by California law. Throughout the class period, the Fuhu

17  ---

18  [19] If the Court concludes that it cannot grant certification under Rule 23(b)(3),
Plaintiff requests that the Court still certify the class under Rule 23(b)(2) to seek

19  injunctive relief because Fuhu "has acted or refused to act on grounds that
apply generally to the class, so that final injunctive relief or declaratory relief is

20  appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Among
other relief, Plaintiff seeks to enjoin Fuhu from (i) marketing and selling Nabi

21  tablets with the defective charging systems and (ii) invoking the arbitration

22  provision or class action waivers against customers who purchased their

23  tablets before the provisions were promulgated. Alternatively, Plaintiff requests
that the class be certified under Rule 23(c) for a liability-only determination.

24  *See, e.g., Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL

25  3478038, at *23 (C.D. Cal. May 18, 2015) (stating that "a class may be
certified for liability purposes only, leaving individual damages calculations to

26  subsequent proceedings" and if "class is ultimately unable to recover

27  restitution or obtain injunctive relief, the court could still certify a liability-only
class at this stage.").

28

TOU, which is incorporated into the Nabi Terms of Service Agreement (Safier Decl., Ex. MM) appearing on all tablets, has contained (and contains) a choice-of-law provision requiring application of California law:

> By visiting a Fuhu Property,[20] you agree that all matters relating to your access to or use of the Site, products or services sold or distributed by or through Fuhu, including all disputes, will be governed by the laws of the United States and by the laws of the State of California, without regard to principles of conflicts of laws.

(Safier Decl., Ex. JJ.) Mr. Kuo, Fuhu's witness most knowledgeable on Fuhu's customer agreements, testified that Fuhu believes that all customer use of Nabi tablets is done subject to the Fuhu TOU and Terms of Service agreements. (Id., Ex. KK (Kuo Depo. Trns.) 42:11-45:8; 50:8-10; 65:12.)

### b.  Common Questions Predominate Over Any Individual Questions on the Warranty Claims.

On Plaintiff's warranty claims, the common question of whether Defendants sold a defective product predominates over individualized questions that might arise, such as whether the class members had the same tablet or charging system version, or whether they actually experienced a charger failure. The differences in charging system generations and versions do not raise predominant issues, because the defect in all systems is alleged to be the same:

*See Doyle v. Chrysler Grp. LLC,* No. SACV 13-00620 JVS, 2014 WL 7690155, at *9 (C.D. Cal. Oct. 9, 2014) (rejecting defendants' argument that differences between four different models created predominant individual issues);

---

[20] "Fuhu Property" is defined as Fuhu provided "goods and services, including but not limited to web properties and applications." (Safier Decl., Ex. JJ, p. 1.)

*Cartwright v. Viking Indus., Inc.,* No. 2:07-CV-02159FCDEFB, 2009 WL 2982887, at *11 (E.D. Cal. Sept. 14, 2009) (despite different product models, the question of whether defendant's window products are inherently defective was predominate, common question as to all warranty sub-class members).

Nor can Fuhu contend that the class improperly includes people whose chargers may not have failed or who subjected them to undue force. The Ninth Circuit has held that "proof of the manifestation of a defect is not a prerequisite to class certification," nor do differences in class members' use bar class treatment. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010). In *Wolin*, plaintiff claimed that a defect in tires on certain vehicles would cause them to prematurely wear. 617 F.3d 1171. Land Rover argued, in opposition to certification, that individual issues predominated because tire wear varied depending on alignment, tire inflation, and "individual factors such as driving habits and weather." *Id.* at 1172. The district court agreed and denied certification. *Id.* The Ninth Circuit reversed, holding that "common issues predominate regarding Land Rover's obligations under its Limited Warranty," because "all of the proposed class members allege that their vehicles suffer from the same defect." *Id.* at 1174. It continued that although "individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect" and therefore were irrelevant for purposes of class certification. *Id.* at 1173. The Ninth Circuit also held that Plaintiff's fraud-based claims could be certified, because there were common questions whether Land Rover had misrepresented the characteristics of the vehicles or failed to reveal material facts about them. *Id.* at 1174.

Here, as in *Wolin*, Plaintiff has alleged that Defendants sold all of its Nabi tablets with uniform defects in the charging system. *See also Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327, 335 (N.D. Cal. 2013) (applying *Wolin*

and granting certification); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 479 (C.D. Cal. 2012) (certifying class with virtually identical predominant question as here, and citing *Wolin* in rejecting misuse and no manifestation arguments); *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *13 (C.D. Cal. July 1, 2013) (certifying class where claim hinged on determining whether the product was flammable and whether a reasonable consumer would expect a flammable leave-in hair product to contain a warning, finding the "issues [could] be resolved through common proof about the nature of Serum and the expectations of a reasonable consumer").

### c. Common Questions Predominate Over Any Individual Questions on the Fraud-Based Claims.

On Plaintiff's fraud based claims, the common question of whether Defendants' misrepresentations were deceptive to a reasonable consumer predominates over any individualized issue of reliance that Defendants may raise. Reliance by absent class members is not required for UCL claims. *See, e.g., Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013) (holding, "under the UCL and FAL, only the named plaintiffs are required to establish reliance and causation, not each class member. Individualized issues therefore will not predominate over questions common to the class, because this form of individualized proof is not required."). And on the CLRA and fraud claims, as noted above, a classwide inference of reliance arises if the defendant's misrepresentations and omissions would be material to a reasonable consumer, which is a common question. *See Vasquez v. Superior Court*, 4 Cal. 3d 800, 815 n.9 (1971); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491 (C.D. Cal. 2006) (in cases involving material omissions, reliance may be proven on a classwide basis); *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 156-57;

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-613 (1992); *McAdams v. Monier, Inc.*, 151 Cal. App. 4th 667, 678 (2007). Moreover, numerous federal courts have held that "[c]lass certification of a fraud claim may be appropriate if the plaintiffs allege that an entire class of people had been defrauded by a common course of conduct." *Plascencia*, 259 F.R.D. at 447, *citing In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006). And, in cases involving material fraudulent omissions—i.e., Fuhu's failure to disclose the charging system defects and associated safety concerns and dangers to children—the element of reliance may be presumed. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) (holding that where a case "involv[es] primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery;" rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision); *see also Vasquez*, 4 Cal. 3d 800, 814 (class certification is appropriate even where there may be individual issues of reliance because "it is not necessary to show reliance upon false representations by direct evidence;" rather, "reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.").

### d. Common Questions Predominate Over Any Individual Issues of Damages.

On damages, common issues also predominate over any individual issue, such as whether, when, and how a class member's charging system failed, and what s/he did in response, because damages relate to the *decrease in value* between what was advertised and what was provided. *See Wiener v.*

*Dannon Co.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009) (measure of damages on CLRA and breach of warranty claims is obtained by subtracting value of what was received, which is "a uniform value to be determined based on the evidence presented at trial," from what was paid), *accord Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK VBKX, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) and Cal. Comm. Code § 2714(2); *In re Vioxx Cases*, 180 Cal.App.4th 116, 131 (2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution."); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 700 (2006) (measure of restitution may be established by expert testimony quantifying "either the dollar of the consumer impact or the advantage realized by [defendant].").

Rule 23(b)(3) is satisfied if plaintiffs establish that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). Here, Plaintiff's theory is that the tablets were worth less than the prices at which Fuhu sold them, because of the undisclosed charging system defects and safety risks. Plaintiff's experts provide two scientific methods of establishing monetary relief on this diminution-in-value theory: (1) a contingent valuation survey which will determine the discount from the retail price that likely purchasers would demand in order to purchase a Nabi tablet that was truthfully advertised, and (2) a cost-to-repair analysis that includes the cost of replacing the charging cable and fixing the connector port. *See* Selwyn Decl. ¶¶ 20-39; Dennis Decl. ¶¶17-26*; see also Comcast*, 133 S.Ct. at 1433 (requiring that damages model must correspond to theory of liability.)

This Court has certified other class actions using similar methodologies. For example, in *Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014), the Court found that Random Coefficient Demand Estimation and Conjoint analysis were consistent with

plaintiffs' theory of liability. *See also* Vaccarino v. Midland Nat. Life Ins. Co., No. 2:11-CV-05858-CAS, 2014 WL 572365, at *8 (C.D. Cal. Feb. 3, 2014) (accepting damages model under a "benefit-of-the-bargain" measure of damages); *compare Rice v. Sunbeam Products, Inc.*, No. 2:12-CV-07923-CAS, 2014 WL 794331, at *5 (C.D. Cal. Feb. 24, 2014) (stating that one method of quantifying the amount of restitution to be awarded is computing the effect of unlawful conduct on the market price of a product purchased by the class, but denying certification without prejudice due to a lack of expert opinion.)

### e.   Common Questions Predominate On The Declaratory Relief Claim.

The request for declaratory relief regarding Fuhu's amendments to the TOU raises no individual issues. The sole question is whether Fuhu can, after a purchase transaction is complete, lawfully require its customers to waive litigation rights and agree to arbitration, in order to obtain software updates that were promised in the original transaction. In other words, the predominant common question is whether Fuhu's agreement, as amended, is procedural and substantively unconscionable. *See, e.g., Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000) (to prove a contract unconscionable, "A sliding scale is applied so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'") As the September 2014, surreptitious amendment to the TOU was substantively and procedurally identical for all class members, so too will be the answer to the question of unconscionability.

### 2.   A Class Action Is Superior

Rule 23(b)(3) enumerates the following factors for the court to consider in its superiority analysis: (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent

1  and nature of any litigation concerning the controversy already commenced

2  by . . . members of the class; (C) the desirability ... of concentrating the

3  litigation of the claims in the particular forum; and (D) the difficulties likely to

4  be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3);

5  *Hanlon*, 150 F.3d at 1023.

6          **a.      Class Members Have No Interest In Pursuing**
                     **Individual Litigation.**
7

8          The first factor to be considered is the interest of each class member in

9  "individually controlling the prosecution or defense of separate actions." Fed.

10 R. Civ. P. 23(b)(3)(A). Here, as in *Hanlon*, the alternative mechanism would be

11 individual claims for relatively small amounts of damages. Such claims would

12 not only burden the court system by deciding the same legal issues in a

13 number of small cases, but they would make no economic sense for litigants

14 or lawyers, and Fuhu would be rewarded for its false and deceptive omission

15 with millions in ill-gotten gains. *See Culinary/Bartender Trust Fund v. Las*

16 *Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot

17 proceed as a class, some—perhaps most—will be unable to proceed as

18 individuals because of the disparity between their litigation costs and what

19 they hope to recover."); *Hanlon*, 150 F.3d at 1023.

20         **b.      There Are No Other Actions Pending.**

21         The second factor to be considered, "the extent and nature of any

22 litigation concerning the controversy already commenced by . . . members of

23 the class," Fed. R. Civ. P. 23(b)(3)(B), also supports proceeding with

24 certification in this action. Plaintiff is not aware of any other individual or class

25 litigation concerning the claims alleged in this case. (Safier Decl., ¶ 44.) For

26 the same reason, it makes sense to concentrate the litigation of these claims in

27 this forum, where this case has been pending since July 2014.

28

### c.     There Are No Manageability Issues.

There is no reason to believe that the prosecution of the claims of the putative Class members in a single class action will create more management problems than the alternative, which is the prosecution of separate lawsuits by each class member. Moreover, it is well accepted that "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *In re VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (mere possibility of complexity or un-manageability does not defeat a class action), *overruled on other grounds as stated in In Re IPO Securities Litigation*, 471 F.3d. 24 (2d Cir. 2006); *see also Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768 at *64 (C.D. Cal. Nov. 9, 2009), *citing Negrete*, 238 F.R.D. at 494 ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3).") and *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("Where as here, common issues predominate regarding liability, and then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.")

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that his motion for class certification be granted.

Dated:  June 29, 2015              **GUTRIDE SAFIER LLP**

/s/ Seth A. Safier
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Attorneys for Plaintiff

1
2

**PROOF OF SERVICE**

I, Seth Safier, declare:

3
4

My business address is 100 Pine Street, Suite 1250, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

5
6

On June 29, 2015, I served the following documents:

7
8
9

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**

10
11

**DECLARATION OF SETH A. SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

12
13

**DECLARATION OF KENDYL A. ROMAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**

14
15

**DECLARATION AND EXPERT REPORT OF LEE L. SELWYN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

16
17
18

**ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL; DECLARATION OF SETH A. SAFIER IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL;**

19

**MANUAL FILING NOTICE;**

20
21

**[PROPOSED] ORDER GRANTING/DENYING ADMINISTRATIVE REQUEST TO FILE DOCUMENTS UNDER SEAL;**

22
23
24

**[REDACTED] PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**

25
26

**[REDACTED] DECLARATION OF SETH A. SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

27
28

**[REDACTED] DECLARATION OF KENDYL A. ROMAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**

**[REDACTED] DECLARATION AND EXPERT REPORT OF LEE L. SELWYN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

**DECLARATION OF J. MICHAEL DENNIS, PH.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

**DECLARATION OF SCOTT MILLER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

**PLAINTIFF'S PRELIMINARY TRIAL PLAN FOR CLASS CLAIMS;**

**DECLARATION OF TARRA PRICE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

**DECLARATION OF JAMES GRIFFIN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; and**

**DECLARATION OF TAYLOR SANCHEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

on the following person(s) in this action by placing a true copy thereof as follows:

Ivo Labar
Kerr & Wagstaffe LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105

[x]    BY ELECTRONIC MAIL.  I also caused said documents to be transmitted by ECF and email to the email address indicated after the above address.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on June 29, 2015, at San Francisco, California.

/s/ Seth A. Safier

_____

Seth Safier, Esq.

-37-