RICHARD B. GOETZ  (S.B. #115666)
rgoetz@omm.com
CYNTHIA A. MERRILL (S.B. #254571)
cmerrill@omm.com
MATTHEW A. BAHLEDA (S.B. #301765)
mbahleda@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

MATTHEW D. POWERS (SB# 212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants
FUHU, INC. and FUHU HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated, | Case No. 14-CV-6119 CAS (ASx) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| FUHU, INC. and FUHU HOLDINGS, INC., | Date: November 16, 2015 Time: 10:00 a.m. |
| Defendants. | Courtroom:  Courtroom 5, 2nd Fl. Judge:  Hon. Christina A. Snyder |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS ................................................................... 3

I.     THE NABI TABLETS AND CHARGING SYSTEMS ................................ 3

     A.    The "First Generation" Chargers ........................................... 4

          1.    nabi 1 .......................................................................... 4

          2.    nabi 2 .......................................................................... 5

               a.    nabi 2 version 1 charger ................................ 5

               b.    nabi 2 version 2 charger ................................ 6

               c.    nabi 2 version 3 charger ................................ 6

     B.    The Second Generation Chargers ........................................ 6

II.    CUSTOMER EXPERIENCES WITH NABI TABLETS ............................. 7

III.   PLAINTIFF'S EXPERIENCES WITH THE NABI 2. ............................... 9

ARGUMENT ...................................................................................... 11

I.     RULE 23(A)'S COMMONALITY REQUIREMENT IS NOT MET ......... 11

     A.    "Was the nabi tablet charging system defectively designed or manufactured such that Fuhu breached its warranty of merchantability?" ............................................................. 11

     B.    "Was Defendants' marketing of the tablets likely to mislead reasonable consumers?" ...................................................... 13

     C.    "Should this court declare unlawful Fuhu's amendment to its TOU imposing a class action waiver?" ................................... 14

II.    THE CLASS CANNOT BE CERTIFIED UNDER RULE 23(B)(3) BECAUSE OF MATERIAL VARIATIONS OF APPLICABLE LAW ...... 15

     A.    The Choice of Law Provision Does Not Apply. ................... 15

     B.    California's "Governmental Interest" Test Requires the Application of the Law of Each Consumer's State of Purchase ......... 17

          1.    Different States' Laws Vary in Material Ways. ...... 18

          2.    Each State Has a Strong Interest in Applying Its Laws. .......... 18

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

**TABLE OF CONTENTS**
(continued)

**Page**

3. Other States' Interests Would Be Impaired. ............................. 19

III. COMMON ISSUES WILL NOT PREDOMINATE. ................................... 20

    A. Plaintiff's Warranty Claims Cannot be Certified. .............................. 20

    B. Plaintiff's Fraud Claims Cannot be Certified. .................................... 24

        1. Injury is an Individualized Inquiry. ........................................... 25

        2. Plaintiff Cannot Establish Deception, Reliance or Materiality on a Classwide Basis. .................................. 28

            a. No Evidence of Uniform Material Misrepresentations............................................. 29

            b. Plaintiff Offers No Evidence that Fuhu Had a Duty to Disclose. ......................................... 30

    C. No Credible Method of Measuring Classwide Damages. .................. 31

IV. PLAINTIFF'S UNCONSCIONABILITY CLAIMS ARE NOT SUITABLE FOR CLASSWIDE RESOLUTION.......................................... 34

V. PLAINTIFF FAILS TO ESTABLISH TYPICALITY OR ADEQUACY.................................................................................. 35

CONCLUSION................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abogados v. AT&T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) ................................................................................ 19

*Akkerman v. Mecta Corp.*,
   152 Cal. App. 4th 1094 (2007) ......................................................................... 20

*Algarin v. Maybelline*,
   300 F.R.D. 444 (S.D. Cal. 2014) ..................................................................... 28

*All West Elecs., Inc. v. M-B-W, Inc.*,
   64 Cal. App. 4th 717 (1998) ............................................................................. 21

*Aluminum v. Hunter Engineering Co.*,
   655 F.2d 938 (9th Cir. Cal. 1981) ................................................................... 35

*Am. Honda Motor Co., Inc. v. Superiori Court*,
   199 Cal. App. 4th 1367 (2011) ......................................................................... 22

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ................................................ 20

*Auto Equity v. Superior Court*,
   57 Cal. 2d 450 (1962) ....................................................................................... 31

*Baker v. Microsoft Corp.*,
   2015 U.S. App. LEXIS 12883 (9th Cir. July 20, 2015) ................................. 22

*Banks v. Nissan*,
   301 F.R.D. 327 (N.D. Cal. 2013) .................................................................... 23

*Bardin v. DaimlerChrysler*,
   136 Cal. App. 4th 1255 (2006) ......................................................................... 21

*Berger v. Home Depot*,
   741 F.3d 1061 (9th Cir. 2014) .......................................................................... 29

*Binder v. Gillespie*,
   184 F.3d 1059 (9th Cir. 1999) .......................................................................... 27

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Bridgestone/Firestone Tires Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2012) ............................................................ 18

*C.E. Design Ltd. v. King*,
  637 F.3d 721 (7th Cir. 2011) .............................................................. 35

*Caldera v. J.M. Smucker Co.*,
  2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) .............................. 32, 33

*Cannon v. BP*,
  2013 U.S. Dist. LEXIS 142934 (S.D. Tex. Sept. 30, 2013) ................ 33

*Caro v. Proctor & Gamble Co.*,
  18 Cal. App. 4th 644 (1993) ............................................................... 24

*Carvalho v. Equifax*,
  629 F.3d 876 (9th Cir. 2010) .............................................................. 31

*Cholakyan v. Mercedes-Benz*,
  281 F.R.D. 534 (C.D. Cal. 2012) ........................................................ 12

*Comcast v. Behrend*,
  133 S. Ct. 1426 (2013) ........................................................................ 34

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) ........................................................................ 3, 32

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ................................................ 21, 30, 31

*Davis-Miller v. Automobile Club*,
  201 Cal. App. 4th 106 (2011) ....................................................... 25, 28

*Eisen v. Porsche*,
  2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ...................................... 21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................... 3, 35

*Fairbanks v. Farmers New World Life Ins. Co.*,
  197 Cal. App. 4th 544 (2011) ............................................................. 13

- iv -

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Forrand v. Federal Express,*
    2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ....................................................... 32

*Frenzel v. Aliphcom,*
    2015 WL 4110811 (N.D. Cal. July 7, 2015) ...................................................... 17

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ............................................................................................ 20

*Gianino v. Alacer,*
    2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) .................................. 18

*Guido v. L'Oreal,*
    2013 WL 3353857 (C.D. Cal. July 1, 2013) ...................................................... 23

*Heisler v. Maxtor,*
    2010 U.S. Dist. LEXIS 125745 (N.D. Cal. Nov. 17, 2010) ............................... 12

*Hernandez v. Burger,*
    102 Cal. App. 3d 795 (1980) .............................................................................. 19

*Hicks v. Kaufman & Broad,*
    89 Cal. App. 4th 908 (2001) ........................................................................ 22, 25

*In re Hitachi Television Optical Block Cases,*
    2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ............................................................ 18

*Horvath v. LG Elecs. MobileComm USA, Inc.,*
    2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) .................................. 19

*Hovsepian v. Apple Inc.,*
    2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) .............................................. 21, 25

*International Union of Operating Engineers Local No. 68 Welfare*
    *Fund v. Merck & Co., Inc.,*
    929 A.2d 1076 (N.J. 2007) ................................................................................ 27

*Keegan v. Am. Honda Motor Co.,*
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. 17, 18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kwikset v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ....................................................................... 34

*Larson v. Trans Union LLC*,
   2015 WL 3945052 (N.D. Cal. June 26, 2015) ..................................... 11

*Lewallen v. Medtronic*,
   2002 WL 31300899 (N.D. Cal. Aug. 28, 2002) ................................... 18

*Long v. Hewlett-Packard Co.*,
   2007 WL 2994812 (N.D. Cal. July 27, 2007) ...................................... 22

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) .......................................................................... 19

*McLaughlin v. Am. Tobacco*,
   522 F.3d 215 (2d Cir. 2008), *abrogated in part by Bridge v.*
   *Phoenix*, 553 U.S. 639 (2008) ............................................................. 26

*Minkler v. Kramer Labs.*,
   2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ....................................... 24

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) .................................................................... 3, 26

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) .............................................................. 21

*Morgan v. Harmonix*,
   2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) ..................... 31

*Nedlloyd Lines B.V. v. Super. Crt.*,
   3 Cal. 4th 459 (1992) ...................................................................... 15, 17

*O'Shea v. Epson Am, Inc.*,
   2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) .................................... 24

*Oestreicher v. Alienware Corp.*,
   322 F. App'x 489 (9th Cir. 2009) ........................................................ 31

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Offshore Rental Co. v. Cont'l Oil Co.*,
  22 Cal. 3d 157 (1978) ........................................................................ 19

*Pfizer v. Super. Crt.*,
  182 Cal. App. 4th 622 (2010) ....................................................... 25, 34

*In re Pom Wonderful*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .............................. 26, 32

*Pulaski & Middleman v. Google Inc.*,
  2015 U.S. App. LEXIS 16723 (9th Cir. Sept. 21, 2015) ..................... 34

*Rikos v. Procter & Gamble Co.*,
  2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ..................................... 18

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (2015) .......................................................... 31

*Savino v. Computer Credit, Inc.*,
  164 F.3d 81 (2d Cir. 1998) ............................................................... 35

*Smilovits v. First Solar*,
  295 F.R.D. 423 (D. Ariz. 2013) ........................................................ 27

*In re Sony*,
  758 F. Supp. 2d 1077 ( S.D. Cal. 2010) ............................................ 20

*In re St. Jude Med., Inc.*,
  425 F.3d 1116 (8th Cir. 2005) .......................................................... 18

*Stearns v. Select Comfort*,
  763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................ 28

*Stearns v. Ticketmasters*,
  655 F.3d 1013 (9th Cir. 2011) ...................................................... 25, 34

*Tait v. BSH*,
  289 F.R.D. 466 (C.D. Cal. 2012) ...................................................... 23

*In re Tobacco II Cases*,
  46 Cal. 4th 289 (2009) ...................................................................... 24

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Torres v. Nissan N. Am., Inc.*,
  2015 U.S. Dist. LEXIS 120381 (C.D. Cal. Sept. 1, 2015) ........................... 22, 23

*Tucker v. Pacific Bell*,
  208 Cal. App. 4th 201 (2012) ....................................................................... 25, 30

*In re Vioxx*,
  180 Cal. App. 4th 116 (2009) ....................................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................. 11, 13

*Washington Mut. v. Super. Crt.*,
  24 Cal. 4th 906 (2001) ............................................................................. 15, 17, 18

*Webb v. Carter's Inc.*,
  272 F.R.D. 489 (C.D. Cal. 2011) ....................................................................... 25

*Williams v. Oberon Media, Inc.*,
  2010 WL 8453723 (C.D. Cal. April 19, 2010) .................................................. 20

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ................................................................. 21, 30, 31

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir 2010) ..................................................................... 22, 23

*Zinser v. Accufix*,
  253 F.3d 1180 (9th Cir. 2000), *amended* 273 F.3d 1266 (9th Cir.
  2001 ..........................................................................................................*passim*

**Statutes**

28 U.S.C. § 2201 ....................................................................................................... 35

Cal. Bus. & Prof. Code § 17203 ............................................................................. 32

Cal. Bus. & Prof. Code § 17535 ............................................................................. 32

Cal. Civ. Code § 1791.1(c) ...................................................................................... 21

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Civ. Code § 1793.2(d)(1) .................................................................... 23

Cal Comm. Code § 2714(2) ....................................................................... 32

**Rules**

Fed. R. Civ. P. 23 ............................................................................... 2, 22

Fed. R. Civ. P. 23(a) ............................................................................... 2

Fed. R. Civ. P. 23(a)(2) ......................................................................... 11

Fed. R. Civ. P. 23(a)(3) ......................................................................... 35

Fed. R. Civ. P. 23(a)(4) ......................................................................... 35

Fed. R. Civ. P. 23(b) ............................................................................. 30

Fed. R. Civ. P. 23(b)(3) .............................................................. 3, 20, 23, 32

# INTRODUCTION

The "nabi" tablets at issue in this case are a huge critical and popular success. They have repeatedly won honors from electronics experts, educators, and parenting organizations, including "Top Tablets for Your Kids" (from *PC Magazine*), and "Best Tablet for Kids" and "Editor's Choice" (from *Laptop Magazine*).[1] In 2013, the National Parenting Center gave the nabi 2 its "Seal of Approval." Customers similarly give the tablets high marks—on Amazon.com, between 40% and 60% (depending on the model) gave the tablets ***five stars*** (the highest possible rating).[2] Yet according to Plaintiff Scott Miller ("Plaintiff"), the fact that chargers sometimes broke means that this Court should conduct a single trial over whether the tablets are so "defective" that defendants Fuhu, Inc. and Fuhu Holdings, Inc. (collectively, "Fuhu") should be forced to issue refunds to all buyers.

Rather than addressing the very real differences in the products, issues, and customers' experiences that exist in this case, Plaintiff simply assumes them away. His motion should be rejected for a host of reasons:

***Most buyers <u>never</u> had a problem.*** Plaintiff's own expert estimates only 8% of nabi customers reported any form of charging issue, even after years of use.  And Plaintiff does not allege that those who have never had a problem ***ever will***.

***For the minority who experienced an issue, Fuhu responded.*** First, Fuhu supplied free replacement chargers, whether or not products were within warranty. Plaintiff argues that Fuhu ██████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████—many of which

---

[1] Declaration of Lisa Lee ("Lee Decl.") ¶ 9 & Ex. 4.
[2] *See* Declaration of Dr. Keith Ugone ("Ugone Decl."), attached to Declaration of Cynthia A. Merrill ("Merrill Decl.") as Ex. 1, ¶ 33 & Ex. 5.
[3] Plaintiff's Motion for Class Certification (Dkt. # 85) ("Mot.") at 1:15-16.

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

were not "complaints" at all and did not involve malfunctioning chargers[4]—█

█ (Gist Decl. Ex. 5.)

Plaintiff himself got replacements—and in October 2013, when asked to rate

Fuhu's customer service, he wrote, "Good, I'm satisfied. Everything was received

and is working properly." (*Id.* ¶ 19 & Ex. 9.)

Second, █ It

dropped one supplier; correspondence Fuhu had with another supplier—which

Plaintiff attaches to his complaint and cites liberally in his motion—shows Fuhu

aggressively pressed to eliminate remaining problems.

**There is <u>wide</u> variation among nabi products.** Most documents Plaintiff

cites deal only with one model, the nabi 2—and as those same materials show,

Fuhu worked tirelessly to improve that model's chargers and to give customers

replacement parts. Other models at issue (*e.g.*, the nabi Jr., nabi 2S, nabi DreamTab,

nabi XD) used a completely different rectangular charger that is obviously not

"similar" to the "pin" charger of nabi and nabi 2[5]. █

█ █

**Plaintiff does not establish he can satisfy the prerequisites of FRCP 23.**

Plaintiff attempts to meet Rule 23(a)'s commonality requirement by posing

common *questions.* But these questions are not susceptible of classwide *proof*—

because of the different designs at issue, the fact that most buyers never have had

and never will have a charging problem, and the fact that Plaintiff does not and

cannot show all purchasers were exposed to the same marketing representations.

There is also no basis to assume uniformity in how buyers would weigh a small risk

of charger malfunction (which Fuhu fixed if it occurred) against the tablets'

features, awards, customer reviews, or their children's preference for, *e.g.*, a Disney

---

[4] *See* Decl. of Eric Gist ("Gist Decl.") ¶ 10.
[5] Pictures of the different charger models are attached to the Declaration of Steven Hsieh ("Hsieh Decl.") as Exs. 2, 15. The differences are obvious at a glance.
[6] Decl. of Kendyl A. Román ("Román Decl.") (Dkt. # 87) ¶ 257.

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

or Star Wars branded tablet. And the arbitration clause Plaintiff challenges does not even apply to his purchase or his claims.

Still less has Plaintiff demonstrated common questions predominate, as they must under Rule 23(b)(3). His assertion that California law will govern all claims is mistaken. The choice of law provisions he cites applies only to actions arising from use of content on the Fuhu website and firmware updates—*not* to claims arising from his tablet purchase or from the alleged charger issues. Class members' warranty and fraud claims will be governed by the laws of fifty states, which differ materially. To prevail under *California's* warranty laws he would need to show— and cannot—that class members' tablets are all substantially certain to malfunction. Nor can Plaintiff avoid these problems by merely asserting a "design" defect. In the warranty cases Plaintiff cites on that issue, *all* class members could point to reduced performance; not so here. For Plaintiff's fraud claims, the facts do not permit a classwide showing of injury or presumption of reliance. Plaintiff tries to skirt this difficulty by ignoring the realities of class members' purchases and alleging injury through a fraud on the market theory (*i.e.*, that the price would have been lower) that California has rejected. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993).[7]

## STATEMENT OF FACTS

### I.   THE NABI TABLETS AND CHARGING SYSTEMS

There are seven different nabi tablets at issue here, aimed at different ages, some co-branded with kids' entertainment properties (*e.g*., Disney Princesses, Star Wars, and Nick Jr. themes). The tablets have won a host of awards (Lee Decl. ¶ 9 & Ex. 4) and ███████████████████████████████████████████

███████████ And yes, some nabi customers had problems with recharging the tablets.

---

[7] Much of Plaintiff's proffered expert testimony ignores the facts in this case. As set out in Fuhu's Expert Objections, the testimony is largely inadmissible under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (*Daubert* analysis is necessary to determine admissibility of expert testimony at the class certification stage).

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

In this Amazon.com and Facebook age, the complaints of that minority are easily visible to the buying world (including Plaintiff). But other customers raved about the benefits and durability of these tablets; overall, customers have given the tablets high marks in online reviews, citing their durability, ease of use, parental controls, free software and customer service. (*See, e.g.,* Ugone Decl. Exs. 4 & 5).

### A. The "First Generation" Chargers

#### 1. nabi 1

The first nabi ("nabi 1") was an off-the-shelf tablet manufactured by Livall. (Hsieh Decl. ¶ 6.) The nabi 1 included a charger cable designed by Livall and manufactured by Best System (HK) Limited. (*Id.*) The cable had a cylindrical tip, to be inserted into the tablet's charging port; the other end attached to an AC adapter that was plugged into a wall socket. (*Id.*) The nabi 1 could also be charged through its micro-USB port with a cable attached to a computer. (*Id.*)

Shortly after nabi 1 launched in December 2011, ███████████████ ████████████████████████████████████████████ (*Id.* ¶ 7 & Ex. 3.) Fuhu acted immediately to address the issue on several fronts. As the first calls came in, Fuhu provided customers with new chargers. (*Id.* Ex. 3.) ███████ ████████████████████████████████████████████████ ██████████████████████████████ (*Id.*) But Fuhu did not wait for the customers to contact the company. On December 31, 2011, it reached out through Fuhu's Facebook page to advise users how they could work around broken chargers, inform consumers that the "[t]he charger [not the battery] is the main source of the problem," and explain that it was working to provide free replacement chargers for customers with charging problems.  (Lee Decl. ¶ 7 & Ex. 3.) Although Fuhu initially considered providing free replacement chargers through a retailer, it ultimately decided to send them to customers themselves. (*Id.* ¶ 8.) Even customers who had not experienced any problems could request a replacement charger "just in case" and Fuhu would split the cost. (*Id.*)

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)



Meanwhile, Fuhu worked to improve the chargers. It switched manufacturers and worked with Livall and a new manufacturer, Keen High ("KH"), to correct possible quality control issues that might have caused the charger problems and to produce replacement chargers. (Hsieh Decl. ¶ 8 & Ex. 4.)

2.    **nabi 2**

a.    **nabi 2 version 1 charger**

The nabi 2 tablet, designed and manufactured by KH, launched in July 2012. (*Id.* ¶ 9.) The nabi 2 ultimately employed three different charging systems.

(*Id.* ¶ 10.)

Once again, Fuhu pushed for a solution. In August 2012,

(*Id.* Ex. 9.)

As before, Fuhu gave out free chargers while it worked to develop a new charger. (*Id.* Ex. 9.)[8]

---

[8]

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

b.  **nabi 2 version 2 charger**

Fuhu and KH then developed a second version of the nabi 2 charging system,

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

c.  **nabi 2 version 3 charger**

Fuhu and KH continued to explore ways to improve the chargers' durability.

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

In mid-2013, ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

██, a different AC adapter, and was furnished by a different supplier. (*Id.*; Hsieh

Dep. at 48:23-49:23 .) Beginning in July 2013, Fuhu included this version 3 charger

with all tablets in its inventory. (Hsieh Decl. ¶ 19.)

**B.    The Second Generation Chargers**

For later nabi models, Fuhu developed its own charging tip, the "nabi

connector." ████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

1  ██████████████████████████; it looks and operates nothing like the

2  charger for the nabi 1 or nabi 2 tablets and has been used on all other nabi models.

3  (Hsieh Decl. ¶ 20 & Ex. 15.) After Fuhu produced prototypes of the nabi

4  Connector, intended for trade shows, demonstration models and reviewers, ████

5  ████████████████████████████████████████

6  ██████████████████████████████████

7  ████████████████████████████

8  ██████████████████████████████████

9  ████████████████████████████████████

10  ██████████████████████████████████

11  ████████████████████████████████

12  **II.     CUSTOMER EXPERIENCES WITH NABI TABLETS**

13  ██████████████████████████████████

14  ████████████████████████████████████████

15  ███████████████████████████████ The percentage of

16  users who actually experienced a charging malfunction is quite small. And those

17  users who reported malfunctions to Fuhu, including Plaintiff himself, saw their

18  problems promptly addressed through free replacement chargers and tablets.

19      That data is laid out in detail in the Declaration of Eric Gist, who runs Fuhu's

20  "nabi cares" customer support division. As Mr. Gist explains, ████████████

21  ██████████████████████████████████████

22  ████████████████████████████████████

23  ██████████████████████████████████████

24  ██████████████████████████████████

25  ███████████████████████████ That number likely

26  overstates the actual rate of malfunctions: Not every ticket coded as charger-related

27  reflects a genuine malfunction; in some cases, a consumer might have a question

28  about operation or a problem that can be resolved over the phone. (*Id.* ¶ 10 & Ex.

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

3.) In addition, a customer might call several times, creating many tickets for a single issue. (*Id.* ¶ 10 & Ex. 4.)

Fuhu's data on charger and tablet replacements also shows limited problems.

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

Because this data is maintained by different systems, figures for inquiries and replacements cannot simply be added together to derive a "failure rate" for nabi tablets. (*Id.* ¶ 14.) ████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ The customer declarations that are submitted with this Opposition illustrate the excellent customer and warranty service that Fuhu is known for.[9] ██████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

---

[9] *See* Declarations of M. Covert, K. Edmondson, A. Ehman, S. Larsen, B. Nathan.

### III.   PLAINTIFF'S EXPERIENCES WITH THE NABI 2.

On July 27, 2012, Plaintiff purchased a nabi 2 for $199 from a Best Buy in Lakeland, Florida for use by his grandson, who was five at the time. (Deposition of Scott Miller ("Miller Dep."), attached to Merrill Decl. as Ex. 3, at 33:9-34:8.) Plaintiff kept the charger at his house because he thought it inappropriate for a child to charge an electronic device. (*Id.* at 48:21-49:10; 139:16-18.) His grandson would typically use the device at Miller's house, or take it home without the charger. (*Id.* at 48:21-23.) The nabi 2 initially worked well.  (*Id.* at 38:8-41:14; 71:15-23.)  But then, Plaintiff claims, he began to experience three occasional problems.

First, he claims his tablet would occasionally crash while charging, and need to be reset before it would charge. (Decl. of Scott Miller [Dkt. # 77] ("Miller Decl.") ¶ 5.) This occurred about four times within the first month, but Plaintiff did not perceive it to be significant enough to return the tablet. (Miller Dep. at 114:10-115:16; 121:20-122:7; 123:13-16; 71:15-72:25.) He never informed Fuhu of this problem, which continued to occur "intermittently." (*Id.* at 121:20-122:20.)

Second, starting in late 2012, the screen of his tablet would get "warm"[10] while charging. (*Id.* at 126:12-127:2.) This occurred a dozen times between December 2012 and September 2013 and was solved by unplugging the device and charging it after the tablet had cooled. (*Id.* at 123:9-124:5; 100:14-102:10.) Again, he never reported this to Fuhu. (*Id.* at 127:3:-7.)

Third, by November or December 2012, every two or three times Plaintiff attempted to use the tablet, it would not turn on after charging unless it had a full charge or would abruptly turn off, despite apparently having a partial charge. (Miller Decl. ¶ 5; Miller Dep. at 129:9-17.) However, the tablet could still be turned on and used after being charged. (Miller Dep. at 130:1-18; 131:8-18.) Plaintiff did

----

[10] █████████████████████████

1   not contact Fuhu about this, either. (*Id.* at 132:18-133:7.)[11]

2       Instead, on December 27, 2012, Plaintiff wrote to Fuhu to report errors in

3   Fuhu's Nabi University learning software. (Gist Decl. ¶ 16 & Ex. 6 ; Miller Dep. at

4   183:17-184:6.) Then Plaintiff emailed Fuhu again the next day. (Gist Decl. ¶ 17 &

5   Ex. 7.) His second email mentions "some charger cord problems," but reported that

6   he "love[s] the actual tablet." (*Id.*  Ex. 7) Plaintiff did not specifically report the

7   issues he now claims he had, did not return the tablet, and did not ask for a new

8   charger. (*Id.*)

9       Plaintiff's grandson continued to use the tablet throughout the warranty

10  period. (Miller Dep. at 133:21-134:8; 200:10-202:8.) On or around September 16,

11  2013 (a month after his warranty expired) Plaintiff requested a replacement charger

12  through Fuhu's website, and Fuhu shipped one free of charge.  (*Id.* at 196:12-

13  197:14; 201:20-22; Gist Decl. ¶ 18 & Ex. 8.) Plaintiff acknowledges that this

14  replacement charger cured the problems he allegedly had previously experienced.

15  (Miller Dep. at 203:15-18.) And when Fuhu asked him to rate its customer service

16  in October 2013, Plaintiff responded "Good, I'm satisfied" and reported that

17  "Everything was received and is working properly." (Gist Decl. ¶ 19 & Ex. 9.)

18      Nevertheless, Plaintiff now claims the replacement charger later created a

19  new problem, namely that he could not use the tablet while it was charging and

20  only when it was not plugged in. (Miller Dep. at 203:15-204:1.) Plaintiff did not

21  report this post-warranty problem to Fuhu or attempt to return the tablet and

22  continued to use the tablet, at least sporadically, until June 2014. (*Id.* at 203:15-

23  204:4; 88:18-89:7.) In December 2014, during the pendency of this litigation and

24  17 months after his warranty had expired, Plaintiff requested a second replacement

25  charger. (Miller Dep. at 197:27-198:24; 203:10-204:1.) Fuhu again provided him

26

27  ───────────────
[11] Though Plaintiff claims to have contacted Fuhu about the problems by requesting
28  a new charger in late 2012, neither he nor Fuhu have any record of this request.
    (Miller Dep. at 184:15-185:24; 194:3-195:9; Gist Decl. ¶¶ 15-21.)

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

one free of charge. (Gist Decl. Ex. 11; Miller Dep. at 201:12-22.)

## ARGUMENT

### I.      RULE 23(a)'S COMMONALITY REQUIREMENT IS NOT MET.

A party seeking certification must "affirmatively demonstrate" that the prerequisites are met, including the "commonality" requirement of Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). The burden is on the Plaintiff to show, "by a preponderance of the evidence, that the prerequisites have been met." *Larson v. Trans Union LLC,* 2015 WL 3945052, at *3 (N.D. Cal. June 26, 2015) (citation omitted). While Rule 23(a)(2) speaks in terms of "common questions of law or fact," the Supreme Court has emphasized that it is not sufficient to raise purported "common questions," as Plaintiff does. *Id.* What matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes,* 131 S. Ct. at 2551 (citation omitted; emphasis in original). Here, Plaintiff has not carried his burden of showing the questions he identifies can actually be resolved on a classwide basis.

### A.      "Was the nabi tablet charging system defectively designed or manufactured such that Fuhu breached its warranty of merchantability?"

In arguing that the "defect" is common as to the entire class (Mot. at 21:4-22:7), Plaintiff ignores obvious (and crucial) differences between the multiple nabi models, ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████ █████████████████████████████████

The entire array of nabi charging systems cannot possibly suffer from a *common* design defect, as Plaintiff asserts, because they do not share a common design. Plaintiff's expert, Kendyl Román, opines that ███████████████████

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)



But even he admits important differences between the five or more versions. (

The lack of a *common* defect defeats Plaintiff's assertion of commonality. *See Cholakyan v. Mercedes-Benz*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) (commonality not satisfied where plaintiff failed "to identify a single part or system that is the cause of the water leaks"); *Heisler v. Maxtor,* 2010 U.S. Dist. LEXIS 125745, at *12 (N.D. Cal. Nov. 17, 2010) ("Plaintiffs cannot show that a common defect exists simply by making conclusory allegations that [Defendant's] manufacturing process is substandard.").

In addition, Plaintiff ignores differences in the tablets' performance.

Even if Mr. Román had identified a credible industry standard,[12] the evidence shows that the tablets' performance varied significantly and that a simple comparison to a single "standard" is impossible.

---

[12] The "standard" Mr. Román cites is misleading; it represents a "yield" rate (or rate of defect for product coming off an assembly line) not a rate of problems reported during actual use. In any event, Mr. Román lacks the expertise to testify about the "industry standard." He admits he has no idea what the true failure rates are (for chargers or otherwise) for the "comparable" products he identifies in his own Declaration. (Román Dep., attached to Merrill Decl. as Ex. 4, at 209:10-210:12, 243:19-245:11.)

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

Like the question of defect, the question of whether the tablets were "unsuitable" for children cannot be resolved "in one stroke," *Dukes,* 131 S. Ct. at 2551, when different tablets were designed for children of different ages (toddlers to "tweens") and displayed different malfunctions.[13]

### B. "Was Defendants' marketing of the tablets likely to mislead reasonable consumers?"

Next, Plaintiff contends that an objective, reasonable consumer standard is employed to assess the alleged deceptiveness and materiality of marketing and advertising claims, obviating the need for individualized proof. (*See* Mot. at 22:8-23:28.) But he overlooks the showing necessary to prove that class members were all injured in the same way by the same allegedly deceptive marketing: that class members were all exposed to the same representations. *See, e.g., Fairbanks v. Farmers New World Life Ins. Co.,* 197 Cal. App. 4th 544, 562 (2011) (class action for fraudulent business practice under the UCL requires that a defendant have "engaged in uniform conduct likely to mislead the entire class").

Plaintiff nowhere identifies even one allegedly false advertisement that class members all purportedly relied on in purchasing nabi tablets. Plaintiff himself testified that, prior to buying his nabi, he viewed (1) reviews on third-party websites (Miller Dep. at 43:24-44:7), (2) technical specifications for the nabi 2 at www.nabitablet.com (*id.* at 52:21-53:11) (3) possibly the nabi 2 user manual on the Fuhu website (*id.* at 164:22-165:15), (4) external packaging for the nabi 2 (*id.* at 62:2-24) and (5) "shelf cards" and displays about the nabi 2 at Walmart and Best Buy (*id.* at 53:15-55:25.) Of these materials, only the nabi packaging would necessarily have been presented to all class members prior to purchase—and the packaging neither mentions rechargeability nor provides a list of included

---

[13] Although Plaintiff offers Mr. Román's opinion on this issue, Mr. Román is plainly unqualified to opine about the tablets' suitability for children. He claims expertise in child development--although he has never taken a class, has no degree, and has never written on the topic--because he has more experience working with children "than the average person." (Román Dep. at 222:14-223:25.)

1   components. (Lee Decl. ¶¶ 4-5 & Exs. 1-2.) And Plaintiff offers no evidence that all

2   or even most nabi purchasers read the packaging prior to purchase. Plaintiff viewed

3   the box merely to confirm that he was getting the product he requested, not to

4   "persuade me further" and could not recall whether the packaging stated that the

5   tablet was "rechargeable." (*Id.* at 62:20-63:2, 63:24-64:1.) Plaintiff cannot propose

6   a single trial over Fuhu's "deceptive" statements when he has yet to identify even

7   one "misrepresentation" seen by all class members.

8       Nor is the materiality of the alleged *omissions* a common question in this

9   case. The allegedly concealed defect is a *risk* of malfunction and that risk varies

10  widely from model to model, and (as discussed in the concurrently filed Declaration

11  of Dr. Keith Ugone) consumers' willingness to accept the risk will necessarily turn

12  on the importance to them of other features of the nabi tablet such as parental

13  controls, screen size, applications, co-branding and content from popular kids'

14  entertainment. *See In re Vioxx,* 180 Cal. App. 4th 116, 129 (2009) ("if the issue of

15  materiality or reliance is a matter that would vary from consumer to consumer, the

16  issue is not subject to common proof, and the action is not properly certified as a

17  class action"). (*See also* Ugone Decl. Ex. 7.)

18  **C.    "Should this court declare unlawful Fuhu's amendment to its TOU**
19  **imposing a class action waiver?"**

20      Plaintiff accuses Fuhu of "surreptitiously" adding an arbitration clause to its

21  website Terms of Use ("TOU") as a "silver bullet" to end this lawsuit. (*See* Mot. at

22  14:16-18.) But Fuhu has never taken any steps to enforce the arbitration clause in

23  this case, or argued that it applies to Miller's claims or the claims of any class

24  member. That is because (as is discussed in Section II.A below) the TOU that

25  contains the arbitration clause governs *use of the Fuhu website*, not all purchases

26  of Fuhu products. The TOU (and the arbitration clause) does not apply here.

27      Plaintiff's "unconscionability" claim apparently rests on a contention that the

28  addition of the arbitration clause improperly burdened "class members' pre-existing

DEF. OPP. TO MOT. FOR CLASS CERT.
                                                        14-CV-6119 CAS (ASX)

rights," including software updates promised at the time of purchase. (Mot. at 24:7-11.) But Plaintiff nowhere identifies the source of any such "promise." Nabi purchasers were certainly never promised unconditional access to software updates indefinitely.[14] Indeed, as Plaintiff recognizes in his Motion, the TOU to which users agreed *prior* to September 24, 2014 quite clearly explained that "Fuhu reserves the right, at its sole discretion, to change, modify, add or remove portions of these Terms, at any time. . . . Your continued use of the Site following the posting of changes will mean that you accept and agree to the changes." (Merrill Decl. Ex. 5.) Plaintiff identifies no promise to purchasers (much less a uniform one) that superseded those unambiguous statements. In short, there is no issue to resolve.

## II.   THE CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(3) BECAUSE OF MATERIAL VARIATIONS OF APPLICABLE LAW.

### A.   The Choice of Law Provision Does Not Apply.

Plaintiff maintains that common questions of law predominate "because all class members' claims are governed by California law." (Mot. at 27:15-16.) Plaintiff predicates his assertion on a choice of law provision included in the Fuhu website TOU. (Merrill Decl. Ex. 5.)

Under California choice of law rules, the Court must "first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope." *Washington Mut. v. Super. Crt.*, 24 Cal. 4th 906, 916 (2001) (citing *Nedlloyd Lines B.V. v. Super. Crt.,* 3 Cal. 4th 459, 468-70 (1992)).[15]

The choice of law provision is contained in the TOU posted on the Fuhu website. As the TOU itself makes clear, it applies to use of the website and its links:

---

[14] The nabi 2 User Guide states that "nabi™ software updates are available over the air", but does *not* state that users have unconditional access to them or that any particular update will be provided in the future. (Merrill Decl. Ex. 6.)

[15] *See also Zinser v. Accufix,* 253 F.3d 1180, 1187, *amended* 273 F.3d 1266 (9th Cir. 2001) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."); *accord Mazza v. Am. Honda,* 666 F.3d 581, 589 (9th Cir. 2012).

> Fuhu, Inc. and its affiliates ("Fuhu") provide various goods and services, including but not limited to web properties and applications (the "Fuhu Property"). These Terms and Conditions of Use (the "Terms") ***apply to the Fuhu website*** located at www.fuhu.com, and all associated sites linked to www.fuhu.com by Fuhu, its subsidiaries and affiliates, including Fuhu sites around the world (collectively, the "Site") The Site is the property of Fuhu.  BY USING THE SITE, YOU AGREE TO THESE TERMS.  IF YOU DO NOT AGREE, DO NOT USE THE SITE.

(Merrill Decl. Ex. 5 (emphasis added).) Fuhu emphasizes that the TOU governs use of the Site: "As long as you comply with these Terms, Fuhu grants you a personal, non-exclusive, non-transferable, limited privilege to enter and use the Site." (*Id.*) As part of the TOU, the choice of law provision is necessarily limited by the TOU's scope and applicability. The provision itself clarifies that its acceptance is triggered by visiting a "Fuhu Property" (that is, "web properties and applications") and therefore must be read as reaching applications, services and purchases available through the Site, not the purchase of nabi tablets elsewhere:

> By visiting a Fuhu Property, you agree that all matters relating to your access to or use of the Site, products or services sold or distributed by or through Fuhu, including all disputes, will be governed by the laws of the United States and by the laws of the State of California, without regard to principles of conflicts of laws.

(*Id.* ) Nowhere does Fuhu state that the TOU or its choice of law provision governs purchases of Fuhu products made from third parties or use of a nabi tablet and charger apart from access to the website.

Plaintiff attempts to evade these facts by suggesting that the TOU is "incorporated into the Nabi Terms of Service Agreement." (Mot. at 28:1.) But the nabi Terms of Service, which govern the establishment and use of on-line nabi accounts, merely advise consumers of various applicable polices: "Fuhu's Terms of Use [http://www.fuhu.com/en/terms_of_service.html] and Privacy Policy [http://www.fuhu.com/en/orivacy_policy.html] also apply to your use and your children's use of nabi." (Merrill Decl. Ex. 7.) The Terms of Service do not purport to expand the reach of the Fuhu TOU, which expressly applies to use of the Fuhu

website, to govern tablet warranties or purchases *not* from the website.

That use of a nabi tablet may require registration on a Fuhu website or involve downloading of applications does not change this analysis. In *Frenzel v. Aliphcom,* 2015 WL 4110811 (N.D. Cal. July 7, 2015), the court rejected a claim, similar to Plaintiff's here, that a choice of law provision in a website Terms of Use governed UCL, CLRA and FAL claims alleging that an electronic wristband fitness device did not provide the advertised battery life or accurately record sleep patterns, caloric consumption or movements. Although the choice of law provision applied to the "Terms of Use and any actions related thereto," and the plaintiff argued that the website and its applications reported battery data and maintained account and registration data, the court found that "this is not case where the claims at issue 'emanat[e] from the agreement or the legal relationships it creates.'" *Id.* at *8 (quoting *Nedlloyd,* 3 Cal. at 470). The same is true here: Plaintiff has not alleged that charging problems are related to use of the Fuhu website or applications.

## B.   California's "Governmental Interest" Test Requires the Application of the Law of Each Consumer's State of Purchase.

Where, as here, there is no an applicable choice of law provision, California courts analyze choice of law questions under the "governmental interest" test. The test first considers whether the "law in each potentially concerned state ... materially differs from the law of California." *Wash. Mut.*, 24 Cal. 4th at 919.  If it does, the court must next determine whether the other state has an interest "in having its own law applied," and finally, which state's interests would be "'more impaired' if its law were not applied." *Id.* at 920; *Mazza v. Am. Honda Motor Co*., 666 F. 3d 581, 590 (9th Cir. 2012). As in *Mazza,* Plaintiff's claims cannot be certified because "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza,* 666 F.3d at 594; *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 545-49 (C.D. Cal. 2012) (same for express warranty).

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

1.     **Different States' Laws Vary in Material Ways.**

*Consumer Protection Statutes*. State consumer protection laws vary in material ways, including the applicable statutes of limitations; requirements of scienter, reliance and causation; the availability of class actions; and the availability of damages, statutory penalties, and punitive damages. *See, e.g.*, *Gianino v. Alacer*, 2012 U.S. Dist. LEXIS 32261, at *6-7, *11-12 (C.D. Cal. Feb. 27, 2012); *Mazza*, 666 F.3d at 590-91; *In re Hitachi Television Optical Block Cases*, 2011 WL 9403, at *6 (S.D. Cal. Jan. 3, 2011); *In re St. Jude Med., Inc*., 425 F.3d 1116, 1120 (8th Cir. 2005); *Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th  Cir. 2012). Those differences are set forth in Appendix A.

*Express Warranty Claims*. States' express warranty laws vary in regard to reliance, pre-suit notification, and privity. *See Keegan*, 284 F.R.D. 545-49 (material differences in New York, California, and North Carolina warranty laws); *Rikos v. Procter & Gamble Co.*, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) (rejecting nationwide class under California choice of law rules because of differences in warranty laws). Those differences are set forth in Appendix B.

2.     **Each State Has a Strong Interest in Applying Its Laws.**

Since the conflicts here are material (*see* Appendices A and B) the court must "determine what interest, if any, each state has in having its own law applied to the case." *Wash. Mut.*, 24 Cal. 4th at 920. "[E]every state has an interest in having its law applied to its resident claimants." *Mazza,* 666 F.3d at 591-92 (quoting *Zinser,* 253 F.3d at 1187); *see also Lewallen v. Medtronic*, 2002 WL 31300899, at *5 (N.D. Cal. Aug. 28, 2002) ("each of the fifty states may have an interest in seeing that its law is applied in an action involving one of its own injured citizens").  Moreover, consumer protection laws reflect important policy judgments by each state about the conduct permitted within its borders, and each state has a strong interest in applying its own consumer protection laws to the transactions that take place within its borders—even if another state's law might be more favorable to consumers.

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

*Mazza*, 666 F.3d at 591-92. Because state policy makers seek to balance protecting consumers and attracting businesses, "[e]ach state has an interest in setting the appropriate level of liability for companies conducting business within its territory," and it is error to discount "each state's valid interest in shielding out-of-state businesses from what the state may consider to be excessive litigation." *Id.* at 592 (citing *McCann v. Foster Wheeler LLC,* 48 Cal. 4th 68, 91 (2010)).

### 3.   **Other States' Interests Would Be Impaired.**

The last prong requires the court to determine "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Mazza*, 666 F.3d at 590 (quoting *McCann,* 48 Cal. 4th at 81-82); *see also Offshore Rental Co. v. Cont'l Oil Co*., 22 Cal. 3d 157, 164-65 (1978). Courts must "decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *McCann,* 48 Cal. 4th at 97.

California recognizes that in regulating conduct, "the place of the wrong has the predominant interest." *Mazza,* 666 F.3d at 593 (citing *Hernandez v. Burger,* 102 Cal. App. 3d 795, 802 (1980); *Abogados v. AT&T, Inc.,* 223 F.3d 932, 935 (9th Cir. 2000). The "place of the wrong" is the state where the last event necessary to make the actor liable took place. *Mazza,* 666 F.3d at 593. Here, that is where a class member purchased a tablet. *See Horvath v. LG Elecs. MobileComm USA, Inc.*, 2012 U.S. Dist. LEXIS 19215, at *10-11 (S.D. Cal. Feb. 13, 2012) (in case alleging that manufacturing and design defects made phones unmerchantable, place of the wrong was the state where the phone was purchased); *McCann,* 48 Cal. 4th at 94 n.12 (the geographic location of an omission is the place of the transaction where it should have been disclosed). Thus the consumer protection and warranty laws of individual class members' states govern their claims. And since many elements of those claims vary materially among the states, common questions of law and fact will not predominate.

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

## III.   COMMON ISSUES WILL NOT PREDOMINATE.

Even apart from the choice of law, Plaintiff does not, and cannot, show that Rule 23(b)(3)'s predominance requirement is satisfied. The essential question is whether issues "subject to generalized proof ... predominate over those issues that are subject only to individualized proof." *Williams v. Oberon Media, Inc.,* 2010 WL 8453723, at *7 (C.D. Cal. April 19, 2010). Common issues predominate only when they constitute such a significant portion of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Antoninetti v. Chipotle Mexican Grill, Inc.,* 2012 WL 3762440, at *5-6 (S.D. Cal. Aug. 28, 2012). "[I]f a class action 'will splinter into individual trials,' common questions do not predominate and litigation of the action in the class format is in appropriate." *Akkerman v. Mecta Corp.,* 152 Cal. App. 4th 1094, 1102 (2007)(internal citations and references omitted).

### A.   Plaintiff's Warranty Claims Cannot be Certified.

To determine which aspects of the case are common, the Court must review each element of Plaintiff's causes of action and the facts necessary to litigate those elements. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"). Plaintiff's warranty claims will require individualized proof that, among other things: (1) the class member's product malfunctioned, (2) during the warranty period, (3) notice was provided to Fuhu of the malfunction, (4) Fuhu failed to remedy it—and for the implied warranty claim, that (5) the malfunction was "sufficiently serious" to render the product "unfit for its ordinary purpose, and (6) the class member is in privity (*i.e*., bought directly from Fuhu).[16]

---

[16] Vertical privity is a necessary element of an implied warranty claim. *See In re Sony*, 758 F. Supp. 2d 1077, 1100 ( S.D. Cal. 2010)(plaintiff must allege vertical privity for all putative class members to survive a motion to dismiss); *see also All West Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (1998). Here, all

1    Hence, class members must be able to show that a malfunction occurred

2    within the first year after purchase.[17] And to make out a claim for breach of implied

3    warranty, malfunction alone is not enough. A plaintiff must establish that the

4    product "did not possess even the most basic degree of fitness for ordinary use."

5    *Mocek v. Alfa Leisure, Inc.,* 114 Cal. App. 4th 402, 406 (2003); *see also Hovsepian*

6    *v. Apple Inc.*, 2009 WL 2591445, at *6 (N.D. Cal. Aug. 21, 2009)(same).

7    Under California law, then, consumers whose chargers functioned through

8    the end of the warranty have no claim as a matter of law. *Wilson v. Hewlett-*

9    *Packard Co*., 668 F.3d 1136, 1141 (9th Cir. 2012) ("manufacturer's duty to

10   consumers is limited to its warranty obligations absent either an affirmative

11   representation or a safety issue");[18]*Daugherty v. Am. Honda*, 144 Cal. App. 4th 824

12   (2006) (rejecting claims for post-warranty malfunctions because the "only

13   expectation buyers could have had about the F22 engine was that it would function

14   properly for the length of Honda's express warranty"); *Bardin v. DaimlerChrysler*,

15   136 Cal. App. 4th 1255 (2006) (same). That is because, "[a]bsent a manufacturer

16   representation as to the life span of the part in question, ... the only expectation that

17   a purchaser could have had was that the product would function properly for the

---

18   members of the Warranty Subclass purchased their tablets directly from third-party
19   retailers. (Second Amended Complaint ("SAC") (Dkt. # 50) ¶ 83.)
     [17] Fuhu's express warranty has a one-year limit. (Merrill Decl. Ex. 8 (Limited
20   Warranty) (limiting warranty to one year and stating that "no warranty is provided
     for the specifications for any other components or for any performance that can
21   degrade naturally with normal use for one year.").) Under California law, an
     implied warranty of merchantability is coextensive in duration with an express
22   warranty, to a maximum of one year. Cal. Civ. Code § 1791.1(c).
     [18] The "safety" exception, established by *Daugherty v. Am. Honda Motor Co.,*144
23   Cal. App. 4th 824 (2006), exists to protect unwary consumers who could face a
     serious risk of injury from using a product; the mere possibility of some purported
24   "hazard" is not enough to create a duty of disclosure. *See Eisen v. Porsche*, 2012
     WL 841019, at *1 (C.D. Cal. Feb. 22, 2012) (engine defect that could leave drivers
25   stranded on the road, "susceptible to being hit by another vehicle," was too
     speculative to constitute a safety concern as a matter of law).

26

27

28

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

duration of the manufacturer's express warranty." *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007). Thus, *when* a class member's charger malfunctioned (if at all) is as crucial a component of the claim as *whether* the charger malfunctioned—and an issue that will require individualized proof.

Plaintiff asserts that it does not matter that the vast majority of nabi chargers operated effectively for years—relying primarily on *Wolin v. Jaguar Land Rover N. Am., LLC,* in which the court held that "proof of the manifestation of a defect is not a prerequisite to class certification." 617 F.3d 1168, 1173 (9th Cir 2010). However, in *Wolin,* the alleged defect (the wheel assembly) caused excessive tire wear on all vehicles from the first day of operation. Here there is no such certainty of loss – only a risk. Moreover, the Ninth Circuit has emphasized that in *Wolin* it "did not adopt a per se rule requiring class certification of defect claims." *Baker v. Microsoft Corp.*, 2015 U.S. App. LEXIS 12883 (9th Cir. July 20, 2015). And while *Wolin* addressed federal *procedural* law, it did *not* address substantive California warranty law. *See Torres v. Nissan N. Am., Inc.,*2015 U.S. Dist. LEXIS 120381, at *12 (C.D. Cal. Sept. 1, 2015) (noting that claims in *Wolin* were brought under Michigan and Florida consumer protection laws and that "plaintiff's burden to prove that common issues predominate is inextricably linked with the substantive law that governs the underlying claims alleged.") Confronted with circumstances very similar to those here, the *Torres* court held that *Wolin* must be modified by California warranty law "requiring proof that a defect is 'substantially certain to manifest in malfunction during the useful life of the product.'" *Id.* (quoting *Am. Honda*, 199 Cal. App. 4th 1367, 1376 (2011)).[19] In other words, even if classwide manifestation of a defect is not always necessary for certification under Rule 23, to prove a warranty claim under California law a plaintiff must establish that it is substantially certain that the

---

[19] *See also Hicks,* 89 Cal. App. 4th at 923 (homeowners whose foundations had not "*already* cracked or split" must show that "their foundations contain an inherent defect which is substantially certain to result in malfunction" to establish a breach.).

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

defect *will* manifest (and as discussed above, the claims are barred entirely if the warranty has expired with no malfunction). Because the plaintiffs in *Torres* offered evidence that only 200 owners out of thousands had complained about the performance of the vehicle at issue, the court found that "Plaintiffs have failed to provide evidence that all class members are substantially certain to experience a malfunction from the alleged defect," and therefore individual issues would predominate.[20] *Id.* at *13-14.

So too here. ████████████████████████████████

████████████████████████████████████████████

████ On these facts, Plaintiff cannot possibly establish to a "substantial certainty" that all putative class members' chargers will fail or malfunction. In fact, the evidence powerfully suggests the opposite.

Plaintiff's warranty claims are not certifiable under Rule 23(b)(3) for a another reason as well: Whether Fuhu breached its warranty does not turn on malfunction alone. Instead, the Court must also consider whether Fuhu honored its one-year warranty by "refund[ing] the purchase price, or repair[ing] or replac[ing] the product, using new or refurbished components within a reasonable time during the warranty period." (Merrill Decl. Ex. 8.)[21] Plaintiff has offered no evidence indicating that he can establish a systemic or classwide breach of the nabi express warranty, and the evidence—thousands of customers who received warranty service and declarations from nabi customers who received exactly the replacements and repairs they requested[22]—demonstrates that such a showing cannot be made. Hence Plaintiff's warranty claims will necessarily require individualized facts.

---

[20] None of the district court cases Plaintiff cites as applying *Wolin* addresses California warranty claims. *Guido v. L'Oreal*, 2013 WL 3353857, at *5 (C.D. Cal. July 1, 2013) addresses *Wolin* on typicality. Neither of the other two cases addresses the requirements of California warranty claims. *See Banks v. Nissan*, 301 F.R.D. 327 (N.D. Cal. 2013); *Tait v. BSH*, 289 F.R.D. 466 (C.D. Cal. 2012).

[21] *See also* Cal. Civ. Code § 1793.2(d)(1).

[22] *See* Gist Decl. Ex. 5; Declarations of M. Covert, K. Edmonson, E. Ehman, S. Larsen, and B. Nathan.

## B.     Plaintiff's Fraud Claims Cannot be Certified.

Like Plaintiff's warranty claims, his statutory and common law fraud claims cannot be adjudicated on a classwide basis. Each requires Plaintiff to prove that the entire class was exposed to a deceptive claim or actionable omission about the nabi chargers, that there is some causal link between the representation or omission and their alleged harm, and that class members suffered an injury due to their purchases.

The CLRA, for example, "requires that plaintiffs ... show not only that a defendant's conduct was deceptive but that the deception caused them harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th at 129. In some cases, causation and reliance may be established on a classwide basis if the court finds that a misrepresentation or omission is material. *Id.* "[H]owever, if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *Id.* (citing *Caro v. Proctor & Gamble Co.,* 18 Cal. App. 4th 644, 668 (1993)).

And while the California Supreme Court held in *Tobacco II* that relief under the UCL and FAL can be available for absent class members "without individualized proof of deception, reliance and injury," *Tobacco II,* 46 Cal. 4th 298, 320 (2009), the UCL and FAL still require that absent class members have standing—that is, an "injury in fact" resulting from the defendant's alleged misconduct. *Mazza*, 666 F.3d at 594 ("no class may be certified that contains members lacking Article III standing"); *Minkler v. Kramer Labs*., 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013) (class of "all" buyers rejected because "the Class will include members who derived benefit from [the product] and are satisfied users of the product.... '[s]uch members have no injury and no standing to sue'" (citation omitted)).[23] As courts have repeatedly clarified in the wake of

---

[23] *See also, e.g., O'Shea v. Epson Am, Inc.*, 2011 WL 4352458, at *8-10 (C.D. Cal. Sept. 19, 2011) (denying class certification and holding that absent class members must have Article III standing to bring a UCL claim); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011) (a class action under the UCL and FALL cannot "proceed" "where class members lack Article III standing").

*Tobacco II,* "factual questions of reliance by class members on allegedly false representation[s] remain[ ] a proper criterion for trial court consideration when examining commonality." *Tucker v. Pacific Bell,* 208 Cal. App. 4th 201, 227 (2012). An inference of reliance (which Plaintiff seeks to apply here) is <u>not</u> proper in every case. "A presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'" *Mazza,* 666 F.3d at 596 (citing *Stearns v. Ticketmasters,* 655 F.3d 1013, 1020 (9th Cir. 2011)); *Davis-Miller v. Automobile Club,* 201 Cal. App. 4th 106, 125 (2011) ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class."). Where an inference of classwide reliance and injury is not proper, courts refuse certification of FAL and UCL classes. *See Mazza,* 666 F.3d at 596; *Pfizer v. Super. Crt.,* 182 Cal. App. 4th 622, 632-33 (2010).

## 1.   **Injury is an Individualized Inquiry.**

Given the facts of this case, Plaintiff cannot rely on generalized proof of injury. Most purchasers of the nabi tablets suffered no charger malfunction and of those who did, many received replacement chargers. Consumers who purchase a product with an allegedly undisclosed risk that never manifests have *not* been injured because they reaped the benefits for which they paid. *See, e.g., Hicks v. Kaufman & Broad*, 89 Cal. App. 4th 908, 923 (2001) ("Cars and tires have a limited useful life. . . .  If the defect has not manifested itself in that time span, the buyer has received what he bargained for."); *Hovsepian,* 2009 U.S. Dist. LEXIS 117562, at *8 (rejecting class that includes members "who have not experienced any problems with their [allegedly defective] iMac display screens. Such members have no injury and no standing to sue.")

Plaintiff fails to identify any evidence by which he might establish that *all* class members' tablets are devalued by an alleged but unmanifested defect: Plaintiff offers no proof of a resale market for nabi tablets that would be impacted by a

known defect. Nor has he attempted to establish the expected lifespan of a nabi tablet in order to show that a charger defect that has not manifested after years of satisfactory use may nevertheless shorten the lifespan (and decrease the value) of the tablet. Similarly, Plaintiff has not shown, or even suggested, that *no* consumers would have purchased a nabi had they known of the alleged risk of "defect."

Instead, Plaintiff argues that all users suffered an economic injury because "the tablets were worth less than the prices at which Fuhu sold them because of the undisclosed charging system defects and safety risks." (Mot. at 32:15-17.) In effect, Plaintiff seeks to apply a "fraud on the market" theory of injury, contending that the price of nabi tablets was inflated and would have been lower had Fuhu disclosed the "defect." This sort of "price inflation" theory derives from securities cases involving stock exchanged in an efficient market that, theoretically, immediately adjusts to new information. *See In re Pom Wonderful,* 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014). The theory assumes—as Plaintiff claims here—that every consumer was similarly damaged, regardless of satisfaction with the product or motivations behind the purchase. *Id.* at *4. But California has rejected that theory even in the securities context where it originated. *Mirkin*, 5 Cal. 4th at 1108. And because "the market for consumer goods . . . is anything but efficient," courts have found that the "fraud on the market" theory is inapplicable in consumer class actions.[24] "In an inefficient market . . . some information is not reflected in the price of an item. . . . In such a market, even a material misrepresentation might not necessarily have any effect on prices." *In re Pom Wonderful,* 2014 WL 1225184 at *4 (internal citation omitted) (rejecting fraud on the market theory where defendants allegedly misrepresented health benefits of juice products).[25]

---

[24] *McLaughlin v. Am. Tobacco*, 522 F.3d 215, 224 (2d Cir. 2008), *abrogated in part by Bridge v. Phoenix*, 553 U.S. 639 (2008).

[25] *See International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1088 (N.J. 2007) ("To the extent that plaintiff intends to rely on a single expert to establish a price effect in place of a demonstration of an ascertainable loss or in place of proof of a causal nexus

1    Plaintiff offers no support whatsoever for his assumption that a purported

2    "fraud on the market"—that is, undisclosed defects in the nabi charging systems –

3    suffices as evidence of a classwide injury. As an initial matter, neither Plaintiff nor

4    his experts attempt to show that the market for electronic products for children is

5    efficient. *See Smilovits v. First Solar,* 295 F.R.D. 423, 429 (D. Ariz. 2013) ("Courts

6    ... require class plaintiffs to prove market efficiency at the class certification

7    stage.") (citing cases); *see also Binder v. Gillespie,* 184 F.3d 1059, 1064-65 (9th

8    Cir. 1999) (affirming decertification of class where there was insufficient proof of

9    an efficient market). And Plaintiff's experts simply ***assume*** that the market price of

10   nabi tablets has never reflected awareness of charging problems, even though

11   information was posted by Fuhu on Facebook as early as December 2011 (Lee

12   Decl. Ex.7) and is available in customer reviews on sites such as Amazon.com.

13   (Merrill Decl. Ex. 9.) In other words, Plaintiff's theory of injury assumes, at one

14   and the same time, that the market price did ***not*** respond to Fuhu's disclosures on

15   Facebook and consumer postings elsewhere, but ***would*** have responded to some

16   other (undefined) disclosure by Fuhu. (*See* Ugone Decl. ¶ 84.)

17   Ultimately, Plaintiff's theory presumes what it is Plaintiff's burden to

18   establish: that injury can be ascertained on a classwide basis. It simply

19   homogenizes, when it does not distort, class members' experiences. Regardless of

20   the "average" diminution of value Plaintiff's expert, Dr. J. Michael Dennis,

21   proposes to calculate,[26] ███████████████████████████

22   █████████████████████████████████████████████

23   ████████████████████████ Others experienced charging problems that were

24   corrected when Fuhu supplied a replacement charger or tablet.[27] And still others

25   _____

26   between defendant's acts and the claimed damages . . . , plaintiff's proofs would
     fail. That proof theory would indeed be the equivalent of fraud on the market, a
     theory we have not extended to CFA claims.").

27   [26] Decl. of J. Michael Dennis ("Dennis Decl.") (Dkt. # 76).

28   [27] Courts have rejected classes that do "not exclude persons who already have
     received refunds or replacement parts or who have not suffered any damages at

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

would have bought a nabi at the price they actually paid, with full knowledge of the risk of charging problems, because they desired nabi applications or parental controls not available elsewhere. As economist Dr. Keith Ugone explains, from an economic perspective those consumers have suffered no injury of any kind.  (Ugone Decl. 93-96.) Determining which customers (if any) do have an injury will require individual assessments, which will swamp common issues.

### 2.   **Plaintiff Cannot Establish Deception, Reliance or Materiality on a Classwide Basis.**

Plaintiff contends that "the common question of whether Defendants' misrepresentations were deceptive to a reasonable consumer predominates over any individualized issue of reliance that Defendants may raise." (Mot. at 30:13-16.)  But as noted above, a presumption of classwide reliance is not permitted under the CLRA where the issues of materiality and reliance would "vary from consumer to consumer." *In re Vioxx,* 180 Cal. App. 4th at 129. And such a presumption is improper under the UCL and FAL as well "where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class," *Davis-Miller,* 201 Cal. App. 4th at 125.

Plaintiff alleges that Fuhu misrepresented that the nabi tablets were "rechargeable" and were "made for kids;" he further alleges that Fuhu failed to disclose that the nabi charging systems did not reliably recharge the tablets, were unsuitable for use by children and created safety hazards. (SAC ¶¶ 101, 119, 148(a), (b).) But Plaintiff never actually identifies the alleged "misrepresentations" and he cannot show that Defendants had any duty to disclose the charger malfunctions. He thus fails to carry his burden of showing how he will establish

---

all." *Stearns v. Select Comfort*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010); *see also Algarin v. Maybelline*, 300 F.R.D. 444, 455 (S.D. Cal. 2014) (rejecting class that "does not exclude purchasers who have already received refunds ... As the UCL only permits recovery or restitution/disgorgement, for purchasers who have already received refunds, they have already been compensated well over any potential disgorgement. These purchasers have no claims.")

classwide exposure and materiality warranting a presumption of reliance. *See Berger v. Home Depot,* 741 F.3d 1061 (9th Cir. 2014) (plaintiff failed to show the entire class was exposed to the alleged misrepresentation).

> a.   **No Evidence of Uniform Material Misrepresentations.**

While Plaintiff maintains that he can provide classwide proof of material misrepresentations, he nowhere identifies even one such allegedly false advertisement that class members purportedly relied on in purchasing nabi tablets. (*See, e.g.,* SAC ¶ 22.) Plaintiff alludes vaguely to Fuhu's marketing the tablets for children, but offers no evidence that Fuhu ever represented that the chargers—as opposed to the tablets themselves—could or should be used by children. In fact, the entire nabi system expressly assumes some adult supervision. (Merrill Decl. Ex. 6.) Plaintiff himself distinguished between the tablet, which he routinely sent home with his grandson, and the charging system, which he did not permit the child to use because he understood (like most consumers) that small children should not be allowed to plug in electrical devices. (Miller Dep. at 49:5-10.)

Not only does Plaintiff fail to show that all class members were *exposed* to the same information about the nabi charging systems, he likewise fails to address how he will establish the *materiality* of the alleged "misrepresentations" when charging problems occurred with different nabi models at vastly different rates. (*See* Gist Decl. Ex. 5.) Many of those rates are so low that no reasonable consumer could possibly contend that they would have impacted their purchase decision— particularly where, as here, Fuhu fixed the problems that did arise. (*See id.*) Yet Plaintiff does not even attempt to distinguish this case from those where materiality and reliance would "vary from consumer to consumer" due to individual consumer needs and preferences, precluding common proof and class certification. *See In re Vioxx,* 180 Cal. App. 4th at 129. The alleged defect here is a *risk* of malfunction. Such a risk, and the possibility of needing a replacement charger, may be insignificant to one consumer, yet important to another.

1   In sum, Plaintiff has failed to demonstrate that the record permits a class-
2   wide inference of reliance. *Tucker v. Pac. Bell Mobile Servs.,* 208 Cal. App. 4th
3   201, 228 (2012) ("The rule permitting an inference of common reliance where
4   material misstatements have been made to a class of plaintiffs will not arise where
5   the record will not permit it.") In the circumstances of this case, deception,
6   materiality and reliance will all require individualized inquiries, defeating
7   certification of Plaintiff's fraud claims under Rule 23(b).

8                    b.   **Plaintiff Offers No Evidence that Fuhu Had a Duty to**
9                         **Disclose.**

10   In addition to affirmative misrepresentations, Plaintiff alleges that Fuhu
11   failed to disclose certain product defects to consumers—specifically, that the nabi
12   charging systems did not reliably recharge the tablets, were unsuitable for use by
13   children and created safety hazards. (SAC ¶¶ 101, 119, 148(a), (b).). But Plaintiff
14   fails to adduce any evidence suggesting that Fuhu had a duty to disclose.

15   As the Ninth Circuit has explained, "California courts have generally rejected
16   a broad obligation to disclose, adopting instead the standard as enumerated by the
17   California Court of Appeal in *Daugherty* …." *Wilson,*, 668 F.3d at 1141.
18   *Daugherty* held a manufacturer is not liable for a fraudulent omission concerning a
19   latent defect under the CLRA, unless the omission is "contrary to a representation
20   actually made by the defendant, or an omission of a fact the defendant was obliged
21   to disclose." *Daugherty*, 144 Cal. App. 4th at 835. As the Ninth Circuit noted in
22   *Wilson*, "California federal courts have generally interpreted *Daugherty* as holding
23   that '[a] manufacturer's duty to consumers is limited to its warranty obligations
24   absent either an affirmative misrepresentation or a safety issue.'" *Wilson,* 668 F.3d
25   at 1141(quoting *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir.
26   2009)); *see also Morgan v. Harmonix*, 2009 U.S. Dist. LEXIS 57528, at *11-12
27   (N.D. Cal. July 7, 2009) ("According to all relevant case law, defendants are only
28   under a duty to disclose a known defect in a consumer product when there are

DEF. OPP. TO MOT. FOR CLASS CERT.
                                         14-CV-6119 CAS (ASX)

safety concerns associated with the product's use.").[28]

Here, the vast majority of charging problems described by Plaintiff (including his own) presented no risk of injury. While Plaintiff does allege that nabi charging systems created "safety" hazards, ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ To be sure, Mr. Fujioka made much of this reported episode when exhorting his suppliers to improve the quality of the chargers. (*See id.* Ex. 5.) ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ Thus Plaintiff cannot establish a classwide presumption of reliance based on an omission.

### C. No Credible Method of Measuring Classwide Damages.

A plaintiff seeking Rule 23(b)(3) certification must produce evidence of a measure of damages both that can be applied classwide *and* that ties the plaintiff's legal theory to the impact of the defendant's alleged conduct. *See Forrand v. Federal Express,* 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013). Plaintiff's proposed damages methods fail to carry this burden.

---

[28] *Rutledge v. Hewlett-Packard Co.,* 238 Cal. App. 4th 1164 (2015), currently on petition for review by the California Supreme Court, does not alter this analysis. *Rutledge* questions whether *material* defects (not only unreasonable safety hazards) give rise to a duty to disclose. But as discussed above, materiality cannot be presumed here. Even if this Court were to find that *Rutledge* conflicts with *Daugherty,* the Court can and should follow *Daugherty.* In diversity cases, the federal court's duty is to "ascertain and apply the existing California law." *Carvalho v. Equifax*, 629 F.3d 876, 889 (9th Cir. 2010).) California trial courts must choose which decision to follow if two Court of Appeal decisions conflict. *See Auto Equity v. Superior Court*, 57 Cal. 2d 450, 456 (1962).

While Plaintiff's CLRA and common law fraud claim permit actual damages, the UCL and FAL only permit restitution. *See In re Vioxx,* 180 Cal. App. 4th at 131; Cal. Bus. & Prof. Code § 17203; Cal. Bus. & Prof. Code § 17535. Restitution may be measured as "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *In re Vioxx,* 180 Cal. App. 4th at 131. Similarly, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Cal Comm. Code 2714(2).

Plaintiff's damages expert proposes to measure classwide damages through either a "Full Refund" model, which would restore the entire price a class member paid for a nabi tablet, or a "Diminution in Value" model, which purports to measure the difference between "what customers had originally bargained for" and "what they got." (*See* Decl. of Lee L. Selwyn ("Selwyn Decl.") (Dkt. # 86) ¶¶ 13, 19.) Plainly, the "Full Refund" model is inapplicable here, where Plaintiff cannot show that the entire class received no benefit all from the nabi tablets. "Restitution based on a full refund would only be appropriate if not a single class member received any benefit from the products." *Caldera v. J.M. Smucker Co.,* 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) ; *see also In re Pom Wonderful LLC,* 2014 WL 1225184, at *3 & n.2 ("[T]he Full Refund model depends upon the assumption that not a single consumer received a single benefit . . . from Defendant's juices.").

Dr. Selwyn's "Diminution in Value" method is likewise inadequate, for reasons detailed in Fuhu's *Daubert* challenges. And even if the method were capable of measuring such a discount, it would not capture *classwide* damages because most nabi tablets functioned entirely as intended and many consumers whose tablets did malfunction received replacement chargers from Fuhu at no cost.

Dr. Dennis' proposed survey (which he has not actually performed) cannot measure class members' "valuation" of the nabi tablets because it ignores consumers' actual purchasing decisions. (Hauser Decl. ¶¶ 22, 28, 42-44.) That

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

precise failing is what has led other courts to reject the approach.  *See Cannon v. BP*, 2013 U.S. Dist. LEXIS 142934, at *37-38 (S.D. Tex. Sept. 30, 2013) (rejecting CVM analysis of property values because it was not a reliable method to establish class-wide damages, noting in part that "[C]ontingent valuation analysis is a survey-technique that attempts to value things that do not typically have a market price.") Here, the proposed survey does not take account of either differences between the various nabi tablets (which generated sharply different rates of complaint and requests for replacement) or differences among consumers, many of whom would still have purchased their nabi (at the original price) even knowing of the charger difficulties some consumers have experienced.[29] *See Caldera,* 2014 WL 1477400 at *4 ("In reality, the true value of the products to consumers likely varies depending on the individual consumer's [sic] motivation for purchasing the products at issue"). Nor does it consider actual market considerations, such as the available alternative tablets or their prices (which may themselves have a history of charger difficulties). And it ignores whether the "market" price *already* reflects consumer awareness of the "defect"– *e.g*., from reading Amazon.com reviews.

Even if Dr. Dennis's method could adequately calculate a discounted price for a nabi tablet with a risk of charger malfunction, it would still fail to offer an appropriate measure of *classwide* damages, because it assumes all class members are entitled to restitution in the amount of the discount. But, again, those consumers who received a nabi tablet that functioned for the entire life of the warranty or who received a free replacement tablet or charger have no injury and no possible claim under any legal theory. *See. e.g., Pfizer v. Super. Crt.*, 182 Cal. App. 4th 622, 629-630 (2010) (one who could not possibly have lost money or property as a result of practices prohibited by the UCL is not entitled to restitution)**.**

Ultimately, Plaintiff's damages models cannot establish predominance of

---

[29] Ugone Decl. ¶ 52-55, 95; Decl. of John R. Hauser ("Hauser Decl."), attached to Merrill Decl. as Ex. 10, ¶¶ 37, 42-44.

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

common issues for same reasons that common issues of law and fact do not predominate as to liability: Plaintiff's claims are based on multiple products that share no common defect or history of malfunction and his class encompasses consumers with widely varying product experiences.[30]

## IV.   PLAINTIFF'S UNCONSCIONABILITY CLAIMS ARE NOT SUITABLE FOR CLASSWIDE RESOLUTION

Plaintiff brings both a CLRA claim and a request for declaratory judgment, alleging that the arbitration clause in the TOU is unconscionable as to class members who purchased nabi tablets prior to September 24, 2014. But as detailed above in Section II.A, the TOU applies only to disputes arising from use of and purchases through the Fuhu website – *not* to the "defect" claims in this case.

The CLRA requires proof not only of a deceptive trade practice but of actual harm resulting from that practice. *See In re Vioxx,* 180 Cal. App. 4th at 129. However, the new clause impacts only those users who were still using their tablets as of September 24, 2015, and had pre-existing claims against Fuhu related to use of its website that the user would have to agree to arbitrate to receive software updates. It is unclear whether any such class members even exist, and Plaintiff offers no means of determining who those class members are. Most of the proposed class likely did not suffer harm from the TOU addition and cannot properly bring

---

[30] *Pulaski & Middleman v. Google Inc.*, 2015 U.S. App. LEXIS 16723 (9th Cir. Sept. 21, 2015) does not alter this result.  As in *Kwikset v. Super. Ct.*, 51 Cal. 4th 310 (2011)—on which *Pulaski* relies—in *Pulaski* there was a specific representation accompanying each sale that was false, and all customers were injured because ads were not all placed on more-valuable websites as had been promised.  The facts here are quite different.  Fuhu never told consumers (much less all consumers in a standard representation) that chargers would never fail. To the contrary, Fuhu's warranty states—both explicitly and implicitly by its very existence—that malfunctions could occur. As Judge Paez says in *Pulaski* (quoting *Stearns v. Ticketmaster*, 655 F.3d 1013, 1020 (9th Cir. 2011), an injury occurs where a defendant "puts out tainted bait and a person sees it and bites …."  *Pulaski*, 2015 U.S. App. LEXIS at *13. Here, Fuhu didn't put out "bait" about the power supplies: there was no representation that chargers would never fail, and Fuhu replaced the small minority of chargers that did break. Also, since most nabi chargers operated as intended, Plaintiff cannot show his damages model matches his theory of liability, as required under *Comcast v. Behrend,* 133 S. Ct. 1426 (2013).

1  suit for declaratory judgment[31] or receive restitution or damages under the CLRA.

2  **V.    PLAINTIFF FAILS TO ESTABLISH TYPICALITY OR ADEQUACY.**

3        Finally, Plaintiff also fails to establish that his claims and defenses are

4  "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), and that he

5  will "fairly and adequately protect the interests of the class," Fed. R. Civ. P.

6  23(a)(4). The typicality requirement assures that the interest of the named

7  representative aligns with the interests of the class. *See Ellis v. Costco*, 657 F.3d

8  970, 984-85 (9th Cir. 2011). Plaintiff cannot establish typicality here because he

9  lacks an express warranty claim, having never requested a repair or replacement

10 during the warranty period. Plaintiff has also failed to establish that his claims,

11 which will be governed by Florida law, will be typical of the claims of the majority

12 (or even a sizable percentage) of the class he seeks to represent.

13       Nor can Plaintiff show that he is an adequate class representative. Courts

14 recognize that the credibility of the plaintiff bears on his ability to adequately

15 represent the class.  *See Savino v. Computer Credit, Inc*., 164 F.3d 81, 87 (2d Cir.

16 1998); *see also C.E. Design Ltd. v. King*, 637 F.3d 721, 726 (7th Cir. 2011).  Here,

17 Plaintiff's motivations and credibility in bringing suit must be questioned because

18 while his complaint alleges that Fuhu provides inadequate response to consumers

19 experiencing problems with nabi chargers, when asked to rate Fuhu's service in

20 October 2013, he reported that "Everything was received and is working properly."

21 (Gist Decl. ¶ 19 & Ex. 9.)  Moreover, Plaintiff admits that he has served as a named

22 plaintiff in at least two other class actions. (Miller Dep. at 11:16-19, 13:2-4.)

23                              **CONCLUSION**

24       For the reasons set forth above, Plaintiff's motion should be denied.

25

26

---

27 [31] The Declaratory Judgment Act, 28 U.S.C. § 2201, applies only to an "actual
28 controversy." *See Societe de Conditionnement en Aluminum v. Hunter Engineering Co*., 655 F.2d 938, 942-44 (9th Cir. Cal. 1981).

DEF. OPP. TO MOT. FOR CLASS CERT.
14-CV-6119 CAS (ASX)

1

Dated:  October 12, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O'MELVENY & MYERS LLP

By: _____
Richard B. Goetz
Attorneys for Defendants Fuhu Inc.
and Fuhu Holdings

- 36 -

1

## CERTIFICATE OF SERVICE BY EMAIL

2       I declare under penalty of perjury that on October 12, 2015, I caused the

3  foregoing document, **Defendants' Opposition to Plaintiff's Motion for Class**

4  **Certification**, to be served by email on the following counsel of record for Plaintiff

5  Scott Miller:

6

7            **GUTRIDE SAFIER LLP**
             Adam J. Gutride (adam@gutridesafier.com)

8           Seth A. Safier  (seth@gutridesafier.com)
             Todd Kennedy  (todd@gutridesafier.com)

9           Marie A. McCrary (marie@gutridesafier.com)
             100 Pine Street, Suite 1250

10         San Francisco, CA 94111

11

12  Executed on October 12, 2015 at Los Angeles, California .

13

14

15                            Richard B. Goetz

16

17

18

19

20

21

22

23

24

25

26

27

28