**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
TODD KENNEDY (State Bar No. 250267)
MARIE A. McCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiff Scott Miller

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SCOTT MILLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>FUHU, INC. and FUHU HOLDINGS, INC.,<br><br>    Defendants. | CASE NO. 14-cv-6119 CAS-AS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Assigned to Hon. Christina A. Snyder<br><br>Date:    November 16, 2015<br>Time:    10:00 a.m.<br>Place:   Ctrm 5, 2nd Floor |

<u>**REDACTED**</u>

1

# **TABLE OF CONTENTS**

2

3   TABLE OF AUTHORITIES ...................................................................ii

4   I.   INTRODUCTION .....................................................................1

5   II.  ARGUMENT ...........................................................................6

6        A.    Common Issues of Law and Fact Predominate....................6

7              1.    California Law Applies To All Class Claims.............6

8              2.    Immaterial Differences In Fuhu's Charging Systems or
                     Tablets Do Not Defeat Commonality. .......................8

9

10             3.    Proof of Manifestation of the Defect Is Not Required .............11

11             4.    Common Questions Predominate On Plainff's Warranty
                     Claims .......................................................................13

12             5.    Classwide Misrepresentations/Omissions Predominate. ...........15

13             6.    A Presumption of Reliance Applies to Plaintiff's Fraud
                     Based Claims ............................................................17

14

15             7.    Common Questions Predominate Over Any Individual
                     Damages Issues..........................................................20

16             8.    Plaintiff's Unconscionability Claim Is Common ......................24

17       B.    Plaintiff Meets The Typicality and Adequacy Requirements.............24

18   III. CONCLUSION .......................................................................25

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## **CASES**

*AIU Ins. Co. v. Acceptance Ins. Co.*, No. C 07-5491 PJH, 2010 WL 3893602 (N.D. Cal. Sept. 30, 2010)..................................................................24

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) ..............................14, 22

*Allen v. Similasan Corp.*, 306 F.R.D. 635 (S.D. Cal. 2015) ...............................14

*Am. Honda v. Superior Court,* 199 Cal. App. 4th 1367 (2011)............................12

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) .......................................14

*Baker v. Microsoft Corp.*, 797 F.3d 607 (9th Cir. 2015)..........................11, 13, 14

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975) .................................................11

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540, (C.D. Cal. 2012) ..................................8

*Cartwright v. Viking Indus., Inc.,* No. 2:07-CV-02159FCDEFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ....................................................11, 18

*Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365 (N.D. Cal. 2010)..............................................................................................................8, 17

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) .....................................13

*Dei Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ...................................................................11

*Doyle v. Chrysler Grp. LLC,* No. SACV 13-00620 JVS, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014) .....................................................................11

*Edwards v. Ford Motor Co.*, 603 F. App'x 538 (9th Cir. 2015)..................5, 13, 15

*Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908 (C.D. Cal. 2010) ..........................................................................................................19

*Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544 (2011) ..............................................................................................................16

*Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *2 (C.D. Cal. Apr. 9, 2014) ..........................................................7

*Guido v. L'Oreal, USA, Inc.,* No. CV 11-1067 CAS JCX, 2013 WL 3353857 (C.D. Cal. July 1, 2013)..........................................................................14

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ..........................16

*Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2014 WL 6603730 .......................................................................................................22

*Hensley-Maclean v. Safeway, Inc.*, No. CV 11-01230 RS, 2014 WL 1364906 (N.D. Cal. Apr. 7, 2014)........................................................................19

*In re Carrier IQ, Inc.*, No. C–12–md–2330, 78 F.Supp.3d 1051, 1105–06, 2015 WL 274054 (N.D.Cal. Jan. 21, 2015) ..............................15

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ................14, 22

*In re Ferrero Litigation*, 278 F.R.D. 552 (S.D.Cal.2011) ....................................17

*In re NJOY, Inc. Consumer Class Action Litig., No.* CV1400428MMMJEMX, 2015 WL 4881091 (C.D. Cal. Aug. 14, 2015) ............................................................................................................16

*In re POM Wonderful, LLC*, No. ML 10–02199 DDP (Rzx), 2014 WL 1225184, at *2-3 (C.D. Cal. Mar. 25, 2014) ....................................8, 22

*In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145 (2010) .....................22

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ......................................................20

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Products Liab. Litig.*, No. MDL 10-02172-CJC, 2012 WL 4904412 (C.D. Cal. Sept. 20, 2012) ..........................................................................23

*In re Vioxx Class Cases*, 180 Cal.App. 4th 116 (2009)........................................16

*Jimenez v. Allstate Insurance Co.*, 765 F.3d 1161 (9th Cir. 2014) ......................21

*Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) .............................................................................................................14

*Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330 (N.D. Cal. 2010) ................19

*Kowalsky v. Hewlett–Packard Co.*, 771 F.Supp.2d 1156 (N.D.Cal.2011) ...................................................................................................19

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011)................................20, 22

*Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321 (D. Conn. 2009).............25

*Levya v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir.2013) .........................21

*Marcotte v. Micros Sys., Inc.*, No. C 14-01372 LB, 2014 WL 4477349 (N.D. Cal. Sept. 11, 2014).............................................................................7

*Markewich v. Adikes*, 76 F.R.D. 68 (E.D.N.Y. 1977) ............................................25

*Masonite Corp. v. Pacific Gas & Electric Co.*, 65 Cal.App.3d 1 (1976)...............7

*Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482 (C.D.Cal.2006) .............................................................................................17

*Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) .....................................18

*Ortega v. Natural Balance, Inc.,* 300 F.R.D. 422 (C.D. Cal. 2014).....................21

*Parkinson v. Hyundai Mot. Am.*, 258 F.R.D. 580 (C.D. Cal. 2008).....................16

*Pulaski & Middleman, LLC v. Google, Inc.*, No. 12-16752, 2015 WL
   5515617 (9th Cir. Sept. 21, 2015) ..................................................5, 20, 21, 22

*Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992
   (N.D. Cal. Mar. 10, 2014) ..................................................................................13

*Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015) ......................18

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 529-31 (C.D. Cal. 2015) ..............22

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ............................20

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ..10, 13, 16

*Torres v. Nissan N. Am. Inc.*, No. CV1503251RGKFFMX, 2015 WL
   5170539 (C.D. Cal. Sept. 1, 2015) ..............................................................12, 13

*United States v. Washington*, 759 F.2d 1353, 1356–57 (9th Cir.1985) ................24

*Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724 LHK,
   2014 WL 7148923 (N.D. Cal. Dec.15, 2014) ..................................................22

*Wolin v. Jaguar Land Rover North America, LLC* ("*Wolin*"), 617 F.3d
   1168 (9th Cir. 2010) ..........................................................................................11

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D.Cal. 2011) ..................................7

*Yokoyama v. Midland National Life Insurance Co.*, 594 F.3d 1087 (9th
   Cir.2010)..............................................................................................................21

*Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL
   2221113 (N.D. Cal. June 7, 2011)......................................................................17

-iv-

# I.   INTRODUCTION

Having had nearly four months to oppose class certification, Fuhu devotes most of its brief to distorting the facts or simply manufacturing new ones. The lynchpin of its opposition is that the common defect to the Nabi charging systems, which it internally referred to as "tremendous," a "plague," an "epidemic," and "just a problem waiting to happen" (Dkt.# 85, pp. 1-5, 12, 14), only affected a small portion of its customers. It argues that only ███████████████████ called Fuhu to complain, that customers generally gave it high marks on Amazon, that "Plaintiff's own expert estimates that only 8% of nabi customers reported any form of charging issue, even after years of use," that the manifestation of the defect varied by tablet model, and that the defect at most affected ██████ of customers, because Fuhu supplied that number of replacement chargers and tablets from October 2012 to the present. Each of these arguments is demonstrably false. Many of them are based on declarations from employee witnesses whom Fuhu stipulated would appear for deposition before this reply was due, but whom it subsequently announced were unavailable for that entire period because they needed to attend business meetings.[1]

Fuhu last week revealed that there are now more than ████████████ ████████ who, according to its records, have complained to it about the charging system. *More* ███████████████████████████████████████████ ███████████████████████████. (Safier Supp. Decl. ¶ 17 and Ex. GGG.) ████████████████████████ complained means many more had the problem, for numerous reasons. (Roman Supp. Decl ¶¶ 40-77.) First, multiple studies show that only a small minority of consumers who suffer a loss will complain. Here, for example, many would have decided it is not worth the aggravation and others would have blamed themselves (or their children) for misuse rather than concluding that the

---

[1] Fuhu's violation of its written stipulation (Dkt.# 105), which this Court adopted in its order (Dkt.# 106), should cause the Court to disregard all of Fuhu's "evidence." Not only did it not produce the witnesses for deposition, but it failed even to produce the documents on which the witness relied. *See* Plaintiff's Evidentiary Objections To, and Request To Strike, the Declarations of Eric Gist and Lisa Lee, and Exhibits attached, and the Portions of Defendant's Opposition to Plaintiff's Motion For Class Certification Relying on the Declarations, filed herewith.

design was defective. These people would have stopped using the tablet or looked to buy a replacement charger rather than lodging a complaint. Second, as Fuhu's Rule 30(b)(6) witness wrote, the majority of customers who had a problem would not have contacted Fuhu but [redacted]

Fuhu also misleads the Court in arguing that the defect rate differs by model. In fact, Fuhu has *no way of knowing* the defect rate by model, because [redacted] At best, it knows that it gave out more free replacement chargers for the Nabi 2 than for other models, but that is largely because [redacted]

[2] Fuhu's senior executive, in fact, admitted the same. Jason Kuo wrote: "most [Fuhu] customers go back to retailer." (Safier Supp. Decl., Ex. DDD (DEF012855).)

██████████████████████████████████████████████████████████████

██████████████████████████████████████████  The reason that the defect rates are the

same, even though later versions and generations of the charging systems may be

"better" or "stronger" than earlier ones, is that *all* versions and generations share the

*same* design and manufacturing flaws: they all ignore important design principles

(such as how to minimize bending force on the charger tip), use weak materials, are

assembled with poor quality control, and are inappropriate for use by children of any

age. (Dkt.# 87 ¶¶ 221-227; Roman Supp. Decl. ¶¶ 34-43.)

Fuhu also attempts to spin its letters to suppliers, in which it admitted to the

defects, into a tale of award-winning customer service, claiming "it worked tirelessly

to improve [chargers] and to give customers replacement parts." (Dkt.# 128, p. 2.)

Nothing could be further from the truth. All of Fuhu's efforts have been dedicated to

saving it money, as evidenced not only by the letters themselves,[3] but also by its

refusal to adopt its executives' recommendation to replace or recall the chargers; its

continuing efforts to hide the availability of replacement chargers; its insistence on

using and reusing the same defective (sometimes used) chargers; and its refusal to

meaningfully change the charger design because a suggested fix—i.e., the 90 degree

"L" shaped connector—threatened its trademark look. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Fuhu continues to misdirect customers and to generate profits by selling replacement

chargers: as shown in this posting on its Facebook page from October 31, 2015:

**Roisin Ni Riain**:  My daughters [sic] tablet charger has given up and cannot

find receipt is there chance it can be replaced.

---

[3] Fuhu's letters to the suppliers almost universally show that Fuhu's main concern was not consumers, but how much the defect was costing *Fuhu*. *See, e.g.*, █████████████████

█████████████████████████████████████████████████████████████

1   **nabiL** Hello Roisin Ni Riain. If you're in need of a new charger, you'll find

2   exactly what you're looking for here, shop.nabitablet.com.

3   (Safier Supp. Decl. ¶ 18, Ex. BBB.)



15   Fuhu's citation to Amazon ratings is also pernicious. There is a tiny number of

16   total Amazon ratings in comparison to the number of purchases (about 0.05%), no

17   proof that the cited high ratings are real as opposed to the result of Fuhu-induced

18   "astroturfing," no evidence that the people who gave the reviews had their devices

19   for more than a few days when they posted the ratings, and in any event there are

20   almost as many one-star ratings as five-star ratings, with a repeated complaint being

21   charger malfunction. (Selwyn Supp. Decl. ¶¶ 24, 27, 31.) Even Fuhu's own Facebook

22   page is rife with hundreds of complaints about the chargers, with comments like

23   "After buying these for Christmas we always had problems with the charger now

24   reading this it all makes sense." (Safier Supp. Decl. ¶ 18, Ex. BBB.)

25   Fuhu similarly misrepresents Plaintiff's experience with his Nabi tablet. Fuhu

26   recites only Plaintiff's testimony about problems that arose during the first six

27   months of ownership and ignores how the problems got worse in the following

28   months and prevented normal use of the tablet. (Id., Ex. TT (Miller Trans. 110:24-

112:14; 125:23-127:22; 130:19-131:7; 132:22-133:1; 146:21-147:8).) It also ignores his testimony that he reported the problem *twice* during the warranty period and that Fuhu ignored him. (Id., 66:15-67:12; 88:9-16; 110:1-112:1:121:1-122:12.)

Fuhu finally submits "expert" opinions about possible differences among class members to advance legal arguments that are directly foreclosed by controlling authority from the Ninth Circuit. For example, it argues that there are individualized issues regarding which class members experienced the defect and to what extent, and thus there are individualized issues about who is entitled to a remedy and in what amount. But the Ninth Circuit just reiterated, in *Edwards v. Ford Motor Co*., 603 F. App'x 538, 540 (9th Cir. 2015), that a plaintiff need not prove at the certification stage that the defect has manifested for all, most or even many class members. It also held in *Pulaski & Middleman, LLC v. Google, Inc*., No. 12-16752, 2015 WL 5515617, at *5 (9th Cir. Sept. 21, 2015), that there is no such inquiry as "individualized entitlement to restitution," as relief is to be awarded to all class members without proof of individualized injury, if the defendant failed to disclose facts that would have been material to the reasonable consumer. *See id.* at *8. The amount of such restitution is equal to the loss in value that a *reasonable* consumer would attribute to the undisclosed material fact, which here can be proven with common evidence. Fuhu provides no evidence about how a reasonable consumer would have viewed or valued the undisclosed defect; its only evidence from customers are declarations of five class members, each of whom *experienced the identical defect* and merely attest that they got good customer service. That evidence is irrelevant, as Plaintiff need not prove that Fuhu provided poor warranty *support*, but only that it sold an unmerchantable product. Finally, Fuhu misrepresents the meaning of its Terms of Use agreement, in which it imposed California law on all claims regarding Fuhu's goods and services, not just claims about the Fuhu website, and to which it required all customers to agree in order to use their Nabi devices.

On balance, Fuhu's opposition does nothing to alter the fact that this case is

ideally suited for class certification. Unless a class is certified here, and Fuhu is enjoined from continuing to sell its defective tablets, it will continue to defraud consumers out of tens of millions of dollars each year.

## II.    ARGUMENT[4]

### A.    Common Issues of Law and Fact Predominate.

#### 1.    California Law Applies To All Class Claims

Upon the first use of any Nabi tablet, the purchaser is taken to a landing screen on the tablet, where he must agree to Fuhu's TOS, which incorporates by reference the TOU. (Dkt.# 88, Exs. JJ, MM.)[5] In the TOU, Fuhu mandates that California law applies to all claims of any kind against Fuhu. (Dkt.# 88, Ex. JJ.) Fuhu now argues that the TOU applies only to use of Fuhu's website (the "Site") and that this Court must conduct a governmental interests test and find that differences in state law defeat certification. This argument stretches the bounds of propriety.

Fuhu's TOU is not limited to the "Site." It states: "By visiting a **Fuhu Property**, you agree that **all matters relating to** your access to or use of the Site, **products or services sold or distributed by or through Fuhu, including all disputes**, will be governed by the laws of the United States and by the laws of the State of California, without regard to principles of conflicts of laws." (Dkt.# 88, Ex. JJ, p. 1) (emphasis supplied.) Fuhu argues that "Fuhu Property" means the Fuhu website. But that is not how the TOU defines "Fuhu Property." It says that "Fuhu, Inc. and its affiliates ('Fuhu') provide **various goods and services, including but not limited to web properties and applications (the 'Fuhu Property')**." (Id.) (emphasis added.) Thus, "Fuhu Property" means not only the website but also Fuhu "goods and services" and also its "web…applications." This reading is confirmed by

---

[4] Fuhu does not dispute that the proposed class and subclasses are numerous and ascertainable, that Plaintiff's counsel is adequate, that class certification in this case is superior to individualized litigation or that certification is manageable.

[5] Fuhu's TOS states: "Fuhu's Terms of Use and Privacy Policy also apply to your use and your child's use of Nabi." (Safier Decl. (Dkt.# 88), Ex. MM.)

the "Legal" screen on every Nabi tablet, which states that "Fuhu's Terms of Use…also apply to your and your children's use of nabi." (Dkt.# 88, ¶41; Ex. DD.) At a minimum, there is no dispute that Plaintiff and every other registered Fuhu purchaser has used its "web applications," which are the only way for the user to get Fuhu's software updates. Fuhu's own Rule 30(b)(6) witness testified that a customer cannot use a Nabi tablet without agreeing to the TOU, and that each use of the tablet is "subject to" the TOU.[6] Because this litigation indisputably involves "products…sold or distributed by or through Fuhu," the TOU mandates application of California law. If the TOU is ambiguous, any ambiguity must be construed against Fuhu. *See Masonite Corp. v. Pacific Gas & Electric Co.,* 65 Cal.App.3d 1, 8 (1976) (contract construed against "one who caused the ambiguity to exist, i.e., the drafter"); *Marcotte v. Micros Sys., Inc.,* No. C 14-01372 LB, 2014 WL 4477349, at *9 (N.D. Cal. Sept. 11, 2014) (stating under "standard contract construction rules…the plain language of contracts governs and ambiguities are construed against the drafter). And, even in the absence of its choice-of-law provision, California law would still apply to all class members, because Fuhu fails to meet its "burden of proof that the law of a jurisdiction other than California should apply." *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 485 (N.D.Cal. 2011) (citation omitted.)[7]

---

[6] Jason Kuo testified as follows:
> Q. At any time since July 1, 2010 through the present, can a consumer use a Nabi tablet without agreeing to the Fuhu website Terms and Conditions of Use?
> A. No.

(Dkt.# 121, Ex. KK (65:17-22).)  He also testified:
> Q. … anytime that a Fuhu customer uses their tablet, do you agree that it is done subject to the Terms of Service?
> A. Yes.

(Id., 50:11-14). Fuhu also admitted in its Answer, "Defendants require consumers to agree to their amended Terms of Use prior to downloading software and firmware updates through a pop-up box on nabi tablets." (Dkt.# 58 ¶ 74.)

[7] Plaintiff has established that Fuhu is (i) headquartered in California and (ii) all of the activity at issue in this case, including marketing materials, warranty service, and product design, emanated from California. (Dkt.# 50, 85.) Thus, applying California law "poses no constitutional concerns" and "the burden [is on] defendant to demonstrate that foreign law, rather than California law, should apply to class claims." *Forcellati v. Hyland's, Inc.,* No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *2 (C.D. Cal. Apr. 9, 2014); *accord Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 590 (9th Cir. 2012). The proponent of foreign law must engage in "an analytically rigorous discussion of each prong of [governmental interests] test based on the facts and circumstances of

-7-

### 2.   Immaterial Differences In Fuhu's Charging Systems or Tablets Do Not Defeat Commonality.

Plaintiff has introduced evidence that all Nabi tablet chargers, irrespective of model, version or generation, suffered from common design and manufacturing defects. (Dkt.# 85, pp. 2-12.) At a minimum, given the uniformly straight (180 degree) charging connectors and substandard construction, Fuhu's charging systems were not designed or manufactured to be safe for use by children. (Id.; Roman Supp. Decl. ¶ 20-21, 26.)

Fuhu counters by arguing that the "array" of Nabi charging systems cannot suffer from a common design defect because they do not have a common design— *i.e.,* there are two different charging tips/connectors. It also argues that there are hardware differences among the versions of the first generation charger—*e.g.,* a one-piece or two-piece charger, strengthened plastic housing, softer plastic or a slightly

---

this case, and [these] Plaintiff[s'] allegations." *Forcellati* at *2. Here, Fuhu merely cites *Mazza*, attaches two canned appendices (A & B), and claims victory. This falls short of the required showing that there are material differences between state laws and/or that another state's interest would be impaired, *based on the particulars of this case.* Fuhu offers only conclusions—e.g., "consumer protection laws reflect 'important policy judgments' made by each state" and that each state has "strong interests in applying its own consumer protection laws"—detached from the specifics of this case. Indeed, it offers the same exact arguments, using virtually identical language, that were rejected in *Forcellati. See id.,* 2014 WL 1410264, at *3 (rejecting arguments that "California considers the 'place of wrong' to be the state where the last event necessary to make the actor liable occurred" and that "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders," because, like here, defendants "provided no substantive, fact-specific analysis as to whether California—where Defendants are headquartered and presumably disseminated a good portion of the allegedly false advertising—or the states where the sales occurred have the predominant interest here;" finding defendant's analysis under the comparative impairment prong of the governmental interest analysis test insufficient to carry their burden); *see also Wolph,* 272 F.R.D. at 485 (applying California law to nationwide class); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010) (same); *In re POM Wonderful,* 2012 WL 4490860, at *4 (C.D. Cal. Sept.28, 2012)  (same); *Bruno v. Eckhart Corp.,* 280 F.R.D. 540, 547 (C.D. Cal. 2012) ("*Mazza* did not and could not have changed state law requiring the defendant to analyze various states' laws under the circumstances of the particular case and given the particular legal issue in question.").

[8] Fuhu's PMK on the subject, Mr. Hsieh, testified that Fuhu never tested the charging systems on children and further that such testing was not its responsibility. (Safier Supp. Decl., Ex UU (Hsieh Trans., 51:18:52:22; 113:10-14).)

1   shorter tip. ███████████████████████████████████████████

2   ████████████████████████████████████████████████. [9] Fuhu

3   misconstrues the nature of this case and Mr. Roman's testimony.

4          First, differences in the design and manufacture of the two charger generations

5   do not defeat commonality or predominance because Plaintiff has proved they all

6   suffer from common defects—*i.e.,* a similar 180° design and substandard

7   construction that was not manufactured robustly enough for the intended use by

8   children and can seriously hurt them. Though Fuhu is correct that Roman determined

9   that the second generation system was stronger than the first, it ignores the points

10  made by the balance of his report. He concludes: "████████████████████

11  ███████████████████████████████████████████████████

12  ███████████████████████████████████████████████████

13  ███████████████████████████████████████████████████

14  ███████████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  ████████████████████ (Roman Supp. Decl. ¶ 21.) Though Fuhu does not

17  deny that an L-shaped charger design could (or would or may) have fixed the defect,

18  it now argues that doing so would have "greatly decreased the tablets' durability."

19  (Dkt.# ¶ 35.) ██████████████████████████████████████

20  ███████████████████████████████████████████████████

21  ███████████████████████████████████████████████████

22  ███████████████████████████████████████████████████

23  ██████████████████████████

24          Fuhu's additional arguments about differences in the three versions of the first

25  _____

26  [9] Fuhu further contends that other differences in tablet design or operation defeat commonality. For
    example, it claims that there are difference in the intended tablet user age range (e.g., "toddlers" to

27  "tweens") and that tablets malfunction differently (e.g., broken tips versus charger ports).These
    differences are irrelevant to certification. All charging systems were commonly defective—*i.e.,* not

28  designed for use by children, irrespective of their age. It is also irrelevant whether the charger tip,
    port and/or AC adapter malfunctioned because the entire system is defective and, if any single
    component part fails, it will equally render the tablets unusable.

1  generation charging system were previously debunked by Mr. Hsieh.



9       The commonality of the charging defect is further supported by Fuhu's

10 universal approach to diagnosing and supporting charging issues.

14      Fuhu's argument boils down to a suggestion that this Court should reject

15 commonality, and deny certification, because the second generation charging system

16 was marginally less defective than the first. In fact, the new charging system appears

17 to be failing at the same, if not greater, rates as the old. (Roman Supp. Decl. ¶¶ 36-

18 42; Henin Decl. ¶ 12.) Moreover, there is a common theory and common evidence

19 that all the Nabi chargers were improperly designed and manufactured for their

20 intended use by children; they were not of merchantable quality and, in Fuhu's own

21 words, were "extremely dangerous." *See Tait v. BSH Home Appliances Corp.*, 289

22 F.R.D. 466, 474 (C.D. Cal. 2012) ("Because the claims of all prospective class

23 members involve the same alleged defect [ ] found in [air conditioners] containing

24 the same key components, they are susceptible to common proof sufficient to meet

25 the commonality requirement of Rule 23(a)(2)."); *see also Doyle v. Chrysler Grp.*

26 _____

27 [10] This common approach is underscored by the five customer declarations Fuhu submitted. (Dkt.# 111.) None of the declarants identifies the type of tablet s/he bought or the remedy s/he received; undoutedly because, as Plaintiff asserts, the tablet model and charger version is irrelevant, as the

28 purported fix is identical.

1  *LLC,* No. SACV 13-00620 JVS, 2014 WL 7690155, at *9 (C.D. Cal. Oct. 9, 2014)

2  (rejecting argument that differences between four product models defeat

3  commonality or predominance); *Cartwright v. Viking Indus., Inc.,* No. 2:07-CV-

4  02159FCDEFB, 2009 WL 2982887, at *11 (E.D. Cal. Sept. 14, 2009) (despite

5  different product models, the question of whether defendant's window products are

6  inherently defective was predominate, common question as to all warranty sub-class

7  members); *Dei Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL

8  1932484, at *4 (E.D. Cal. Apr. 28, 2015) (rejecting argument that different

9  refrigerators may perform differently where plaintiff alleged that none of them met

10  Energy Star standards.)[11]

11  ### 3.    Proof of Manifestation of the Defect Is Not Required

12  Fuhu next opposes certification on the ground that Plaintiff cannot prove that it

13  is "substantially certain" that the defect will manifest in every Nabi tablet. There is

14  no such legal requirement at class certification. To the contrary, in a design defect

15  class action in the Ninth Circuit, evidence pertaining to manifestation rates pertains

16  to the "merits" of the class claims. *See Wolin v. Jaguar Land Rover North America,*

17  *LLC* ("*Wolin*"), 617 F.3d 1168, 1173 (9th Cir. 2010) (reversing denial of class

18  certification, holding plaintiffs "easily satisfy the commonality requirement," where

19  "the claims of all prospective class members involve the same alleged defect,

20  covered by the same warranty…"); *see also Baker v. Microsoft Corp.*, 797 F.3d 607,

21  610-11 (9th Cir. 2015) (where only 0.4% of Xbox owners reported disc scratching—

22  and the cause of the scratching could be consumer misuse, not a product defect, court

23  still "held that proof of the manifestation of a defect is not a prerequisite to class

24  certification"), *citing Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). Fuhu

25  disputes the applicability of *Wolin* and further asserts that the Gist declaration

26  establishes, and Plaintiff's own expert admits, that over 90% of the tablets worked

27
28  [11] Even if there are differences, there is no reason that two classes cannot be certified, one for the first generation charger (Nabi 1 / Nabi 2) and one for the second generation (Nabi XD, Nabi Jr, Nabi 2S, Nabi DreamTab). Class members Griffin, Price and Sanchez (Dkt.## 78-80) have already declared their willingness to serve as representatives of the second group if Mr. Miller cannot.

well for many years and only 4% of consumers requested repairs or replacement. This argument misstates the facts and the law.

Factually, it is untrue that Roman "admits" that over 90% of tablets worked well for years. Rather, he recounted that, based on information then available,

Roman also said that

In distinguishing *Wolin*, Fuhu relies on Judge Klausner's opinion in *Torres v. Nissan N. Am. Inc.*, No. CV1503251RGKFFMX, 2015 WL 5170539 (C.D. Cal. Sept. 1, 2015), which posited that when *Wolin* set out the standards for certification in a defect case, it was doing so under the law of Michigan and Florida, not California and that California requires "'substantial evidence of a defect that is substantially certain to manifest in malfunction during the useful life of the product.'" *Torres* at *5 (quoting *Am. Honda v. Superior Court,* 199 Cal. App. 4th 1367, 1376 (2011)). The argument fails because the Ninth Circuit not only did not limit its rule in *Wolin* to the law of Michigan or Florida, but it applied the same rule in two other class certification cases this year under California warranty law. *See Baker*, 797 F.3d at

614; *Edwards*, 603 F. App'x at 540.[12] *Torres* ignored both cases. The *Wolin* rule also has been applied by many district courts to California warranty claims. *E.g., Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992, at *15 (N.D. Cal. Mar. 10, 2014); *Tait*, 289 F.R.D. at 479.[13] In any event, Plaintiff here *has* presented substantial evidence that the defect that is substantially certain to cause a malfunction during the useful life of the product. (*See, e.g.,* Roman Supp. Decl. ¶ 93 (extrapolating from complaint reports to date to conclude that "the **vast majority** of all customers are likely to have had or to have a problem with the charging system of their Fuhu tablet.").)

### 4. Common Questions Predominate On Plaintiff's Warranty Claims

Fuhu next argues that Plaintiff's warranty claims raise individual issues, because there is no breach of warranty unless (1) the purchaser experienced a malfunction during the first year of ownership and (2) Fuhu refused to repair or replace the device. This argument is based on a misunderstanding of warranty law and of Plaintiff's claims.

Plaintiff's allegation is that Fuhu breached its warranties by failing to provide a merchantable product—*i.e.*, it sold a product that cannot be reasonably used for even a year, let alone for its expected useful life. Plaintiff also alleges that Fuhu *knew*, but uniformly did not disclose, that the tablet's charging systems were defective and potentially extremely dangerous to children. ██████████████ ████ The warranty claims therefore focus on a common question: were the

---

[12] Further, in *Wolin*, the court cited only one case, from the Sixth Circuit, which arose under *Ohio* law. *See Wolin*, 617 F.3d 1168, at 1173-74, *citing Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006). This suggests that it was Rule 23, rather than the laws of different states, that motivated the *Wolin* holding.

[13] In any event, what appears to have motivated Judge Klausner was not the lack of proof of *manifestation* of the defect, but the lack of reliable evidence that there even *was* any defect. The court took issue with plaintiff's reliance "on media coverage, critiques of the product in trade journals…and technical service bulletins" and on "evidence of [only] 200 consumers who have complained about the vehicle's performance." 2015 WL 5170539 at *5. Here, in contrast, Plaintiff provides overwhelming evidence of a common defect, including Fuhu's own admissions and internal documents categorizing the problem as such.

products merchantable when sold, which in turn focuses on an objective standard: would a reasonable consumer have believed the products to be fit for ordinary use, had she been informed of the truth at the time of sale? This Court certified similar express and implied warranty claims in *Guido v. L'Oreal, USA, Inc.,* explaining that the warranty "claim hinges on determining whether the product is flammable and whether a reasonable consumer would expect a flammable leave-in hair product to contain a warning. These issues can be resolved through common proof about the nature of Serum and the expectations of a reasonable consumer, and therefore the Court finds that common issues predominate." *Id.,* No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *13 (C.D. Cal. July 1, 2013). Many other cases are in accord. *See, e.g., Baker,* 797 F.3d at 614 ("Plaintiffs' breach of express warranty claim presents a common factual question—is there a defect?—and a common mixed question of law and fact—does that defect breach the express warranty?" and those questions predominate)*; In re ConAgra Foods, Inc*., 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015) (certifying warranty claims about contents of olive oil) *citing Keegan v. American Honda Motor Co., Inc*., 284 F.R.D. 504, 534–37 (C.D. Cal. 2012); *see also Allen v. Hyland's Inc*., 300 F.R.D. 643, 669 (C.D. Cal. 2014) (express warranty claim subject to common proof in claim about homeopathetic products); *Astiana v. Kashi Co*., 291 F.R.D. 493, 505 (S.D. Cal. 2013) ("Common issues also exist and predominate on Plaintiffs' claims for…breach of express warranty… [due to] common contentions of deceptive conduct by Defendant in marketing its products."). Thus, like all of Plaintiff's consumer claims, whether Fuhu breached its warranties is measured by a common, objective standard. *See Allen v. Similasan Corp*., 306 F.R.D. 635, 648 (S.D. Cal. 2015) (stating like all of "California's consumer protection statutes, [ ] class treatment of breach of …warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer" and on implied warranty claim, Plaintiffs need only show that products did not conform to promises or affirmations on products' labels).

-14-

Moreover, Fuhu's contention that it provided repairs to all affected customers *supports* certification of the warranty claims. The Ninth Circuit recently explained that "by providing classwide relief through its notice and repair program, Ford has acknowledged that a single class defect exists." *Edwards*, 603 F. App'x at 539-40.[14]

### 5.   Classwide Misrepresentations/Omissions Predominate.

Fuhu next incorrectly argues that individual issues predominate on Plaintiff's advertising claims, because there was no affirmative representation on the Nabi package that the tablet was "rechargeable." But Fuhu does not dispute that all its specification sheets said the Nabi tablets were rechargeable and able to adapt power, that it provided these sheets to all retailers, or that the retailers passed on the information. It certainly does not contend it ever told consumers that the tablets were *not* rechargeable. Nor does it dispute the common sense proposition that consumers would expect a tablet to be rechargeable because tablets are mobile devices. If the tablet cannot be recharged, then it either requires disposable batteries (a fact that would be disclosed on the package) or it needs to be plugged in all the time, in which case it is not a mobile device; it's a desktop. Finally, Fuhu does not deny that since its inception it has advertised and marketed the products as being "built and designed for children."[15]

The advertising claims can be certified because the only question is whether Fuhu's common representations and omissions were likely to deceive reasonable consumers. This Court has stated "whether an omission is material presents a

---

[14] Fuhu also incorrectly argues that there needs to be proof of "privity" on the implied warranty claim. In doing so, it relies on the wrong law; Plaintiff's implied warranty claim is under the Song-Beverly Act (Dkt.# 50, pp. 43-44), which "unlike the implied warranty under the Commercial Code," does not require privity. *See In re Carrier IQ, Inc.*, No. C–12–md–2330, 78 F.Supp.3d 1051, 1105–06, 2015 WL 274054, at *41 (N.D.Cal. Jan. 21, 2015); *see also Guido,* 284 F.R.D. at 482 (certifying Song Beverly cause of action without vertical privity).

[15] Common representations also appear on Fuhu's website ("What's in the Box" and "Technical Specifications"), Quick Start Guides, and User Manuals. (Safier Supp. Decl., Ex. SS (Lee Trans. 32:14- 33:13; 71:4-72:20; 76:5-14; 79:4-11; 84:8-94:24; 95:1-4; 103:7-15; 105:6-106:20).) The representations were provided to retail partners and distributors on Fuhu's sell-sheets. (Id., Ex. SS (Lee Trans. 80:4-20).) Fuhu also provided all customers the identical false and deceptive written warranty. (Dkt.# 85, p. 12; Dkt.# 88, Ex. EE.)

common question of fact suitable for class litigation." *Guido*, 2013 WL 3353857, at *11; *see also e.g., Tait*, 289 F.R.D. at 482 ("*Mazza* stands for the unremarkable proposition that it is difficult to certify a class where the class members are not all exposed to the same representations. This proposition has no relevance to the present case, where Plaintiffs' theory is that Defendant violated the UCL, FAL, and CLRA and that partial representations on the product itself are misleading") (emphasis added); *In re NJOY, Inc. Consumer Class Action Litig., No.* CV1400428MMMJEMX, 2015 WL 4881091, at *27 (C.D. Cal. Aug. 14, 2015) (rejecting contention that there is no evidence that putative class members were actually exposed to its advertisements, certifying class action on the basis of alleged omissions); *Parkinson v. Hyundai Mot. Am.*, 258 F.R.D. 580, 595–96 (C.D. Cal. 2008) (whether an omission is material presents a "common question of fact suitable for treatment in a class action.").

Fuhu nevertheless argues that the materiality of its omission is not a common question because the risk of malfunction differed by model, and because different features among models (such as screen size or Disney co-branding) would have differently affected customers' appetites to purchase the products. This argument miscomprehends the materiality inquiry. As this Court has stated, it does not matter that an omitted fact may not have had the "same impact on all consumers" and may not have informed an individual's buying decision, because materiality of an omission is "established 'if a *reasonable man* would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'" *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475 (C.D. Cal. 2012) *citing Stearns*, 655 F.3d at 1022;[16] *see also Beck–Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558,

[16] Fuhu relies on *In re Vioxx Class Cases*, 180 Cal.App. 4th 116, 129 (2009), where the court determined that "the decision to prescribe Vioxx is an individual decision made by a physician in reliance on many different factors, which vary from patient to patient." *Id.* at 133. That case is inapposite because there, it was the physician not the consumer who was making the "buying" decision, and there was no common question about what a "reasonable physician" might do. Fuhu also cites *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544 (2011), where the court denied certification because there was no evidence of common misrepresentations and omissions; rather, each sale was "the result of an individual sales presentation from the agent to the

568 (S.D.Cal.2012) (finding "a common advertising scheme to which the entire class was exposed" sufficient for certification); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D.Cal.2010) (holding, despite different representations on the cans and bottles at issue, that the commonality requirement was satisfied by allegations that the defendant's "packaging and marketing materials [were] unlawful, unfair, deceptive or misleading to a reasonable consumer"); *In re Ferrero Litigation*, 278 F.R.D. 552, 558 (S.D.Cal.2011) (finding commonality where claims were based on "common advertising campaign"); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *3-4 (N.D. Cal. June 7, 2011) (claims involving defendant's use of "express and implied statements about the positive effects of omega–3 fatty acid consumption on health to entice consumers to purchase its [products]"). This Court can also make a common sense inference that reasonable consumers would expect their tablet to be rechargeable. *See, e.g., Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 491–92 (C.D.Cal.2006) (finding common sense inference that no rational class member would have purchased annuities if adequate disclosure of facts had been made).

### 6.    A Presumption of Reliance Applies to Plaintiff's Fraud Based Claims

Fuhu next argues that a presumption of classwide reliance is improper on Plaintiff's CLRA and fraud claims.[17] However, reliance is presumed when the alleged misrepresentations or omissions were material, as measured by the "reasonable person standard."[18] *See Chavez*, 2010 U.S. DIST. LEXIS 60554 at *30;

prospective policyholder." That case is also inapposite as there is no evidence of individual presentations in which the defect was disclosed to some consumers.

[17] The UCL claim does not require reliance by absent class members, but only by the Plaintiff, *Guido*, 2013 WL 3353857, at *11, and Fuhu does not dispute that Plaintiff relied to his detriment on Fuhu's misrepresentation/omissions. (Dkt.# 50.) Thus common issues predominate on the claims of "fraudulent" conduct under the UCL. Fuhu also does not challenge the predominance of common issues related to unlawful or unfair conduct under the UCL. Nor does it address Plaintiff's common law fraud claim, in which Fuhu's intent to deceive the class will be proven through evidence common to all class members.

[18] Materiality, in turn, is demonstrated by showing that a reasonable person "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in

1   *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 156-57 (2010). Fuhu

2   counters that this Court may not presume reliance because it had no duty to disclose

3   the defect unless the defect is "related to safety concerns." Fuhu misunderstands this

4   legal doctrine and, in any event, there is abundant evidence of safety concerns here.

5         Under California law, a company must disclose any *material* defect, which

6   includes but is not limited to safety issues. Judge Donato recently explained:

7         "Some federal courts have adopted a "safety concern" limitation and those

8         holdings can be traced back to the California Court of Appeal's decisions in

9         *Daughert*y [*v. American Honda Motor Co. Inc.*,] 144 Cal.App. 4th 824

10        [(2006)], and *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App. 4th 1255 (2006).

11        Significantly, however, the California Court of Appeal itself has very recently

12        clarified that this is a misreading of California law. In *Rutledge v. Hewlett–*

13        *Packard Co.*, No. H036790, 2015 WL 4480356, at *5 (Cal.Ct.App. July 22,

14        2015), the court explained: "Both *Daugherty* and *Bardin* do address disclosure

15        of defects related to safety concerns in the context of CLRA and UCL claims.

16        However, neither *Daugherty* nor *Bardin* preclude a duty to disclose material

17        information known to a manufacturer and concealed from a consumer." The

18        court went on to emphasize that "[t]he *Bardin* court did not hold that a defect

19        must be related to a safety concern to be material for purposes of fraudulent

20        omission."

21   *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2015 WL

22   4967247 (N.D. Cal. Aug. 20, 2015), at *6; *accord Rutledge v. Hewlett-Packard Co.*,

23   238 Cal. App. 4th 1164 (2015) (applying *Daugherty* and *Bardin* to reject the same

24   arguments made by Fuhu); *see also Cartwright v. Viking Indus., Inc*., No. 2:07-CV-

25   02159FCDEFB, 2009 WL 2982887, at *12 (E.D. Cal. Sept. 14, 2009) ("A

26   _____

27   question, and as such materiality is generally a question of fact unless the fact misrepresented is so
     obviously unimportant that the jury could not reasonably find that a reasonable man would have

28   been influenced by it." *Steroid Hormone Product Cases*, 181 Cal. App. 4[th] at 157 (citations
     omitted).

presumption of reliance is appropriate in cases sounding in fraud where the plaintiffs "have primarily alleged omissions, even though the [p]laintiffs allege a mix of misstatements and omissions.")[19]

Even were Plaintiff required to show an undisclosed safety defect, he has done so. Fuhu admitted that the charger system defects lead to ██████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

This is more than sufficient. *See Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) ("Plaintiff [need not] plead that consumers have been injured by the alleged unreasonable safety risk.... The alleged unreasonable risk of safety created by compromised windshields during rollover accidents is [sufficient to plead an] unreasonable safety risk that would have been material to the reasonable consumer"); *see also Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 342–43 (N.D. Cal. 2010) (concluding that the "ultimate question" of the materiality of the defendants' alleged failure to disclose to consumers that defendants' fireplaces could reach too-hot temperatures was "a common question of fact suitable for treatment in a class action").[20]

---

[19] Even in cases that require an omitted fact about safety, the requirement arises only if the plaintiff is unable to allege that defendant knew of the defect *prior to sale*. In other words, the safety limitation applies, at best, only when a plaintiff alleges a *post-sale* duty to warn that the product would, for example, unreasonably deteriorate. *See, e.g., Hensley-Maclean v. Safeway, Inc.*, No. CV 11-01230 RS, 2014 WL 1364906, at *6 (N.D. Cal. Apr. 7, 2014) (concluding that an omission may constitute an unfair or deceptive act under the CLRA where plaintiff alleges defendant's knowledge and failure to warn in the context of a transaction, stating "defendant's pre-sale" omissions matter under the CLRA); *cf. Kowalsky v. Hewlett–Packard Co.*, 771 F.Supp.2d 1156, 1163 (N.D. Cal. 2011) ("[A] representation will not violate the CLRA if the defendant did not know, or have reason to know, of the facts that rendered the representation misleading at the time it was made.").

### 7.   Common Questions Predominate Over Any Individual Damages Issues

Fuhu next argues that the determination of injury and damages require individualized inquiries. It spills much ink dreaming up ways to explain how some tablet purchasers got exactly what they bargained for. It suggests that some consumers would have paid the same price, irrespective of the defect and safety issue, because they were really after the Nabi applications, co-branding, or parental controls. Though it interestingly fails to present evidence of even one such consumer, it further hypothesizes that some class members never experienced a malfunction, that others were to blame for the charger malfunction, and that yet others got excellent customer service and replacements.[21] But these theoretical individualized issues are legally irrelevant under controlling Ninth Circuit law.

The Ninth Circuit recently held that "in calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a *reasonable* consumer would have paid *at the time of purchase* without the fraudulent or omitted information." *Pulaski and Middleman LLC v. Google, Inc.*, 2015 WL 5515617 *8 (9th Cir. Sept. 21, 2015) (emphasis added) *citing Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 329 (2011)). The court further emphasized that to have an injury under the UCL and FAL, "it is necessary only to show that members of the public are likely to be deceived." *Id.* at *4 *citing In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) and *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013,

---

[20] Fuhu asserts that unless all class members were "injured," certification is improper under Article III. All class members *were* injured by the inflated purchase price, but in any event, the Article III standing inquiry focusses on the named plaintiff not absent class members. *See, e.g., Guido*, 284 F.R.D. at 475 (rejecting argument that each class member must demonstrate standing as "unpersuasive") *citing Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.")

[21] Fuhu also argues that Plaintiff's damages theory is an impermissible "fraud on the market theory," which Fuhu advances as an objection to Plaintiff's Damages Expert, Dr. Selwyn's, Declaration. This argument is incorrect, as Plaintiff explains in his response to Defendant's objections to Dr. Selwyn's declaration, filed herewith, and incorporates here by reference.

1020 (9th Cir. 2011). Essentially, "California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy." *Id.*, *quoting Stearns* at 1021, n. 13. Further, the calculation of restitution "need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase." *Id.* at *8. Finally, the Ninth Circuit "reaffirmed the proposition that differences in damage calculations do not defeat class certification after *Comcast.*" *Id.* at *6, *citing Yokoyama v. Midland National Life Insurance Co.*, 594 F.3d 1087, 1094 (9th Cir.2010); *Levya v. Medline Industries, Inc.*, 716 F.3d 510, 513–14 (9th Cir.2013); and *Jimenez v. Allstate Insurance Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014). Thus, in *Pulaski* the Ninth Circuit expressly rejected Fuhu's "individualized inquiry" approach.[22]

Understanding that *Pulaski* eviscerates its arguments, Fuhu tries to distinguish it on the facts. It argues that "in *Pulaski* there was a specific representation accompanying each sale that was false" (Dkt.# 128, p. 34 n.30), but the argument is without support. *Pulaski* is an omissions case, and matches Plaintiff's theory of liability here exactly. *See* 2015 WL 5515617 at *2 ("Pulaski alleges that Google misled advertisers…by *failing to disclose* the placement of AdWords ads on parked domains and error pages.").

Fuhu next attacks Plaintiff's "full refund" and "diminution in value" models contending that they raise "individualized issues." Fuhu contends that the full refund model fails to account for benefits received by some class members from owning or using the tablets. Once again, Fuhu focusses on the wrong time period; the question is what value the tablets had *at time of sale.* Plaintiff asserts that no reasonable person would buy a children's tablet if the manufacturer disclosed that it could be "extremely dangerous" to children. If Plaintiff succeeds on that theory, the remedy is

---

[22] Plaintiff provides a more detailed analysis of *Pulaski* and how it eviscerates Defendant's "individualized inquiry" approach in Plaintiff's Objections to Dr. Ugone, which Plaintiff has filed herewith and incorporates here by reference.

appropriate. *See, e.g.*, *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 430 (C.D. Cal. 2014) (approving full refund theory where claim was that homeopathic medicines are ineffective and thus without value); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) (same); *In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145 (2010) (distinguishing *Vioxx*; no need for proof of amount of loss where no reasonable consumer would purchase product that contained illegal substance).[23] A full refund can also be appropriate if Plaintiff obtains a recissionary remedy—*i.e.* refunds in exchange for tablet returns by disgruntled customers.[24]

On the diminution in value methodology, Fuhu again argues that there are individual issues about whether the defect manifested, when and how. Once again, all these criticisms focus on events *after* purchase, when the only pertinent question is what the reasonable consumer would have paid *at* time of sale had the defects been disclosed. *Pulaski*, 2015 WL 5515617 at *8; *see also Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2014 WL 6603730 at *8 (C.D. Cal. 2014) (approving conjoint analysis as a method for measuring class wide price premium based damages); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1031 (C.D. Cal. 2015) (certifying class proffering a damages theory that defendants charged "a price premium associated with the label that led class members to pay more for each bottle of Wesson Oils they purchased" and approving conjoint analysis to isolate that premium).

---

[23] As the California Supreme Court explained in *Kwikset v. Superior Court*, 5 Cal.4th 310, 330 (2011), "Nonkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless." The Ninth Circuit quoted this sentence in *Pulaski* and went on to suggest that in appropriate circumstances, the "Full Refund approach[]…may also be appropriate for calculating restitution."  2015 WL 5515617, at *13 n.9.

[24] *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 529-31 (C.D. Cal. 2015) (rejecting Defendant's argument that diminution in value was only way to calculate restitution under UCL and approving full refund measure of damages where class members could rescind transactions). The cases on which Defendant relies to criticize the full refund measure are distinguishable, as both involved food products that class members had already consumed and could not return.  *In re POM Wonderful, LLC*, No. ML 10–02199 DDP (Rzx), 2014 WL 1225184, at *2-3 (C.D. Cal. Mar. 25, 2014); *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724 LHK, 2014 WL 7148923, at *22 (N.D. Cal. Dec.15, 2014).

Fuhu also attacks the methodology Plaintiff's economic and survey experts will employ to compute damages. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Moreover, both of Plaintiff's experts have repeatedly been certified as experts to offer testimony based on the proposed methodologies. (Selwyn Supp. Decl. ¶ 53; Dennis Supp. Decl ¶ 26.) Many courts, including this one, have accepted the two survey methodologies proposed by Dr. Dennis—Contingent Valuation Method ("CVM") and Choice-Based Conjoint Analysis ("CBC"), as providing a classwide basis to measure the price premium on consumer products resulting from a misrepresentation or omission. *See, e.g., In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Products Liab. Litig.,* No. MDL 10-02172-CJC, 2012 WL 4904412, at *3-4 (C.D. Cal. Sept. 20, 2012) (approving use of CVM); *Guido*, 2014 WL 6603730, at *8 (approving use of CBC). Defendant's criticisms focus not on the methodologies themselves, but on the specifics of the CVM survey Dr. Dennis proposed as a preliminary example of how he could apply CVM in this case. These criticisms are premature, however, because Dr. Dennis has not yet designed the survey, and Plaintiff's burden is only to "provide a method for calculating [the] premium [associated with the omission of information about the Nabi defects] on a classwide basis." *Guido*, 2014 WL 6603730 *8. A fuller discussion of these issues can be found in Plaintiff's responses to Defendant's Evidentiary Objections, as well as in Plaintiff's evidentiary objections to Defendant's experts, and also in the supplemental declarations of the experts, Drs. Selwyn and Dennis, all of which are filed herewith.[25]

-23-

### 8.    Plaintiff's Unconscionability Claim Is Common

After repeating its mistaken argument that the TOU only applies to claims about its website (*see supra* section II(A)(1)(a)), Fuhu argues that there is no injury or controversy caused by its insertion of the arbitration clause and class waiver, because it never promised indefinite software updates nor has it attempted to enforce the new clause. Whether Fuhu promised "indefinite" updates is irrelevant; the question is whether Fuhu can bind class members to an arbitration clause that the class members purportedly accepted *after* purchase in order to receive updates promised at the time of purchase. That question is common to the class. Nor is past injury required to obtain declarator relief; plaintiff need only show "a very significant possibility of future harm" or "a likelihood of future injury." *AIU Ins. Co. v. Acceptance Ins. Co*., No. C 07-5491 PJH, 2010 WL 3893602, at *4 (N.D. Cal. Sept. 30, 2010). "Declaratory relief is designed to resolve uncertainties or disputes that may result in future litigation." *United States v. Washington*, 759 F.2d 1353, 1356–57 (9th Cir.1985).

### B.    Plaintiff Meets The Typicality and Adequacy Requirements

Fuhu argues in passing that Plaintiff is atypical because he lacks an express warranty claim, is subject to Florida law and suffered no injury from the misrepresentation about the tablet being "built for kids" because he never let his grandson use the charger. All false. Plaintiff requested repair and replacement at least twice during the warranty period with no response. (Dkt.# 77; Safier Supp. Decl., Ex. TT (Miller Trans. 66:15-67:12; 88:9-16; 110:1-112:1:121:1-122:12).) Plaintiff's claims, like all class members' claims, are governed by California law. And he did allow his grandson to insert and remove the low-voltage charger tip from the tablet— his testimony was only that he would not let his grandson plug the AC adapter into the wall. He thought it would be fine for his grandson to handle the low-voltage charger tip that connects to the tablet, which turned out not to be the case. (Id., Ex.

---

[25] Fuhu does raise a single important point. It contends that the class definition could be read to include used tablet purchasers. This was not intended. The class definition should be amended to be limited to purchasers of "new" tablets.

1  TT (Miller Trans. 48:21-49:10; 75:25-76:12; 150:2-6).)

2    Fuhu also attacks Plaintiff's adequacy, because immediately after he received a

3  replacement charger, he informed Fuhu that it "was received and is working

4  properly." But the fact that the replacement charger (like the original) may have

5  initially worked does not mean that it continued to do so. Plaintiff's testimony is

6  uncontroverted that he soon noticed that the charger did not work; he even produced

7  videos of the issue and made the charger available for inspection.  (Safier Supp. Decl.

8  ¶ 23.) Fuhu then points out that Plaintiff has filed two other class actions, but there is

9  no support for its assertion that this fact makes him inadequate. *Cf. Lemire v. Wolpoff*

10  *& Abramson, LLP*, 256 F.R.D. 321, 328 (D. Conn. 2009) (finding plaintiff adequate,

11  stating "I see no reason why a repeat plaintiff would be a worse representative of

12  similarly situated persons."); *Markewich v. Adikes*, 76 F.R.D. 68, 75 (E.D.N.Y. 1977)

13  (rejecting defendant's claim that "professional plaintiff" renders him inadequate,

14  stating to the contrary that his "past experience suggests that he and his counsel will

15  be able to provide vigorous advocacy for the members of the class which he now

16  seeks to represent.").

17         **III.   CONCLUSION**

18    For the foregoing reasons, Plaintiff respectfully requests that his motion for

19  class certification be granted.

20     Dated:  November 2, 2015   **GUTRIDE SAFIER LLP**

21            /s/ Seth A. Safier

22            Attorneys for Plaintiff

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Seth Safier, declare:

My business address is 100 Pine Street, Suite 1250, San Francisco, California. I am employed in the County of San Francisco, where this mailing occurs. I am over the age of 18 years and not a party to the within cause.

On November 2, 2015, I served the following documents:

[SEALED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

[SEALED] SUPPLEMENTAL DECLARATION OF SETH A. SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

[SEALED] SUPPLEMENTAL DECLARATION OF KENDYL A. ROMAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;

SUPPLEMENTAL DECLARATION AND EXPERT REPORT OF LEE L. SELWYN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL; DECLARATION OF SETH A. SAFIER IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL;

[PROPOSED] ORDER GRANTING/DENYING ADMINISTRATIVE REQUEST TO FILE DOCUMENTS UNDER SEAL;

[REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

[REDACTED] SUPPLEMENTAL DECLARATION OF SETH A. SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

[REDACTED] SUPPLEMENTAL DECLARATION OF KENDYL A. ROMAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;

MANUAL FILING NOTICE;

PLAINTIFF'S OBJECTIONS TO DECLARATIONS OF DR. KEITH UGONE AND DR. JOHN R. HAUSER;

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO DECLARATIONS OF DR. LEE L. SELWYN, DR. J. MICHAEL DENNIS AND MR. KENDYL A. ROMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

PLAINTIFF'S EVIDENTIARY OBJECTIONS TO, AND REQUEST TO STRIKE, THE DECLARATIONS OF ERIC GIST AND LISA LEE, AND EXHIBITS ATTACHED, AND THE PORTIONS OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION RELYING ON THE DECLARATIONS;

-26-

1    REPLY DECLARATION OF J. MICHAEL DENNIS, PH.D. IN SUPPORT OF
     PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

2    [SEALED] DECLARATION OF ANTHONY HENIN IN SUPPORT OF
     PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; and
3
     [REDACTED] DECLARATION OF ANTHONY HENIN IN SUPPORT OF
4    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

5    on the following person(s) in this action by placing a true copy thereof as follows:

6    Matt Powers, Esq.
     Richard Goetz, Esq.
7    O'Melveny & Myers LLP
     400 South Hope Street
8    Los Angeles, CA  90071-2899

9

10
         [x]    BY ELECTRONIC MAIL.  I also caused said documents to be
11   transmitted by ECF and email to the email address indicated after the above address.

12
         I declare under penalty of perjury under the laws of the State of California that
13   the foregoing is true and correct and that this document was executed on November
14   2, 2015, at San Francisco, California.

15                                    /s/ Seth A. Safier

16                                    _____

17                                    Seth Safier, Esq

18

19

20

21

22

23

24

25

26

27

28