## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| CONNIE LEE | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**        (IN CHAMBERS) PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [71]

## I.    INTRODUCTION

On July 7, 2014, plaintiff Scott Miller filed a putative class action against defendants Fuhu, Inc. and Fuhu Holdings, Inc. (collectively, "Fuhu" or "defendants") in Los Angeles County Superior Court.  Dkt. 1.  Defendants removed the action to this Court on August 5, 2014, asserting diversity jurisdiction.  Id.  On May 25, 2015, plaintiff filed the operative second amended complaint ("SAC").  Dkt. 50.  The FAC alleges claims for (1) violation of California's Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq. ("CLRA"); (2) violation of California's False Advertising Law, Cal. Bus. Prof. Code § 17500, et seq. ("FAL"); (3) common law fraud, deceit, and/or misrepresentation; (4) breach of express warranty, in violation of Cal. Com. Code § 2100, et seq.; (5) breach of the implied warranty of merchantability, in violation of the Song-Beverly Consumer Warranty Act, Cal. Civil Code § 1790, et seq. ("Song-Beverly Act"); and (6) violation of California's Unfair Competition Law, Cal. Bus. Prof. Code  §§ 17200, et seq. ("UCL").  Id.

On June 29, 2015, plaintiff filed the instant motion for class certification.  Dkt. 82.  On October 13, 2015, defendants filed an opposition, Dkt. 111, and on November 2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

2015, plaintiff filed a reply, Dkt. 132.[1]  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Defendants manufacture electronic tablets for children.  SAC  ¶ 21.  Among these products are the Nabi XD, Nabi 2, Nabi 2 S, Nabi Jr., and Disney and Nickelodeon special edition Nabi 2 tablets (referred to collectively as the "Nabi tablets").  Id.  To promote the sales of Nabi tablets, defendants provide advertising materials and information to their retail partners, and also communicate such information directly to consumers through their website (http://www.nabitablet.com).  Id. ¶ 22.  As is relevant here, defendants market, advertise, and represent to retailers, and on their website, that each Nabi tablet includes a "power adapter," is "rechargeable," and has "rechargeable batteries."  Id.  Similar representations also appear in Nabi tablet user manuals.  Id. ¶¶ 25-26.  Among other things, the manuals represent that the tablets may be used while connected to an external power source, i.e., while recharging.  Id. ¶ 29.

According to plaintiff, defendants' representations are false because the Nabi tablets have defective power adapters that fail to reliably recharge the tablets.  Id.  ¶ 23.

---

[1] In connection with his reply memorandum in support of his motion for class certification, plaintiff filed several supplemental expert reports.  Defendants contend that these reports contain new opinions and analyses that were not submitted with plaintiff's opening briefs.  Dkt. 151, at 1.  Accordingly, defendants have a filed a motion to strike "the portions of the declarations that contain these new data, analyses, and opinions along with portions of the Reply that rely on them."  Id.  A court should not normally consider evidence or analysis set forth for the first time in a reply brief.  See World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y., Inc., 2011 WL 5118525, at *6 (N.D. Cal. Oct. 28, 2011) ("New evidence or analysis presented for the first time in a reply is improper and will not be considered."); Powell v. Union Pacific R.R. Co., 2012 WL 1081474, at *11 (E.D. Cal. Mar. 31,2012) ("The court does not consider arguments first set forth in a reply brief.").  However, to the extent the Court does not rely on the objected to materials, defendants' motion to strike is DENIED AS MOOT.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

In particular, consumers attempting to recharge the Nabi tablets using the provided power adapters experience intermittent recharging failures, well within the first year of operation, including the following: "(i) failure of the tablets to begin recharging (i.e., the charging light indicator will not display an orange light and the battery will not recharge); (ii) failure of the tablets to power on after recharging; and/or (iii) failure of the tablets to function while recharging."  Id.  Plaintiff alleges that defendants have not informed potential consumers or instructed retailers to inform potential consumers that the Nabi tablets are not rechargeable or that they cannot be used while charging or plugged in; instead defendants "knowingly and intentionally failed to disclose [this information] to consumers."  Id.

Each Nabi tablet also includes defendants' written product warranty, which provides, "in pertinent part, in similar or identical terms," as follows:

> Fuhu warranties for one year from the date of sale to the consumer that the nabi is of merchantable quality and that it conforms to applicable specifications. Applicable specifications mean the specification for the Processor, the CPU (Central Processing Unit). The applicable specifications exclude and no warranty is provided for the specifications for any other components or for any performance that can degrade naturally with normal use for one year . . . If you discover that your nabi is not of merchantable quality and fails to conform to its applicable specifications, as defined above, we will, at our option, refund the purchase price, or repair or replace the product, using new or refurbished components within a reasonable time during the warranty period.

Id. ¶ 27.  This written warranty is also available on defendants' website.  Id. ¶ 28. According to plaintiff, the Nabi tablets are not of merchantable quality because they are sold with defective power adapters that fail to reliably recharge the tablets.  Id. ¶ 29. Plaintiff further alleges that "when consumers complain to Defendants during the warranty period that the Nabi tablets do not recharge and/or cannot be used while they are recharging, defendants have failed to either (i) refund the purchase price of the Nabi tablets, or (ii) adequately repair or replace the Nabi tablets or the power adapters."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                  'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Plaintiff alleges that defendants have been aware that the Nabi tablets contain defective power adapters that fail to reliably recharge the tablets since at least December 2011.  See id. ¶ 30.  Defendants have received hundreds of complaints from third-party retailers and consumers, in addition to requests from consumers for warranty service and/or replacement power adapters.  Id.; see also Id. ¶¶ 44-67 (a "small sample of hundreds of consumer complaints" appearing on defendants' Facebook page and ranging in date from December 31, 2011 to May 6, 2015).  In response to these initial consumer complaints, defendants investigated the recharging problem and determined that the power adapters included with the tablets were defective.  Id.  Defendants announced this in a December 31, 2011 Facebook post, and stated that they had remedied the problem.  Id.

According to plaintiff, although defendants initially sent replacement power adapters to consumers who complained, these replacements were also defective.  Id. ¶ 31.  Plaintiff further alleges that, for a period of time, defendants refused to send replacement power adapters to consumers who complained within the warranty period.  Id.  Instead, defendants directed these consumers to purchase another power adapter from defendants or from a third party, despite defendants' express warning in the Nabi tablet user manual that a non-Nabi brand power adapter could damage the tablet.  Id.  Plaintiff alleges that defendants resumed sending replacement power adapters to complaining consumers on July 9, 2014.  Id. ¶ 32.  However, plaintiff alleges that defendants continue to send defective replacement adapters and "cryptically communicate this replacement program to Nabi tablet owners on their website and Facebook page."  Id.

On or about July 27, 2012, plaintiff Scott Miller purchased a Nabi 2 tablet from Best Buy for $199.99 for his grandson.  Id. ¶¶ 38-39.  Before making his purchase, plaintiff researched his options, compared multiple brands of tablets, and reviewed defendants' website and the representations that defendants made to retailers that Nabi tablets are "rechargeable" with an included "power adapter."  Id. ¶ 38.  Plaintiff specifically wanted to purchase a tablet that was both rechargeable and could be used while it was recharging, such as during a car ride or while plugged directly into a wall outlet.  Id.  Moreover, plaintiff alleges that he read and relied upon each of defendants' affirmative misrepresentations and omissions before completing his purchase.  Id.  ¶ 39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                  **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Shortly after his purchase, and within the first year of ownership, plaintiff alleges that he began experiencing problems recharging the Nabi tablet. Id. ¶ 40.  In particular, plaintiff's Nabi tablet would not enter into charging mode when it was plugged into a power source using the supplied power adapter, and would not turn on after it had been plugged in and had purportedly been recharged, even when the tablet's charging light indicated that recharging was complete. Id.  Plaintiff alleges that he contacted defendants at least twice during the first year of ownership regarding his recharging problems, but that he did not receive any response. Id. ¶ 41.  Plaintiff was able to connect with defendants on his third attempt, and they sent plaintiff a replacement power adapter on or about September 16, 2013. Id.  Plaintiff, however, alleges that the replacement adapter was also defective, because plaintiff is still unable to use his Nabi tablet while it is plugged into a power source. Id. ¶ 42.

Defendants contend that the plaintiff can remedy the issue he is currently experiencing by installing a software update, provided by defendants, on his Nabi tablet. Id.  According to plaintiff, defendants promise to provide and do provide free software updates for the Nabi tablets. Id. ¶ 71.  When defendants release such an update, a notification is "pushed" to all Nabi tablets that are connected to the Internet, notifying users that a software update is available to download. Id.  These "over-the-air" software updates provide Nabi users with vital updates to the tablet's functionality, including updates to the operating system, and fixes to known errors or bugs in the software. Id.

Plaintiff, however, has declined to install these over-the-air updates on his Nabi tablet since, in order to do so, he and all other Nabi owners are required to agree to defendants' amended Terms of Use. Id.  ¶ 74.  Plaintiff alleges that in September 2014 — after plaintiff filed his original complaint — defendants amended the Terms of Use to include both an arbitration clause and a class action waiver provision. Id. ¶ 75 (setting forth relevant language of Terms of Use).  Plaintiff alleges that this presents consumers with a Hobson's Choice. Id. ¶ 77.  Plaintiff further alleges that defendants have attempted to conceal these amendments by intentionally indicating on their website that the Terms of Use were "last updated" on August 16, 2013, even though they were actually revised in September 2014. Id. ¶ 76.

In the instant motion, plaintiff seeks to certify the following class and subclasses:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

> All persons, who between July 3, 2010 and the present purchased, in the United States, a Nabi tablet (the "Class");

> All members of the Class who purchased and registered their Nabi tablet with one or more Defendants prior to September 24, 2014 (the "Unconsionability Subclass");

> All members of the class who purchased their Nabi tablets from a third-party retailer (the "Warranty Subclass").

Dkt. 85.

## III.  LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions.  A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000).  These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims."  Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b).  Dukes, 131 S.Ct. at 2548.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here.  A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)).  The predominance inquiry measures the relative weight of the common to individualized claims.  Id.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)).  In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action.  Id. at 1190–1993.  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Dukes, 131 S.Ct. at 2551.  This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

**IV.   ANALYSIS**

    **A.   Choice of Law**

       In the instant motion, plaintiff seeks to certify a nationwide class of all persons who purchased one of defendants' Nabi tablets.  Mot., at 18.  Accordingly, as an initial matter the Court must determine which state or states' laws apply to the claims of the proposed class.  Plaintiff contends that California law should apply to the claims of all prospective class members.  Id., at 27-28.  According to plaintiff, all purchasers of Nabi tablets are subject to Fuhu's Terms of Use Agreement (the "Terms of Use").  Id.  This agreement in turn contains a choice-of-law provision which, according to plaintiff, provides that all claims related to Fuhu's products shall be governed by California law. Id.

       "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."  Gustafson v. BAC Home Loans Servicing, LP, 294 F.R.D. 529, 535 (C.D. Cal. 2013) (quoting Zinser, 253 F.3d at 1187). Under California law, the "court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope."  Washington Mutual Bank, F.A. v. Superior Court, 24 Cal. 4th 906, 916 (2001).  "If the trial court finds that the class claims fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability."  Id.  A choice of law provision is enforceable under California law as long as it is not contrary to a fundamental policy of California, and either (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) there is any other reasonable basis for the choice of law.  Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 466 (Cal.1992).

       Turning to the first step in the choice-of-law inquiry, plaintiff argues that the choice-of-law provision in defendants' Terms of Use applies to all disputes related to Fuhu's products.  Mot., at 27-28.  Defendants disagree and argue that the choice-of-law provision applies only to use of the Fuhu website.  Opp'n., at 15-16.  Accordingly, defendants argue that the claims of the putative class members fall outside the scope of the choice-of-law provision.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

The Terms of Use provide, in relevant part:

> **AGREEMENT TO TERMS AND CONDITION OF USE**
> Welcome. Fuhu, Inc. and its affiliates ("Fuhu") provide various goods
> and services, including but not limited to web properties and
> applications (the "Fuhu Property"). These Terms and Conditions of
> Use (the "Terms") apply to the Fuhu website located at
> www.fuhu.com, and all associated sites linked to www.fuhu.com by
> Fuhu, its subsidiaries and affiliates, including Fuhu sites around the
> world (collectively, the "Site"). The Site is the property of Fuhu. BY
> USING THE SITE, YOU AGREE TO THESE TERMS. IF YOU DO
> NOT AGREE, DO NOT USE THE SITE. . . .
>
> **GOVERNING LAW**
> By visiting a Fuhu Property, you agree that all matters relating to your
> access to or use of the Site, products or services sold or distributed by
> or through Fuhu, **including all disputes, will be governed by** the
> laws of the United States and by **the laws of the State of California**,
> without regard to principles of conflicts of laws. You agree to the
> personal jurisdiction by and venue in the state and federal courts in
> Los Angeles County, California, and waive any objection to such
> jurisdiction or venue. . . .

Dkt. 111, Merrill Decl., Ex. 5. (emphasis added)

Fuhu argues that the choice-of-law clause applies solely to disputes arising out of
use of the Fuhu website.  Opp'n., at 16.  In support of this argument, Fuhu first points to
language in the first paragraph of the agreement which states: "These Terms and
Conditions of Use [] apply to the Fuhu website located at www.fuhu.com, and all
associated sites linked to www.fuhu.com."  Id.  Furthermore, Fuhu notes that nowhere in
the agreement does Fuhu state that the terms of use or its choice of law provision shall
apply to purchases of Nabi tablets from third-parties or use of Nabi tablets and chargers
apart from access to the website.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Fuhu's argument is undermined by other language in the Terms of Use. Specifically, the choice-of-law provision itself states: "By visiting a Fuhu Property, you agree that **all matters** relating to your access to **or use of** the Site, **products or services sold or distributed by or through Fuhu**, **including all disputes**, will be governed by the laws of the United States and by the laws of the State of California, without regard to principles of conflicts of laws."  Dkt. 111, Merrill Decl., Ex. 5. (emphasis added).  This language clearly states that the choice-of-law clause applies, not just to "use of the Site," but also to use of "products or services," such as the Nabi tablets, sold or distributed by Fuhu.

Next, Fuhu argues that the choice-of-law provision is only triggered by "visiting a Fuhu Property," which Fuhu interprets to mean "visiting a Fuhu website."  Opp'n., at 16.  Plaintiff contends that this is an inaccurate reading of "Fuhu Property" and that the phrase "Fuhu Property" includes, not just Fuhu's website, but also Fuhu's "goods and services."  Reply, at 6-7.  However, whether the provisions of the Terms of Use are triggered solely by visiting a Fuhu website or not is immaterial as neither party disputes that all users of the Nabi tablets are subject to the provisions of the Terms of Use.  See also, Dkt. 121, Ex. KK, Deposition of Jason Kuo, pg. 65:17-22 ("Q: At any time since July 1, 2010 through the present, can a consumer use a Nabi tablet without agreeing to the Fuhu website Terms and Conditions of Use? . . . A: No.").

Accordingly, the Court finds that Fuhu's interpretation of the choice-of-law provision is overly narrow.  Furthermore, because all of the putative class members are subject to the choice-of-law provision in Fuhu's Terms of Service, and because all of the claims in the proposed class involve the Nabi tablets — i.e. a "product[] . . . sold or distributed by or through Fuhu" — the claims of the proposed class fall within the scope of the choice-of-law provision.

Turning to the second step of the choice-of-law inquiry, the Court must determine whether the choice-of-law provision is enforceable.  As an initial matter, whereas here the agreement seeks to apply California law, there is obviously no conflict with a fundamental California policy.  Furthermore, there is a reasonable basis to apply California law because Fuhu is headquartered in California and much of the activity relevant to this case, such as marketing materials, warranty service, and product design,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

emanated from California.  See generally SAC; see also Nedlloyd Lines B.V., 3 Cal. 4th, at 467 ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice.") (citations omitted); Granite State Ins. Co. v. General Motors, LLC., 2012 WL 3998616, *4 (C.D. Cal. Sep. 10, 2012) ("Here, there is a reasonable basis for choosing Michigan law because Old GM's principal place of business is Michigan.").

Accordingly, the Court finds that California law applies to all of the claims of the proposed class.[2]

### B.    Ascertainability

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 331, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable.").  An ascertainable class exists if it can be identified through reference to objective criteria, and subjective standards such as a class member's state of mind should not be used when defining the class.  Manual for Complex Litigation (Fourth) § 21.222.

Here, the class definition — consumers who purchased a Nabi tablet in the United States between July 3, 2010 and the present — allows class members to be identified by objective criteria, i.e. a clear date range, place of purchase, and type of purchase.  See

---

[2] Furthermore, applying California law on a nationwide basis does not violate due process where, as here, the defendant is headquartered in California.  See Forecellati v. Hylands, 2014 WL 1410264, *2 (C.D. Cal. Apr. 9, 2014) ("Given that Defendants are headquartered in California, we have already held that application of California law poses no constitutional concerns in this case."); Wolph v. Acer, 272 F.R.D. 477, 485 (N.D. Cal. 2011) ("[W]here Acer is incorporated in California and has its principal place of business and headquarters in San Jose, California, consumers who purchase an Acer notebook would have some expectation that California law would apply to any claims arising from alleged defects such that the application of California law would not be arbitrary or unfair.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

also <u>Chavez</u>, 268 F.R.D. 365, 377 (N.D. Cal. 2010) ("[T]he proposed class is defined by an objective standard of consumers who purchased a Blue Sky beverage bearing the allegedly misleading labels in violation of state law.).  Moreover, many purchasers of the Nabi tablets register their tablets with Fuhu and Fuhu maintains records with the names and contact information of these individuals.  <u>See</u> Dkt. 88, Safier Decl., Ex. KK.

Accordingly, it appears that in this case an "identifiable and ascertainable" class exists.

## C.    Rule 23(a) Requirements

### 1.    Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  <u>See</u> Fed. R. Civ. P. 23(a)(1).  "As a general rule . . . classes of 40 or more are numerous enough." <u>Ikonen v. Hartz Mountain Corp.</u>, 122 F.R.D. 258, 262 (S.D. Cal. 1988).  "Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.' " <u>In re Abbott Labs. Norvir Anti-Trust Litig.</u>, No. C 04-1511 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (quoting 1 Alba Cone & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 3.3 (4th ed. 2002)).  Here, Fuhu states that, to date, they have sold over 3.3 million Nabi tablets.  Opp'n., at 1.  Moreover, it appears that defendants have received customer complaints regarding charger failures for all models of the Nabi tablet. <u>See</u> Dkt. 88, Safier Decl., Ex. K.  Accordingly, the Court finds the numerosity requirement satisfied.

### 2.    Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact in common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                      **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Dukes, 131 S.Ct. at 2551 (internal quotation marks and citations omitted).  "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id.

The Court finds that this action presents several common questions of law and fact the answers to which will drive the resolution of all class members claims.  For example, all of plaintiffs fraud based claims will turn on whether a reasonable consumer was likely to be deceived by Fuhu's marketing materials.  Here, plaintiff contends that Fuhu uniformly represented that the Nabi tablets were rechargeable and intended to be used by children.  See generally SAC.  Determining whether those representations were inaccurate and likely to deceive a reasonable consumer will drive the resolution of all class members claims.  Chavez, 268 F.R.D. at 377 ("The court determines that the class members claims have common issues of fact and law to satisfy Rule 23(a)(2): whether the Blue Sky packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer.").

Furthermore, in plaintiffs declaratory relief and CLRA claims he contends that defendants amendment to the Fuhu Terms of Use to include an arbitration provision and a class action waiver, is unconscionable.  To establish that these additional terms are unconscionable plaintiff will need to demonstrate both procedural and substantive unconscionability.  See Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1318 (2005).  Here, all users of the Nabi tablets were reportedly presented with the same amended Terms of Use and told that they must accept those terms in order to continue receiving software updates.   SAC ¶¶ 76-77.  Accordingly, determining whether the amended Terms of Use are unconscionable will involve common questions and common proof.

Nonetheless, despite these common questions, as presently defined, the proposed class may be overly broad.  Specifically, plaintiff seeks to certify a class of "[a]ll persons who, between July 3, 2010 and the present, purchased in the United States, a Nabi tablet." Mot., at 18.  However, during the class period, Fuhu has sold multiple versions of the Nabi tablet each with a different design.  Given that plaintiffs claims turn so heavily on the alleged design defects, the differences between the designs of these products

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

precludes a finding of commonality as the class is presently defined.

Plaintiff argues that the differences between the various versions of the Nabi tablet are immaterial.  Reply, at 8.  According to plaintiff, all Nabi tablets, irrespective of model or version, contain the same defectively designed charging system (i.e. a 180 degree charging connector which is reportedly unable to effectively or safely charge the tablet).  Id. at 8-9.  Moreover, plaintiff argues that all versions of the Nabi tablet experienced charging related defects and at similarly high rate.  Id. at 10.  At best, plaintiff contends that the later versions of the tablet were "marginally less defective" and therefore, given the substantial similarity between the various tablet designs, the fact that class members may have purchased different versions of the Nabi tablets does not defeat commonality.  Id. at 10-11.

Defendants argue that plaintiff oversimplifies the differences between the various designs.  Opp'n., at 11.  For example, defendants note that while the earlier chargers used a longer cylindrical charging tip that was prone to snapping off, later chargers used a rectangular USB-style charging tip.  Id. at 11-12.  Defendants argue that the later generations of the charging system were far stronger, perhaps by a factor of between 7.4 and 29.6, and experienced a much lower rate of failure.  Id. at 12.  Accordingly, defendants contend that the differences between the designs of the different generations of the Nabi tablet defeat commonality.  Id.

The Court agrees with defendants.  At base, plaintiff alleges that all of the Nabi tablets suffer from an inherent design defect that prevents them from charging correctly and potentially renders them unsafe for children.  However, while this defect may have manifested in all versions of the Nabi tablet, proof of that defect is heavily dependent on the unique designs of the products themselves.  As defendants note, "[t]he entire array of Nabi tablets cannot possibly suffer from a *common* design defect, as plaintiff asserts, because they do not share a common design."  Id. at 11.

However, it appears that these concerns can be readily addressed by dividing the proposed class into two subclasses.  Specifically, both parties appear to agree that there are two distinct generations of the Nabi charging system.  Mot., at 3-9; Opp'n., at 4-6.  The first generation chargers used with the Nabi 1 and Nabi 2 products featured the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

cylindrical charging tip and were largely designed by third-parties.  Opp'n., at 4-6.  On the other hand, the second generation chargers used with the Nabi XD, Nabi Jr., Nabi 2s, and Nabi DreamTab, featured the rectangular USB-style tip and were designed by Fuhu. Id. at 6-7.  Accordingly, the proposed class can be divided into two subclasses — those who purchased tablets with first generation chargers and those who purchased tablets with second generation chargers.  In fact, plaintiff has proposed this exact division and contends that several class members are willing to serve as representatives for these subclasses.  Reply, at 11, n. 11.

Within these subclasses, the common designs of the Nabi tablets and charger systems and the common defect which plaintiff alleges is inherent to all Nabi tablets indicates that there are common questions which will drive the resolution of all class members claims.  See also Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 474 (C.D. Cal. 2012) ("Because the claims of all prospective class members involve the same alleged defect and found in Washers containing the same key components, they are susceptible to common proof sufficient to meet the commonality requirement of Rule 23(a)(2).").  Accordingly, assuming the proposed class is divided into subclasses based on whether a class member purchased a first generation or second generation tablet, the Court finds that the commonality requirement is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' "  Ellis v. Costco Wholesale Corp, 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanlon, 976 F.3d at 508)).  Thus, typicality is satisfied if the plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  Additionally, where a class representative is subject to unique defenses, typicality may not be satisfied.  Hanlon, 976 F.2d at 508.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Here, the representative plaintiff, Miller, alleges that he purchased a Nabi tablet with the allegedly defective charging system and that he relied on Fuhu's representations that the Nabi tablet was rechargeable and intended for use by children.  SAC ¶¶ 38-39. Therefore, he has suffered the same alleged injury as all of the absent class members and his claims are not based on conduct unique to him.

Defendants argue that Miller's claims are not typical of the claims or defenses of the class.  Opp'n., at 35.  First, defendants argue that, because Miller purchased his Nabi tablet in Florida, his claims will be governed by Florida law.  Id.  However, as already stated, the claims of all class members, regardless of where they purchased their tablets, will be governed by California law.  Second, defendants argue that Miller never requested that Fuhu repair or replace his tablet during the warranty period, and therefore he does not have an express warranty claim.  Id.  However, even assuming that failing to request a repair or replacement would defeat Miller's express warranty claim, Miller has testified that during the warranty period he requested a repair or replacement from Fuhu and received no response.  See Dkt. 148, Safier Supp. Decl, Ex. TT, Miller Deposition, pg. 110:1-112:14.

Accordingly, the typicality requirement is satisfied.

### 4.    Adequacy

Under Rule 23(a)(4), a named plaintiff must "fairly and adequately protect the interests of the class."  To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class."  Hanlon, 150 F.3d at 1020.

Here, there is no evidence to suggest that either Miller or his counsel, Gutride Safier LLP, have any conflicts of interest with other potential class members.  Moreover, defendants raise no arguments to suggest that Gutride Safier LLP will not vigorously prosecute this action on behalf of the class.

However, defendants argue that Miller is an inadequate class representative.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Opp'n., at 35.  First, defendants argue that Miller, when asked to rate Fuhu's service in October 2013, reported that: "Everything was received and is working properly."  Id. Accordingly, defendants contend that Miller's credibility must be questioned.  Id. However, plaintiff explains that he made this statement shortly after receiving his replacement charger from Fuhu, and that, like his original charger, the replacement charger malfunctioned as well.  Reply, at 25.  Moreover, the Court is unconvinced that an isolated positive review of Fuhu's customer service is sufficient to render Miller an inadequate class representative.

Second, defendants argue that Miller is an inadequate representative because he has been a named representative in two other class actions.  Opp'n., at 35.  However, defendants provide no explanation for why this renders Miller an inadequate representative.  See also Lemire v. Wolpoff & Abramson, LLP, 256 F.R.D. 321, 328 (D. Conn. 2009) (finding plaintiff adequate, stating "I see no reason why a repeat plaintiff would be a worse representative of similarly situated persons."); Markewich v. Adikes, 76 F.R.D. 68, 75 (E.D.N.Y. 1977) (rejecting defendant's claim that "professional plaintiff" renders him inadequate, stating to the contrary that his "past experience suggests that he and his counsel will be able to provide vigorous advocacy for the members of the class which he now seeks to represent.").

Accordingly, the adequacy requirement is satisfied.

**D.     Rule 23(b)(3) Requirements**

Having concluded that the Rule 23(a) requirements are met, the Court turns to Rule 23(b).  Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

### 1.      Superiority

Rule 23(b)(3) sets forth four relevant factors for determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Id.

"[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (internal quotation marks and citation omitted). Plaintiff contends that all of the superiority factors weigh in favor of class certification in this case. Defendants do not directly address plaintiff's superiority arguments in their opposition.

The Court agrees with plaintiff that consideration of the superiority factors supports certifying a class. Here, the Nabi tablet retails for roughly $199. SAC ¶ 39. Were class members to proceed on an individual basis they would likely be limited to recovering, at most, their purchase costs, which are insufficient to justify the expense of litigation. Zinser, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, [the first] factor weighs in favor of certifying a class action."). Furthermore, it does not appear that any potential class members have initiated other litigation concerning the allegations in this case. Mot., at 34. And, where, as here, class members are likely to have identical or substantially similar claims, adjudicating class claims will be significantly less burdensome than if the matter were prosecuted individually. See also Menagerie Prods. v. Citysearch, 2009 WL 3770668, at *19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

(C.D.Cal. Nov. 9, 2009) (concluding that "it does not appear that any members of the class have commenced any other litigation concerning the controversy alleged herein" and "concentrating the litigation in this Court will allow it to proceed in an efficient manner without risking inconsistent outcomes, and there is no reason to think that this is an undesirable forum to litigate these claims").

Accordingly, the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

### 2.    Predominance

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." Amchem, 521 U.S. at 625.  "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately." Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007).  "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006).   "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

### a.    Warranty-Based Claims

Defendants argue that common questions of fact and law do not predominate with regard to plaintiff's warranty-based claims.  Defendants principal contention is that, because the alleged defect — the charging failure — has not manifested in the majority of Nabi tablets, an individualized inquiry will be required to determine whether each prospective plaintiff has an actionable claim for breach of warranty. Opp'n., at 20.  For example, defendants argue that plaintiff's warranty claims will require individualized proof that each class member's product malfunctioned within the warranty period and that each class members product malfunctioned to a "sufficiently serious" degree to constitute a breach of applicable warranties. Id.  Defendants' argument misses the mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

First, defendants misstate the theory of plaintiff's warranty claims.  Plaintiff principally alleges, not that Fuhu breached its warranties when the Nabi tablets malfunctioned, but rather by failing to provide a merchantable product at the point of sale.  Reply, at 13.  In short, plaintiff alleges that Fuhu breached its warranties by selling a product that suffers from such serious design defects that it could not reasonably have been used during the 1-year warranty period, let alone the entire useful life of the product.  Id.  Because all of the Nabi tablets possess this same allegedly defective design, the warranty claims will center on common questions of fact and law.  See also, Baker v. Microsoft Corp., 797 F.3d 607, 614 (9th Cir. 2015) ("[P]laintiffs' breach of express warranty claim presents a common factual question — is there a defect? — and a common mixed question of law and fact — does that defect breach the express warranty? . . . the district court erred in finding that individual issues of causation predominate over these common questions.");

Moreover, the Ninth Circuit has on multiple occasions held that, in design defect cases, "proof of the manifestation of a defect is not a prerequisite to class certification." Wolin, 617 F.3d at 1173 (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir.1975)). In Wolin, the plaintiffs claimed that a defect in defendant Land Rover's vehicles caused the vehicles' tires to wear prematurely.  Id. at 1171.  Land Rover argued that certification was inappropriate because, among other things, plaintiff had failed to sufficiently demonstrate the rate at which the defect manifested, let alone that it manifested in a majority of vehicles.  Id.  The district court agreed with Land Rover and denied class certification.  Id.  On appeal, the Ninth Circuit reversed holding that "[t]he district court erred when it concluded . . . that certification is inappropriate because [plaintiffs] did not prove that the defect manifested in a majority of the class's vehicles."  Id. at 1173. According to the Ninth Circuit, whether the defect had or had not manifested in individual class member's vehicles went to the merits of the claim and did not overlap with the predominance inquiry.  Id. at 1173.  The court concluded that, while "individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect."  Id.  Accordingly, the Ninth Circuit held that, because "[a]ll plaintiffs received the same allegedly defective product, and all had the same express warranty claim that the car did not conform to the written warranty," common issues predominated.  Id. at 1174.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                        **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title    | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Similarly, in <u>Baker</u>, plaintiffs claimed that defendant Microsoft's Xbox gaming console suffered from an inherent design defect.  797 F.3d at 609.  Specifically, the consoles would scratch game discs rendering them permanently unplayable.  <u>Id.</u> Microsoft argued that individual issues predominated because only 0.4% of Xbox owners had reported the defect and that, in any event, the cause of any disc scratching was likely consumer misuse.  <u>Id.</u>  The Ninth Circuit disagreed and held:

> . . . although individual factors may affect the timing and extent of the disc scratching, they do not affect whether the Xboxes were sold with a defective disc system.  Plaintiffs contend that (1) whether the Xbox is defectively designed and (2) whether such design defect breaches an express or an implied warranty are both issues capable of common proof.  We agree that, as in <u>Wolin</u>, these issues are susceptible to proof by generalized evidence and do not require proof of individual causation.

<u>Id.</u> at 613.

And in <u>Edwards v. Ford Motor Co.</u>, plaintiffs alleged a defect in the electronic throttle control ("ETC") system of defendant Ford's vehicles which caused the vehicles to "surge" or accelerate unexpectedly.  603 Fed. App'x. 538, 539 (9th Cir. 2015).  The Ninth Circuit concluded that "[i]ndividual factors, such as driving conditions, may affect surging, but they do not affect whether the [vehicle] was sold with an ETC system defect."  <u>Id.</u> at 540.

Here, as in <u>Wolin</u>, <u>Baker</u>, and <u>Edwards</u>, plaintiff claims that the product at issue contains an inherent design defect.  Accordingly, while individual factors may affect when or how the charging failures manifested in class members' tablets, that does not alter the fact that all prospective class members were sold a product with an allegedly defective design.  Moreover, all of Fuhu's customers received the same 1-year express warranty that the product would be of merchantable quality for one year from the date of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                         **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

sale.  Dkt. 127, Merrill Decl., Ex. 8.[1]  Under Ninth Circuit case law this is sufficient to satisfy the predominance requirement of Rule 23(b).

Nonetheless, Fuhu contends that <u>Wolin,</u> and its progeny, does not dictate the outcome in this case.  Opp'n., at 22-23.  Specifically, Fuhu argues that in <u>Wolin</u> the Ninth Circuit held only that as a matter of federal *procedural* law — i.e. the requirements to satisfy Rule 23(b) — "proof of the manifestation of a defect is not a prerequisite to class

---

[1] Fuhu raises the additional argument that the Court cannot certify plaintiff's warranty claims because it must also consider whether Fuhu honored the terms of its 1-year warranty policy by refunding, repairing, or replacing class members' tablets. Opp'n., at 23.  Under the terms of the Fuhu warranty, Fuhu guaranties that the Nabi tablets will be of merchantable quality for one year from the date of sale. Dkt. 127, Merrill Decl., Ex. 8.  If, however, the tablets are not of merchantable quality, the warranty provides that Fuhu will, at its option, "refund the purchase price, or repair or replace the product, using new or refurbished components within a reasonable time during the warranty period."  <u>Id.</u>  Fuhu argues that thousands of Fuhu customers received warranty service during the 1-year warranty period and that these potential class members may, therefore, not bring a claim for breach of warranty. Opp'n., at 23.  Accordingly, Fuhu contends that individual issues predominate regarding whether Fuhu honored its warranty policy.  <u>Id.</u>  Fuhu's argument is unavailing.  As already stated, the theory of plaintiff's warranty claims is that the Nabi tablets suffer from an inherent design defect.  It is not clear that a workable repair for this defect exists, nor is it clear how replacing the product with an identical and equally defective tablet would bring the product into compliance with Fuhu's warranty.  According to plaintiff, the most common solution proffered by Fuhu to correct the defect is for customers to simply obtain a new charger.  Safier Decl., Exs. D, NN.  However, these chargers are either identical to the chargers plaintiff's receive when they initially purchase a Nabi tablet, or they suffer from the same alleged design defect.  Safier Decl. Exs. T, II.  Moreover, to the extent the defect exists within the tablet, replacing the charger does nothing to cure that defect.  Therefore, even if Fuhu honored the terms of its warranty, class members' tablets may still not have been of merchantable quality.  Accordingly, common questions regarding the allegedly defective design of the Nabi tablet predominate even among those class members who may have received warranty service.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    '**O**'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

certification."  Id.  Fuhu argues that as a matter of *substantive* California warranty law a claim for breach of warranty requires proof, not just of a design defect, but also proof that the alleged defect is "substantially certain to manifest during the useful life of the product."  Id.  In deciding whether common issues of law predominate, the courts inquiry is closely tied to the substantive law governing the underlying claims.  See Erica P. John Fund, Inc. v. Haliburton Co., 131 S. Ct. 2179, 2184 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.").  Accordingly, Fuhu contends that the Court cannot certify a class for the alleged warranty claims because plaintiff cannot establish that all prospective class members purchased a tablet that is "substantially certain" to malfunction from the alleged defect.  Opp'n., at 22-23.

In American Honda Motor Co. v. Superior Court, plaintiffs moved to certify a class on facts similar to Wolin.  199 Cal. App. 4th 1367 (2011).  There, plaintiffs alleged that the manual transmission in some Acura vehicles suffered from a defect which caused the transmission to "shift[] stiffly or pop[] out of gear."  Id. at 1369.  However, the defect did not manifest in many of the putative class members' vehicles.  Id. at 1377.  The trial court, relying "almost exclusively" on Wolin, certified a class for plaintiff's warranty claims.  Id. at 1372.  The California Court of Appeal reversed and expressly distinguished Wolin.  Id. at 1375.  As a primary matter, the court noted that Wolin applied the substantive warranty laws of Michigan and Florida, not California.  Id.  The court then explained that, while California "law does not require a current malfunction to prove breach of warranty," that "does not mean it should not require proof of any malfunction, present or future."  Rather, under California law, "the party moving for class certification must provide substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product. [And] [t]his is an issue that must be considered not only to determine the merits of a plaintiff's claim, but also in a class certification motion."  Id.  Accordingly, the court held that "[b]ecause the trial court relied on Wolin, which does not require proof of a common defect that is substantially certain to manifest in a future malfunction" the trial court erred in certifying a class as to the breach of warranty claims.  Id. at 1376.

Thus, as compared to Wolin and its progeny, American Honda Motor Co. imposes a higher burden to certify a class for beach of warranty claims arising under California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

law.  The tension between these two lines of cases forms the basis of Fuhu's argument.

In <u>Keegan v. American Honda</u>, the court addressed this exact issue and determined that a class could be certified without meeting the more stringent test required by <u>American Honda Motor Co.</u>  284 F.R.D., at 537-37 (Morrow, J.).  After explaining the decisions in <u>Wolin</u> and <u>American Honda Motor Co.</u>, the court phrased the relevant question as "whether, in light of the Ninth Circuit's holding in <u>Wolin</u> and the decisions of California Courts of Appeal in . . . <u>American Honda Motor Co.</u>, plaintiffs' allegation that all class vehicles have a common defect suffices to show predominance, or whether, to satisfy predominance, it is also necessary to show that the alleged defect is substantially certain to result in malfunction during the useful life of the vehicle." <u>Id.</u> at 535.  In answering this question, the court reasoned that the <u>American Honda</u> court "appears to have conflated the substantive requirements of California warranty law and California procedure governing class certification." <u>Id.</u>  Specifically, the requirement that a plaintiff prove that a defect is "substantially certain" to result in a malfunction is a required element of a plaintiff's substantive breach of warranty claim; however, to the extent the <u>American Honda</u> court held that a plaintiff must also demonstrate "substantial certainty" to establish predominance, that holding concerns California procedural law governing class certification.  <u>Id.</u>  Therefore, the court concluded as follows:

> Even if <u>American Honda Motor Co.</u> correctly applies California procedural law, however, federal procedural law governs in this case. Consequently, the court is bound to apply <u>Wolin</u>.  Applying <u>Wolin</u> . . . the court cannot discern why, at the class certification stage, plaintiffs must adduce evidence that a defect is substantially certain to arise in all class vehicles during the vehicles' useful life.  A merits inquiry will resolve that question in one stroke — if a design specification of 1.5 degrees of negative camber is substantially certain to result in the malfunctions alleged in the complaint, plaintiffs will prevail.  If not, the class's express warranty claim will fail, and defendants will be entitled to have judgment entered in their favor.  The necessary analysis, in fact, seems particularly suited to resolution as a class action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Id. at 535-36.

The Court is persuaded by the reasoning in Keegan.  As in Keegan, this Court is bound to apply Wolin, as well as Baker, both of which hold that a plaintiff's allegations of a common defect can be sufficient to demonstrate predominance.[1]  Furthermore, like in Keegan, the question of whether the defect in this case is "substantially certain to manifest" can be resolved on a merits inquiry.  Either Fuhu's design is sufficiently defective that it is "substantially certain" to result in the charging failures alleged by plaintiff, or it is not.  Regardless of the answer, the necessary analysis regarding the efficacy of Fuhu's design may be done on a classwide basis.  And resolving this issue for all prospective class members in "one stroke" will readily serve the interests of judicial economy.

Accordingly, the Court finds that common questions predominate with regard to plaintiff's warranty based claims.

### b.    Fraud-Based Claims

Plaintiff asserts claims for common law fraud and violations of several California consumer fraud statutes, specifically the UCL, FAL, and CLRA.  These claims are based on plaintiff's allegations that Fuhu misrepresented that the Nabi tablets were rechargeable and intended to be used by children.  See generally SAC.  In addition, plaintiff alleges that Fuhu failed to adequately disclose to consumers the alleged defect in the Nabi tablets.  Id.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's act or practice is unlawful, unfair, or fraudulent.  Prata v. Super. Ct., 91 Cal.

---

[1] Moreover, to the extent American Honda distinguished Wolin on the basis that it applied the substantive laws of Michigan and Florida, in both Baker and Edwards the Ninth Circuit applied the same analysis from Wolin in cases under California warranty law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

App. 4th 1128, 1137 (2001).  Similarly, the CLRA provides relief  to "any consumer who suffers any damage as a result of the use or employment" of any unlawful "method, act, or practice."  Cal. Civ. Code § 1780(a).  Likewise, the FAL broadly prohibits the dissemination of advertising that is deceptive, untrue, or misleading.  Cal. Bus. & Prof. Code § 17500; Jolley v. Chase Home Finance, LLC, 213 Cal. App. 4th 872, 906 – 907 (2013).  Finally, a plaintiff may recover for common law fraud if they are the victim of a misrepresentation, i.e. a false representation, concealment, or nondisclosure.  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).  Both affirmative misrepresentations and deceptive or misleading omissions are actionable under each of these claims.  Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824 (2006); Ehrlich v. BMW of North America, LLC, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010).

        False or deceptive advertising is actionable under each of the consumer fraud statutes.  Additionally, all three statutes invoke the "reasonable consumer test" to determine whether allegedly false or deceptive advertising is unlawful.  Colgan v. Leatherman Tool Grp., 135 Cal. App. 4th 663, 682 (2006); Paduano v. American Honda Motor Co., Inc., 169 Cal. App. 4th 1453, 1497 (2009).  "A reasonable consumer is the ordinary consumer acting reasonably under the circumstances, and is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture."  Colgan, 135 Cal. 4th at 682.  Due to the similarity between these statutes, they are often analyzed together.  Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).

        Relief under the UCL and FAL is available "without individualized proof of deception, reliance and injury," so long as the named plaintiffs demonstrate injury and causation.  Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289 (Cal. Ct. App. 2002); In re Tobacco II, 46 Cal.4th 298, 326–27 (2009).  Additionally, relief under the CLRA and for common law fraud is available without actual proof of reliance.  Rather, reliance can be presumed if the misrepresentation was material.  Parkinson v. Hyundai Mot. Am., 258 F.R.D. 580, 595–96 (C.D. Cal. 2008).  Materiality in turn is determined using the "reasonable man test" which is analogous to the "reasonable consumer test."  Stearns, 655 F.3d at 1022 (holding that materiality is established "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|---------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Common questions predominate regarding all of plaintiff's fraud-based claims. First, all of the claims arising under California's consumer fraud statutes utilize a "reasonable consumer" standard of liability.  Accordingly, liability issues under these statutes will focus on the nature of Fuhu's representations and other promotional materials, not whether each and every class member would be deceived given their individual preferences or needs.  Additionally, because the "reasonable consumer" test has an objective focus, it is amenable to resolution through common evidence, not individualized inquiries.

Similarly, common issues predominate regarding reliance and causation under each of the fraud claims in this action.  Under the UCL and FAL, only the named plaintiffs are required to establish reliance and causation, not each class member.  Individualized issues therefore will not predominate over questions common to the class, because this form of individualized proof is not required.[1]  And in plaintiff's CLRA and common law fraud claims, reliance may be presumed by demonstrating the materiality of the alleged misrepresentations and omissions.  Since materiality, like the reasonable consumer test, concerns objective features of allegedly fraudulent representations and omissions, not subjective questions of how those representations and omissions were perceived by each individual consumer, materiality presents common questions of fact suitable for class litigation.  Mass. Mut., 97 Cal. App. 4th at 1294.[2]

---

[1] In the SAC plaintiff Miller states that he "would not have purchased the Nabi tablet had Defendants adequately disclosed to him that the Nabi tablets were sold with defective charging systems that failed to reliably recharge the tablets, were not suitable for children, and created a risk of fire and injury."  SAC ¶ 5.

[2] Defendants argue that, even if class members need not individually prove reliance, they must still establish standing.  Opp'n., at 25.  According to defendants, because the charging system failure has not manifested in all Nabi tablets, not all class members have suffered an "injury in fact."  Id.  at 25-26.  Therefore, defendants argue, that an individualized inquiry will be necessary to determine whether each class member has standing.  Id. at 27-28.  However, this again mistakes the theory of plaintiff's case. Plaintiff alleges that class members suffered a harm *at the point of sale*, not when the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                   **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

Nonetheless, defendants argue that plaintiff cannot establish deception, reliance, or materiality on a classwide basis.  First, defendants argue that a presumption of classwide reliance is improper because there is insufficient evidence that the alleged misrepresentations were uniformly made to all class members.  Opp'n., at 29.  Here, plaintiff alleges that Fuhu falsely represented that the tablets were rechargeable and that they were intended to be used by children.  See generally SAC.  Defendants contend that plaintiff has failed to identify any allegedly false advertisements containing these representations on which class members would have relied.  Opp'n., at 29.  However, Fuhu does not deny that since its inception the Nabi tablet has always been marketed and designed primarily as a children's product.  See id. at 1 ("The 'nabi' tablets . . . have repeatedly won honors . . . including 'Top Tablets for Your Kids' (from *PC Magazine*) and 'Best Tablet for Kids' (from *Laptop Magazine*)); Id. at 3 ("There are seven different Nabi tablets at issue here, *aimed at* different ages, some co-branded with kid's entertainment properties (e.g., Disney Princesses, Star Wars, and Nick Jr. themes)." (emphasis added).  And Fuhu has admitted that on their website and in various materials prepared for use by "salespeople" and "retail people" they indicate that Nabi tablets are sold with and intended to be used with chargers.  See Dkt. 148, Ex. SS, Lisa Lee Deposition, pg. 80:4-20, 84:2-85:1.  Moreover, common sense indicates that a tablet — i.e. a mobile devise — designed for use as a children's product would be marketed as both rechargeable and intended for use by children.  Accordingly, defendants argument is unavailing.

---

products may have malfunctioned.  While plaintiff still bears the burden of establishing that the amount of damages can be ascertained on a classwide basis, class members will have suffered the harm plaintiff alleges simply by having purchased a Nabi tablet.  See also Kwisket Corp. v. Sup. Ct., 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately."); Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 986 (9th Cir. 2015) ("[I]n effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

     Second, defendants argue that materiality cannot be established on a classwide basis because whether a particular statement was material is dependent on a consumers individual purchasing preferences.  Defendants also argued at the hearing that consumer reviews of the Nabi tablets are widely available on websites such as Amazon.com and that many of these reviews describe the alleged defects in the Nabi tablets' charging system.  Therefore, defendants contend that some class members may have been aware of the alleged defects and yet still purchased their Nabi tablets.  Defendants misstate the relevant inquiry.  Materiality is determined with reference to a "reasonable man" standard.  Accordingly, a fact is material so long a "reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  Stearns, 655 F.3d at 1022.  Thus, even if the alleged misrepresentations may not have had the same impact on all consumers, reliance can still be presumed so long as a reasonable person would have found the statements material.  And, because this is an objective inquiry, it is particularly well suited to class-wide determination.  See also In re Apple, AT&T iPad Unlimited Data Plan Litigation, 2012 WL 2428248, at *5 (N.D. Cal. Jun. 26, 2012) ("Materiality is thus an objective standard that may be subject to common proof") (citing U.S. v. Watkins, 278 F.3d 91, 967-68 (9th Cir. 2002)); Mass. Mut., 97 Cal. App. 4th, at 1292 ("[P]laintiffs [may] satisfy their burden of showing causation as to each by showing materiality as to all.").

     Furthermore, to the extent online reviews may have referenced or disclosed the alleged defect in the Nabi tablets, as already stated, since its inception Fuhu has marketed the Nabi tablet as a mobile tablet intended for use by children.  The Court is not convinced that, even if they were aware of these third-party reviews, consumers would not have been entitled to rely on Fuhu's own representations that the tablets were rechargeable and intended for use by children.  See Linden Partners v. Wilshire Linden Assoc., 62 Cal. App. 4th 508, 529 (1998) ("[W]henever a positive representation of fact is made, the party receiving it is, in general, entitled to rely and act upon it, and is not bound to verify it by an independent investigation.") (citing Teague v. Hall, 171 Cal. 668, 670 (1916)).  Accordingly, the appropriate focus is on whether a reasonable consumer would have found these representations from Fuhu important in deciding whether or not to purchase a Nabi tablet.  See also Krueger v. Wyeth, Inc., 2011 WL 8971449, *9 (S.D. Cal. Mar. 30, 2011) ("[M]ateriality is not decided by determining whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

misrepresentation or omission was the sole reason behind a particular action. Rather, materiality is found where the omitted or misrepresented information would have been important to the decision-making process.")(citing Steroid Hormone Product Cases, 181 Cal. App. 4th 145, 157 (2010)).  This inquiry is readily amenable to classwide resolution.


Finally, defendants argue that plaintiff has submitted no evidence that Fuhu had a duty to disclose any of the alleged defects.  However, at a minimum a manufacturer has a duty to inform consumers of undisclosed safety defects.  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2021).  Here, plaintiff alleges that the charging defects potentially rendered the product unsafe.  Reply, at 19.  Specifically, plaintiff identifies documents in which Fuhu acknowledged that the charger defects had resulted in"sparks" and "heat and smoke" and "could be extremely dangerous."  Dkt. 88, Ex. B.  These safety defects are particularly problematic in this case where the product is marketed to children.  While defendants contend that safety hazards only manifested in a small number of tablets, they provide no explanation why the extent or existence of such hazards cannot be determined on a classwide basis.  See Opp'n., at 31.  If the defect is sufficiently severe to pose safety hazards of the type plaintiff alleges, Fuhu would have had a duty to disclose that fact to all purchasers of the Nabi tablets.


Therefore, contrary to Fuhu's suggestions, resolution of the Fraud claims does not require an individualized inquiry to determine whether each member of the class was subjectively deceived by Fuhu's representations and omissions, nor are individualized inquiries needed to determine how those representations and omissions affected each class member.  California law allows these questions to be resolved on a classwide basis by applying an objectively reasonable average consumer or average man standard to common proof that focuses on the nature of the representations and their deceptive character.  Common questions will therefore predominate regarding liability under the fraud-based claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

### E.    Unconscionability Claims

Plaintiff asserts claims under the CLRA and for declaratory relief on the basis that Fuhu's amendment to it Terms of Use to include an arbitration provision and a class action waiver are unconscionable.  See generally SAC.  As stated above, because all class members were presented with the same amended Terms of Use under nearly identical circumstances, these claims are highly amenable to common resolution.

Defendants resist this conclusion.  First, defendants argue, once again, that the Terms of Use apply only to claims involving the use of Fuhu's website.  Opp'n., at 34.  Because not all members of the proposed class possess claims involving use of the Fuhu website, defendants contend that common questions will not predominate.  Id.  However, for the reasons already stated, the Court finds that defendants' reading of the Fuhu terms of use is overly narrow.  Second, defendants argue that plaintiff's unconscionability claims are premised on the fact that Fuhu conditioned consumers receipt of necessary software updates on acceptance of the amended Terms of Use.  Id., at 14-15.  According to defendants, Fuhu never promised customers indefinite access to these software updates and therefore the amended terms are not unconscionable.  Id. at 15.  However, this argument speaks to the merits of the unconscionability claims and there is no reason why this issue cannot be decided on a classwide basis.  Opp'n., at 14.

Accordingly, common questions will predominate regarding the unconscionability claims.

### F.    Class-Wide Damages

Under Comcast v. Behrend, 133 S.Ct. 1426 (2013), courts can only certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability.  Forrand v. Federal Exp. Corp., 2013 WL 1793951, at *3 (C.D. Cal. 2013) ("As the Supreme Court reemphasized in Comcast, in order for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must bring forth a measurement method that can be applied classwide *and* that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

conduct."); <u>Roach v. T.L. Cannon Corp.</u>, 2013 WL 1316452 (N.D. N.Y. 2013) ("The failure of the proponent of the class to offer a damages model that was susceptible of measurement across the entire class for purposes of Rule 23(b)(3) was fatal to the certification question.").  Otherwise, plaintiff has not met his burden of introducing evidence showing that common questions predominate regarding classwide relief. <u>Comcast</u>, 133 S.Ct. at 1432 ("The party must also satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b).") (emphasis added).

      Here, plaintiff has proposed two methods for measuring class-wide damages: (1) a "Full Refund" model in which class members would receive the entire price they paid for a Nabi tablet; and (2) a "Diminution in Value" model which would measure the difference between "what customers had originally bargained for (a child-safe tablet that was capable of being reliably recharged) and what they got (a Product that was supplied without a reliable charging system and that presented potential safety hazards to precisely the type of user — young children — for whom the Products were intended)."  Dkt. 86, Selwyn Decl. ¶¶ 13, 19.  Defendants contend that neither of these methods presents a credible means for measuring classwide damages.  Opp'n., at 31.

      As an initial matter, the Court finds that a "Full Refund" model is inapplicable in this case where many, if not the majority, of the Nabi tablets have not manifested a defect.  Plaintiff's expert himself admits that a "Full Refund" measure of damages would require plaintiff to prove that "the Nabi tablets are worthless" as a result of the charging system defect.  Dkt. 86, Selwyn Decl. ¶ 11.  Here, even where the Nabi tablets malfunctioned, consumers were often able to derive at least some benefit from their tablets.  Accordingly, a measure of damages granting class members a full refund of their purchase price is entirely inapplicable to this case.  <u>See also</u> <u>Caldera v J.M Smucker Co.</u>, 2014 WL 1477400. At *4 (C.D. Cal. Apr. 15, 2014) ("Restitution based on a full refund would only be appropriate if not a single class member received any benefit from the products."); <u>In re POM Wonderful LLC</u>, 2014 WL 122184, at *3 (C.D. Cal. Mar. 25, 2014) ("[T]he Full Refund model depends upon the assumption that not a single

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

consumer received a single benefit . . . from Defendant's juices.").[4]

However, plaintiff's "Diminution in Value" approach may present a legally justifiable method for calculating classwide damages.  In essence, plaintiff's diminution in value theory attempts to return to class members the difference between what they paid for the Nabi tablets and what they would have paid had the alleged defect been disclosed at the point of purchase.  Dkt. 86, Selwyn Decl. ¶ 20.  This measure of damages aligns with the relief class members may be awarded under the claims asserted in this action.

In claims for common law fraud, "damages are ordinarily measured by the difference between the value parted with and the actual value received."  Williams v. Nidek Co., Ltd., 2009 WL 226024, at *11 (2009) (citing Persson v. Smart Inventions, Inc., 125 Cal.App. 4th 1141, 1165 (2002)).  Similarly, under the UCL, FAL, and CLRA, a court may grant a class restitution as a form of relief.   Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780; Colgan, 135 Cal. App. 4th at 694 ("There is nothing to suggest that the restitution remedy provided under the CLRA should be treated differently than the restitution remedies provided under the False Advertising or Unfair Competition Laws.").  Pursuant to California law, restitution is "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 174 (2000); see also Pulaski, 802 F.3d 979, 989 (9th Cir. 2015) ("UCL and FAL restitution is based on what a

---

[4] Plaintiff also suggests that a full refund methodology may be appropriate where, as here, class members are permitted to return defective products to Fuhu in exchange for a full refund.  Dkt. 140, at 5-6 (citing Spann v. J.C. Penny Corp., 307 F.R.D. 508, 530-31 (C.D. Cal. 2015).  Again, the Court notes that many, if not most, of the Nabi tablets have never manifested a defect.  It is not clear that Fuhu could be required, under the terms of its warranty, to provide a full refund to class members whose tablets have never shown any signs of a defect.  And, as already explained, Fuhu's warranty permits Fuhu *at its option* to either refund the purchase price or repair or replace a consumers product.  See Dkt. 127, Merrill Decl., Ex. 8.  Accordingly, while some class members may be entitled to a full refund, it does not appear that this would be an appropriate measure of damages for the majority of class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

purchaser would have paid at the time of purchase had the purchaser received all the information.").

Plaintiff's Diminution in Value model can also be applied to measure damages for the alleged breach of warranty claims.  "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Cal. Com. Code § 2714(2).  In other words, the damages a plaintiff can recover for a breach of warranty are "the monetary equivalent of the benefit of his bargain." S.M. Wilson & Co. v. Smith Intern, Inc., 587 F.2d 1363, 1375 (9th Cir. 1978).  Here, plaintiff purports to measure the difference between what class members paid for — a Nabi tablet with no defects — and what they actually received — a Nabi tablet with a likelihood of manifesting a defect in the charging system.  Accordingly, plaintiffs' proposed damages analysis is based on the "benefit of the bargain" received by class members, and consequently, provides a measure of classwide relief for the warranty claims.

Plaintiff's damages experts identify two approaches for calculating damages using a diminution in value model.  First, plaintiff contends that it may be possible to measure the actual value class members received by calculating "the 'cost to repair' the defective product — i.e., the cost that purchasers of the defective product would be required to incur so as to render the product[t] equivalent to what they had expected at the point of purchase." Dkt. 86, Selwyn Decl. ¶ 20.  However, at present it is not clear that a viable means of repairing the defect in the Nabi tablets exists.  Plaintiff's own expert implicitly acknowledges this fact.  See id. ¶ 27 ("*[I]f* it is determined that a 'repair' of the defect *could be* accomplished, then the cost of repair would provide another way to measure classwide damages.") (emphasis added); see also id ¶ 26 ("Of course, not all defects are capable of being repaired, because doing so would require redesigning the product.").

Plaintiff's expert suggests that the cost of a replacement Fuhu charger — i.e., $39.95 — could be used as a measure of the difference in value between what class members paid for and what they received.  Id. ¶ 27.  In short, plaintiff's expert contends that "the consumer might be indifferent as between purchasing a Nabi with a non-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

defective charger and cable (as advertised) vs. one with the defect at a discount from the full price equal to $39.95." Id.  However, this assumes that purchasing a replacement charger will cure the defect in the Nabi tablet's charging system.  As stated above, it is not clear that simply replacing the charger will cure the defect.  Again, plaintiff's expert implicitly acknowledges this fact.  See Id. ¶ 30 ("Assuming that the charger available for purchase at $39.95 is not itself defective, then one way to measure cost of repair would be to multiply this amount times the number of products sold by Nabi, excluding returns.").  Accordingly, at present, the "cost of repair" does not appear to be a viable approach for calculating classwide damages.[5]

Second, plaintiff suggests that classwide damages may be measured using a "contingent valuation" approach.  Under this method, plaintiff proposes to use "interactive consumer surveys" in order to "isolate the relative values that consumers place on specific product attributes."  Id. ¶ 24.  From this survey data, plaintiff will attempt to "quantify the loss in value for purchasers of the Nabi tablets caused by the defect."  Dkt. 76, Dennis Decl. ¶ 7.  More specifically, plaintiff will use either a Contingent Valuation Method ("CVM") or a Choice-Based Conjoint Analysis ("CBC")

---

[5] In his reply declaration, plaintiff's expert, Dr. Lee Selwyn ("Selwyn") suggests that it may be possible to repair the defect in the charging system by replacing the tablet's charging port. Dkt. 136.  In support of this argument, Selwyn identifies an online video in which a "consumer in Norway had replaced the charging port [in the Nabi tablet] with a charging port from a Nokia cell phone."  Id. ¶ 38.  This repair purportedly requires "less than 60 minutes."  Id.  Selwyn then claims that he contacted several repair shops and estimated that the cost for most class members of obtaining this repair would range from between $99 and $150.  Id. ¶ 39.  According to Selwyn, an amount such as this could be used as the "cost of repair."  Id.  The Court is unpersuaded by Selwyn's analysis.  First, it is not clear that removing a cell phone charging port and then sawdering it into a classmember's tablet is an effective, let alone safe, means for repairing the Nabi tablets. However, even if it were theoretically possible to repair the Nabi tablets in this way, the evidence Selwyn relies upon—i.e. an online video and several phone calls to repair shops—is far from sufficient to satisfy the "rigorous analysis" required to establish a classwide measurement of damages.  Comcast, 133 S. Ct. at 1433.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

to measure the "price premium" Fuhu was able to charge by not adequately disclosing the defects in the Nabi tablets.  Reply, at 23; Dkt. 76, Dennis Decl. ¶ 17.

As an initial matter, numerous courts, including this one, have accepted both CBC and CVM as reliable methodologies for calculating price premiums on a classwide basis in consumer class actions.  See, e.g., In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Products Liab. Litig., 2012 WL 4904412, at *3-4 (C.D. Cal. Sep. 20, 2012) ("Dr. Williams' proposed methods of analysis, i.e. hedonic regression, *contingent valuation*, and discrete choice, are generally accepted, have been tested, and are part of peer-reviewed studies.") (emphasis added); In re Scotts EZ Seed Litig., 304 F.R.D. 397, 413-15 (S.D. N.Y. 2015) (accepting expert testimony that expert "will isolate the premium associated with the 50% thicker claim using one of three statistical methods: hedonic regression, a *contingent valuation study*, or a *conjoint analysis*.") (emphasis added); Guido v. L'Oreal, US, Inc., 2014 WL 6603730, at *5 (C.D. Cal. July 24, 2014) ("Conjoint analysis has been used for decades as a way of estimating the market's willingess to pay for various product features.").  Accordingly, at least in theory, plaintiff's proposal to use either CBC and/or CVM to measure damages in this action is sound.

Nonetheless, defendants argue that, as applied to the facts of this case, plaintiff has failed to establish that either CBC or CVM can reliably be used to measure classwide damages resulting from the defect in the Nabi tablets. Dkt. 129, at 27.  Specifically, defendants argue that plaintiff has provided insufficient details regarding his proposed survey method for the Court to adequately assess its reliability under the standards set forth in Daubert.  Id.  The Court agrees.

On a motion for class cert, the Court must "conduct an analysis tailored to whether an expert's opinion [is] sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance." Tait, 289 F.R.D. at 494.; see also In re ConAgra Foods, Inc., 302 F.R.D. 537, 548 n.17 ("[T]he court evaluates the admissibility of the expert testimony under Daubert in light of the purpose for which it is offered — i.e., to demonstrate that it is appropriate to certify a class under Rule 23.").  Prior to admitting expert testimony, the trial court must make "a preliminary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993).

Here, plaintiff's expert Dr. Michael Dennis ("Dennis") contends that "it is possible and practical to design and conduct a consumer marketing survey that would reliably quantify the economic impact of the defective charging systems for class members." Dkt. 76, Dennis Decl. ¶ 27.  However, Dennis has not yet performed any consumer survey regarding the Nabi tablets, let alone even designed such a survey.  Dkt. 140, at 15. Rather, in his declaration he primarily addresses the merits of the CVM and CBC methodologies and explains how, hypothetically, he would conduct a consumer survey using these methods.  See generally, Dkt. 76, Dennis Decl.; see also In re ConAgra Foods, Inc., 302 F.R.D., at 577-78 ("Although Weir describes the methods he would use to make the calculation — hedonic regression and conjoint analysis — he does not report that he has actually employed them to identify the price premium he believes will provide the classwide measure of relief.  This alone suffices to support a finding that plaintiffs have not shown that damages can be calculated on a classwide basis.").

Moreover, the few concrete details Dennis has provided regarding how he will conduct his hypothetical survey are too vague for the Court to determine whether his survey is "scientifically valid" and whether it "properly can be applied to the facts in issue" in this case.  Daubert, 509 U.S., at 592-93.  As just a few examples: Dennis states that he will "warm up" survey respondents with "appropriate contextual questions."  Dkt. 76, Dennis Decl., ¶ 25.E.  Similarly, he states that he will select participants in his survey who "have a personal understanding of the Nabi-type tablet products."  However, he does not explain what is meant by "Nabi-type" products.  Id. ¶ 22.  Dennis has also stated that "he hasn't decided one way or the other" whether he will ask respondents questions regarding the products of Fuhu's competitors.  Dkt. 127, Merril Decl. Ex. 11, Dennis Depo., pg. 89:22-90:21.  And, particularly troubling, in his deposition Dennis stated that if "asked to do a survey" he would "start the evaluation process all over especially as I acquire more information about the matters in the case" and that he could not "say conclusively which of the two methods [CVM or CBC ] I'm going to use."  Id. pg. 69:8-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|----------|----------------------|------|------------------|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

24; see also Kottaras v. Whole Foods Market, Inc., 281 F.R.D. 16, 25 (D.D.C.2012) ("Defendant also argues that the methodology offered by [plaintiff's expert] Capps is too vague for the Court to even evaluate.  The Court concurs. . . . He notes that '[t]he result of merits discovery may further refine this assessment and provide the basis for including additional explanatory factors to be considered as part of any regression model.'  In other words, not only has Capps not yet performed a single regression, but also he could not even tell the Court the precise analyses he intended to undertake.").

     As plaintiff correctly notes, at the class certification stage, a plaintiff's burden is only to provide a method for calculating damages on a classwide basis.  Dkt. 140.  However, given the relatively undeveloped state of plaintiff's proposed survey the Court is unable, at this stage, either (a) to determine whether plaintiff's proposed methodology is sufficiently reliable to pass muster under Daubert; or (b) to determine whether using a survey of the type described by plaintiff could sufficiently measure damages across the entire proposed class.  Accordingly, the Court finds that plaintiff has failed to meet his burden to demonstrate that damages can be measured on a classwide basis.

     The Court therefore DENIES plaintiff's motion to certify a class.  However, this denial is without prejudice to a renewed motion for class certification.  As already stated, plaintiff's proposed methodology could, in theory, provide a legally justifiable measurement for classwide damages.  If plaintiff is able to provide more concrete details regarding his proposed survey, the Court may be able to certify a class similar to that proposed here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-06119-CAS-AS | Date | December 1, 2015 |
|---|---|---|---|
| Title | SCOTT MILLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC AND THOSE SIMILARLY SITUATED  V. FUHU INC., ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES WITHOUT PREJUDICE** plaintiff's motion to certify the proposed class.[5]

IT IS SO ORDERED

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CL | |

---

[5] Plaintiff requests that if the Court is unable to certify a class pursuant to Rule 23(b)(3), it still certify a class under Rule 23(b)(2) (to seek injunctive relief on plaintiff's unconscionability claims). or to certify a class under Rule 23(c) (for a liability-only determination).  However, because the Court denies plaintiff's principal request to certify a class pursuant to Rule 23(b)(3) *without prejudice*, the Court declines at this juncture to address these alternative bases for certifying a class.